# EXHIBIT A

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| June Newirth, by and through her Guardian ad Litem, Frederick J. Newirth; and Elizabeth Barber, Andrew Bardin, and Thomas Bardin as successors-in-interest to the Estate of Margaret Pierce; on their own behalves and on behalf of others similarly situated,<br><br>            Plaintiffs,<br><br>vs.<br><br>Aegis Senior Communities, LLC, dba Aegis Living; and Does 1 Through 100,<br><br>            Defendants. | CASE NO.  4:16-CV-03991-JSW<br><br>**STIPULATION OF SETTLEMENT** |

## RECITALS

A.      This Stipulation of Settlement is entered into by California Named Plaintiffs June Newirth, by and through her successor in interest, Kathi Troy; and Elizabeth Barber, Andrew Bardin, and Thomas Bardin as successors-in-interest to the Estate of Margaret Pierce, on behalf of themselves and all others similarly situated (together, "California Named Plaintiffs"), Washington Named Plaintiff Carol M. Morrison by Stacy A. Van Vleck as Attorney-in-Fact on behalf of herself and all others similarly situated ("Washington Named Plaintiff"), and Defendant Aegis Senior Communities, LLC, dba Aegis Living ("Defendant").  This Stipulation of Settlement resolves in full the California Action and the Washington Action (as defined below).  Subject to Court approval and as provided herein, the Parties hereby stipulate and agree that, in consideration for the promises and covenants set forth in the Stipulation of Settlement and upon the entry by the Court of an Order of Final Approval and Judgment Approving Class Action Settlement and the occurrence of the Effective Date, the California Action and the Washington Action shall be settled and compromised upon the terms and conditions contained herein.  This Stipulation of Settlement is entered into as of the last date it has been executed by the Parties shown on the signature lines at the end of this Agreement.

B.      On April 12, 2016, the California Named Plaintiffs filed a putative class action complaint against Defendant in the Superior Court of California, County of Alameda.  On June 9, 2016, the California Named Plaintiffs filed a First Amended Complaint.  Defendant removed to Federal Court on July 14, 2016.  On July 21, 2016, Defendant filed a Motion to Compel Arbitration and Dismiss Class Claims and a Motion to Dismiss the First Amended Class Action Complaint.  On August 24, 2016, the California Named Plaintiffs filed a Second Amended Complaint captioned *June Newirth, et al. v. Aegis Senior Communities, LLC, dba Aegis Living*, case no. 4:16-cv-03991-JSW ("California Action"), for claims arising under the Consumers Legal Remedies Act ("CLRA", Civ. Code § 1750 et seq.), California's Unfair Competition Law ("UCL", B&P Code § 17200 et seq.), and section 15610.30 of the Welfare and Institutions Code (collectively, the "California Claims").  On September 21, 2016, Defendant filed a Motion to Dismiss the Second Amended Class Action Complaint.  On May 18, 2017, the District Court denied Defendant's Motion to Dismiss the Second Amended Class Action Complaint.  On July 28, 2017, Defendant renewed its Motion to Compel Arbitration and Dismiss Class Claims.  On September 29, 2017, the District Court denied Defendant's renewed Motion to Compel Arbitration and Dismiss Class Claims.  On October 27, 2017, Defendant filed a Notice of Appeal and Motion to Stay Pending Appeal.  On November 21, 2017, the District Court denied Defendant's Motion to Stay Pending Appeal.  On July 24, 2019, the United States Court of Appeals for the Ninth Circuit affirmed the District Court's order denying Defendant's Motion to Compel Arbitration.  On September 10, 2019, Defendant answered the Second Amended Complaint, wherein Defendant expressly denied the allegations and claims alleged in the Second Amended Complaint.  On October 4, 2019, Defendant filed a Motion to Strike Class Definition or to Deny Class Certification in the alternative.  On October 18, 2019, Defendant filed a Motion for Summary Judgment.  On October 21, 2019, the California Named Plaintiffs filed a Motion for Class Certification.  The District Court subsequently granted the stipulated requests by the California Named Plaintiffs and Defendant (together, "California Parties") to continue the hearings on the Motion for Class Certification and Motion for Summary Judgment.  When the California Parties notified the District Court about this settlement on July 23, 2020, the District

Court denied, without prejudice, the Motion for Class Certification, Motion for Summary Judgment, Motion to Strike the Class Definition or Deny Class Certification, subject to renewal if this settlement is not consummated.

C. The California Parties engaged in substantial discovery and law-and-motion efforts prior to negotiating a settlement of the California Action. Those efforts included litigation of Defendant's Motion to Dismiss the Second Amended Class Action Complaint, Motion to Compel Arbitration and Dismiss Class Claims, Motion for Summary Judgment, and Motion to Strike the Class Definition or Deny Class Certification; litigation of Defendant's appeal of the District Court's order denying Defendant's Motion to Compel Arbitration; extensive meet and confer efforts and motion practice to obtain Defendant's production of documents and responses to interrogatory discovery; participation in discovery hearings before magistrate judges to compel Defendant's production of certain documents; and extensive written and deposition discovery, including written discovery responses exchanged between the parties, Defendant's production of approximately 132,483 pages of documents, including approximately 621 Excel files, and the depositions of eleven witnesses, including Defendant's executive-level and facility-level personnel, and designated Persons Most Knowledgeable, the Plaintiffs' experts, and two witnesses with knowledge about the claims of the California Named Plaintiffs; as well as data intensive discovery resulting in the production of 78 Excel spreadsheets of employee payroll data as well as meet and confer efforts among Defendant and its resident assessment software vendor to obtain Defendant's resident assessment data which resulted in the production of an additional six data intensive Excel spreadsheets.

D. On March 8, 2018, the Washington Named Plaintiff filed a putative class action complaint against Defendant in the Superior Court of Washington, County of King. On October 15, 2018, the Washington Named Plaintiff filed a First Amended Complaint captioned *Carol M. Morrison, et al. v. Aegis Senior Communities, LLC, dba Aegis Living*, case no. 18-2-06326-4-SEA ("Washington Action"), for claims arising under Washington's Consumer Protection Act ("CPA", RCW 19.86.020) and Financial Exploitation of Vulnerable Adults Statute (RCW 74.34.020, 74.34.200) (collectively, the "Washington Claims"). On October 17, 2019, Defendant filed a Motion to Deny Class Certification. By order dated May 1, 2020, the Washington state court (Hon. Marshall Ferguson) denied Defendant's motion. On October 25, 2019, Defendant answered the First Amended Complaint, wherein Defendant expressly denied the allegations and claims alleged in the First Amended Complaint.

E. The Washington Named Plaintiff and Defendant (together, "Washington Parties") engaged in substantial discovery and law-and-motion efforts prior to negotiating a settlement of the Washington Action. Those efforts included litigation of Defendant's Motion to Deny Class Certification; extensive meet and confer efforts and motion practice to obtain Defendant's production of documents and responses to interrogatory discovery; and extensive written and deposition discovery, including written discovery responses exchanged between the parties, Defendant's production of approximately 82,063 pages of documents, including 3,667 Excel and native files, and the depositions of three witnesses, including the Class Representative in this action; as well as data intensive discovery resulting on the production of eleven Excel spreadsheets of employee payroll data as well as six Excel spreadsheets of resident assessment data.

F.     This Agreement was reached as a result of extensive arm's length negotiations between the California Parties, the Washington Parties, and their counsel.  Through their counsel, the Parties have engaged in extensive settlement discussions.  This included a full-day mediation of the California Action on May 29, 2018 before the Honorable Ronald Sabraw (ret.) of JAMS in San Jose, California; a second full-day mediation of the California Action on October 2, 2018 before the Honorable Ronald Sabraw (ret.) of JAMS in San Jose, California; a full-day joint mediation of the California Action and Washington Action on October 22, 2019 before the Honorable Bruce Hilyer (ret.) of Hilyer Dispute Resolution in Seattle, Washington; and a full-day joint mediation of the California Action and Washington Action on March 24, 2020 before the Honorable Rebecca Westerfield (ret.) of JAMS in San Francisco, California.

G.     Class Counsel have determined that a settlement of the California Action and the Washington Action on the terms reflected in this Agreement provides substantial benefits to the Settlement Class, is fair, reasonable, adequate, and in the best interests of Named Plaintiffs and the Settlement Class.  In agreeing to the settlement set forth in this Agreement, Class Counsel have considered numerous risks of continued litigation and other factors.  One such factor is the potential recovery at trial on the California Named Plaintiffs' and Washington Named Plaintiff's claims for damages, including the damages claim with respect to Community Fees.

H.     Defendant has agreed to this Settlement Agreement to avoid the costs, disruption and distraction of further litigation.  Without admitting the truth of any allegations made in the California Action or Washington Action, or any liability with respect thereto, Defendant and its counsel have concluded that it is desirable that the claims against Defendant be settled on the terms reflected in this Agreement.

I.     Accordingly, IT IS HEREBY STIPULATED AND AGREED by and among the undersigned, on behalf of the California Named Plaintiffs, the Washington Named Plaintiff, the Settlement Class, and Defendant, that the California Action, the Washington Action, and the Claims shall be finally and fully compromised, settled, and released, subject to the approval of the Court on the following terms and conditions.

## SETTLEMENT TERMS

## 1.     DEFINITIONS

1.1     "Actions" means the California Action and the Washington Action.

1.2     "California Action" means the action of *June Newirth, by and through her Guardian ad Litem, Frederick J. Newirth; Barbara Feinberg; and Elizabeth Barber, Andrew Bardin, and Thomas Bardin as successors-in-interest to the Estate of Margaret Pierce; on their own behalves and on behalf of others similarly situated vs. Aegis Senior Communities, LLC, dba Aegis Living; and Does 1 – 100*, Case No. 4:16-cv-03991-JSW, which is currently pending in the United States District Court, Northern District of California, including, without limitation, the Second Amended Complaint and any appeals or requests for leave to appeal any ruling or judgment entered in that case.

1.3     "Agreement" or "Settlement Agreement" means this Stipulation of Settlement (including all Exhibits attached hereto).

1.4     "Attorneys' Fees and Expenses" means such attorneys' fees as may be awarded by the Court upon application by Class Counsel not to exceed $6,350,000, and reimbursement of litigation costs actually incurred not to exceed $1,300,000, as described more particularly in Section 9 of this Agreement.

1.5     "Award" or "Settlement Award" means the settlement payment to be made to Settlement Class Members pursuant to Sections 7.2 to 7.9 of this Agreement.

1.6     "Class Notice" or "Notice" means the notice to be disseminated to Settlement Class Members informing them about the Settlement Agreement, in the form approved by the Court.  A copy of the Notice that will be proposed for Court approval is attached substantially in the form of Exhibit 2.

1.7     "California Named Plaintiffs" means plaintiffs June Newirth, by and through her successor in interest, Kathi Troy; and Elizabeth Barber, Andrew Bardin, and Thomas Bardin as successors-in-interest to the Estate of Margaret Pierce.

1.8     "Class Counsel" means:

STEBNER & ASSOCIATES
870 Market Street, Suite 1212
San Francisco, CA 94102
Telephone: (415) 362-9800
Facsimile: (415) 362-9801

Kathryn A. Stebner
kathryn@stebnerassociates.com
Brian Umpierre
brian@stebnerassociates.com
George Kawamoto
george@stebnerassociates.com

DENTONS US LLP
4655 Executive Drive, Suite 700
San Diego, CA 92121
Telephone: (619) 236-1414
Facsimile: (619) 232-8311

Christopher J. Healey
christopher.healey@dentons.com

JANSSEN MALLOY LLP
730 Fifth Street
Eureka, CA 95501
Telephone: (707) 445-2071
Facsimile: (707) 445-8305

W. Timothy Needham
tneedham@janssenlaw.com
Megan Yarnall
myarnall@janssenlaw.com

ARNS LAW FIRM
515 Folsom Street
3rd Floor
San Francisco, CA 94105
Telephone:    (415) 495-7800
Facsimile:    (415) 495-7888

Robert S. Arns
rsa@arnslaw.com
Shounak Dharap
ssd@arnslaw.com

MARKS, BALETTE, GIESSEL & YOUNG,
P.L.L.C.
7521 Westview Drive
Houston, Texas 77055
Telephone:    (713) 681-3070
Facsimile:    (713) 681-2811

David T. Marks
DavidM@marksfirm.com

EMBER LAW P.L.L.C.
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154
Telephone: (206) 899-6816
Facsimile: (206) 858-8182

Leah S. Snyder
leah@emberlaw.com

LAW OFFICE OF MICHAEL D. THAMER
Old Callahan School House
12444 South Highway 3
Callahan, CA 96014
Telephone: (530) 467-5307
Facsimile: (530) 467-5437

Michael D. Thamer
michael@trinityinstitute.com

SCHNEIDER WALLACE COTTRELL
KONECKY, LLP
2000 Powell Street, Suite 1400
Emeryville, CA  94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Guy B. Wallace
gwallace@schneiderwallace.com
Mark T. Johnson
mjohnson@schneiderwallace.com

ZWERLING, SCHACHTER & ZWERLING,
LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Telephone: (206) 223-2053
Facsimile: (206) 343-9636

Dan Drachler
ddrachler@zsz.com

NEEDHAM KEPNER & FISH LLP
1960 The Alameda, Suite 210
San Jose, CA 95126
Telephone: (408) 956-6949
Facsimile: (408) 244-7815

Kirsten Fish
kfish@nkf-law.com

1.9    "Community Fee" means the fee, if any, identified as such and paid by or for a
Settlement Class Member typically at the time of move-in to an Aegis Living branded assisted
living facility in California or Washington.  By way of example, the Community Fee paid by

named plaintiff June Newirth is described in the paragraph entitled "Community Fee" that appears on page 4 of Ms. Newirth's Residence and Care Agreement.

 1.10 "Court" means the United States District Court, Northern District of California, the Honorable Jeffrey S. White presiding.

 1.11 "Defendant" means Aegis Senior Communities, LLC, dba Aegis Living.

 1.12 "Defendant's California Counsel" means the following counsel of record for Defendant for the California Action:

> LEWIS BRISBOIS BISGAARD & SMITH LLP
> 633 West 5th Street, Suite 4000
> Los Angeles, CA 90071
> Telephone: (213) 250-1800
> Facsimile: (213) 250-7900
>
> Jeffrey S. Ranen
> Jeffrey.Ranen@lewisbrisbois.com
> Soojin Kang
> Soojin.Kang@lewisbrisbois.com

 1.13 "Defendant's Washington Counsel" means the following counsel of record for Defendant for the Washington Action:

> McNAUL EBEL NAWROT & HELGREN, P.L.L.C
> 600 University Street, Suite 2700
> Seattle, WA 98101
> Telephone: (206) 467-1816
> Facsimile: (206) 624-5128
>
> Robert M. Sulkin
> rsulkin@mcnaul.com
> Gregory J. Hollon
> ghollon@mcnaul.com
> Claire Martirosian
> cmartirosian@mcnaul.com

 1.14 "Distribution Request" means a request for payment of a Settlement Award made by a Settlement Class Member, or made by the legal representative or successor in interest of a deceased Settlement Class Member, who has not had a Settlement Award check previously sent to the Settlement Class Member by the Settlement Administrator.  Any Distribution Request must be submitted to the Settlement Administrator and post-marked not later than thirty (30) calendar days after the Effective Date (herein the "Distribution Deadline").

1.15    "Effective Date" means the later in time of: (a) sixty (60) calendar days after the date of entry of the Order of Final Approval and Judgment Approving Class Action Settlement, if no timely motions for reconsideration and/or no appeals or other efforts to obtain review have been filed; or (b) in the event that an appeal or other effort to obtain review has been initiated, fifteen (15) calendar days after the date after such appeal or other review has been finally concluded and is no longer subject to review, whether by appeal, petitions for rehearing, petitions for rehearing en banc, petitions for writ of certiorari, or otherwise.

1.16    "Escrow Agent" means The Huntington National Bank. "Escrow Agreement" and "Escrow Procedure Agreement" mean the agreements attached hereto as Exhibit 4, pursuant to which and Court approval, the Escrow Agent will safeguard, control, and maintain the Settlement Fund until the Effective Date.  For privacy and security reasons, the names of Aegis' insurers and all of the Authorized Agents and certain security procedures are redacted from the Escrow Agreement and Escrow Procedure Agreement attached hereto as Exhibit 4.

1.17    "Final Approval Hearing" means the hearing to be conducted by the Court on such date as the Court may order to determine the fairness, adequacy, and reasonableness of the Agreement.

1.18    "Order of Final Approval and Judgment Approving Class Action Settlement" means the final order and judgment approving the settlement as fair, adequate, and reasonable and confirming the certification of the Settlement Class, in the form approved and signed by the Court.

1.19    "Motion for Final Approval" means the motion, to be filed by Class Counsel on behalf of the California Named Plaintiffs, Washington Named Plaintiff, and the Settlement Class, after consultation with Defendant's Counsel and not to be opposed by Defendant, for Final Approval of this Agreement.

1.20    "Motion for Preliminary Approval of Settlement" means the motion, to be filed by Class Counsel on behalf of the California Named Plaintiffs and Washington Named Plaintiff, after consultation with Defendant's Counsel and not to be opposed by Defendant, for Preliminary Approval of this Agreement.

1.21    "Notice and Administration Expenses" means all costs and expenses incurred by the Settlement Administrator, including all notice expenses, the cost of administering the Notice Program and the costs of processing all payments to Settlement Class Members.

1.22    "Notice Date" means the date by which the Settlement Administrator substantially completes dissemination of the Class Notice as provided in the Agreement and shall be no later than ten (10) business days after the entry by the Court of the Preliminary Approval Order.

1.23    "Objection Date" means the date by which Settlement Class Members must file and serve objections to the settlement, which shall be sixty (60) calendar days after the Notice Date.

1.24    "Opt Out Date" means the postmark date by which a Request for Exclusion must be submitted to the Settlement Administrator in order for a Settlement Class Member to be excluded from the Settlement Class, and shall be sixty (60) calendar days after the Notice Date.

1.25    "Parties" means Named Plaintiffs, the Settlement Class, and Defendant.

1.26    "Named Plaintiffs" means the California Named Plaintiffs and the Washington Named Plaintiff.

1.27    "Preliminary Approval Order" means the order preliminarily approving this Settlement, conditionally certifying the Settlement Class for settlement purposes only, approving the Notice Program and Class Notice, setting the Opt Out Date, Objection Date and Notice Date, and setting the date of the Final Approval Hearing, in the form of order approved and signed by the Court.  The Preliminary Approval Order that will be submitted to the Court for approval is attached substantially in the form of Exhibit 3.

1.28    "Released Claims" means and includes any and all actions, claims, demands, rights, suits, and causes of action of whatever kind or nature whatsoever that the Releasing Parties ever had, now have or hereafter can, shall, or may have against the Released Parties, including without limitation any and all damages, loss, costs, expenses, penalties, attorneys' fees and expert fees, and interest, whether known or unknown, suspected or unsuspected, asserted or unasserted, fixed or contingent, direct or indirect, whether sounding in tort or contract or any other legal theory, whether statutory, administrative, common law or otherwise, however pled, wherever brought and whether brought in law, equity or otherwise, arising out of or relating in any way or manner to the claims and allegations asserted or that could have been asserted in either or both Actions based on the facts alleged in the complaints in the California and/or Washington Actions; provided that the following claims only are specifically excluded from this Release: (i) any individual claims for personal injuries, wrongful death, bodily harm, or emotional distress resulting from said claims for personal injuries, wrongful death or bodily harm; and (ii) claims based on a breach of this Agreement or the Injunction (collectively, "Excluded Claims").  Nothing in this Agreement shall preclude any person or entity from asserting any and all relevant allegations in support of a claim for personal injuries, wrongful death, bodily harm, or emotional distress resulting from said personal injuries, wrongful death or bodily harm, including without limitation, allegations that the facility was understaffed.

1.29    "Releasing Party" or "Releasing Parties" means (i) the California Named Plaintiffs, Washington Named Plaintiff, and each Settlement Class Member; (ii) any person or entity that paid fees to have any of the foregoing move in to, reside or receive care at an Aegis branded assisted living facility in California during the California Class Period or in Washington during the Washington Class Period; (iii) any persons and entities claiming by or through any of the foregoing (i)-(ii); (iv)  any predecessors, successors, agents, representatives, estates, executors, administrators, dependents, heirs, beneficiaries, trustees, attorneys, employees, assignors or assignees of any of the foregoing (i)-(iii).

1.30    "Released Party" or "Released Parties" means "(i) Aegis Senior Communities, LLC, dba Aegis Living and its insurers (Columbia Casualty Company, RSUI Indemnity

Company, and Wesco Insurance Company)  (ii) any direct or indirect parents, subsidiaries, divisions, affiliates, and related entities of any of the forgoing, including all Aegis communities in California and Washington; (iii) any predecessors, successors, or assigns of any of the foregoing (i)-(ii); and (iv) any past, present or future employees, officers, directors, affiliates, partners, joint ventures, co-venturers, licensors, licensees, principals, members, managers, managing agents, agents, attorneys, insurers, reinsurers, shareholders, trusts, trustees, representatives, administrators, fiduciaries, heirs, subrogees, and executors of any of the foregoing (i)-(iii) in his, her, or its capacity as such.

1.31    "Request for Exclusion" means the written communication that must be submitted to the Settlement Administrator and postmarked on or before the Opt Out Date by a Settlement Class Member who wishes to be excluded from the Settlement Class.

1.32    "Reserve Fund" means the Twenty-Five-Thousand Dollars ($25,000) that the Settlement Administrator shall hold in the Settlement Fund to pay late-submitted Distribution Requests.   The amount of any Settlement Award checks not cashed within the check cashing deadline (after reasonable reminders issued by the Settlement Administrator) shall be added to the Reserve Fund.  Any moneys left in the Reserve Fund not paid to Settlement Class Members shall be paid to Groceries for Seniors, or other appropriate cy pres recipient(s) qualified under 501(c)(3) and nominated by Class Counsel and approved by the Court.

1.33    "Settlement Administrator" or "Administrator" means CPT Group, Inc., which subject to Court approval, shall design and implement the program for disseminating notice to the Settlement Class, and except as provided by the Escrow Agreement and in coordination therewith, administer the payment portion of this settlement and perform overall administrative functions.

1.34    "Settlement Class", as defined for the purpose of this Settlement Agreement only, shall consist of the following subclasses:

(a) All persons who resided at one of the Aegis Living branded California assisted living facilities at any time between April 12, 2012, through and including October 30, 2020 (the "California Class Period") that were owned or managed by Defendant or in which Defendant was identified as a licensee by California's Department of Social Services, including without limitation the following communities: Aegis Gardens (Fremont),  Aegis of Aptos, Aegis of Carmichael, Aegis of Corte Madera, Aegis of Dana Point, Aegis of Fremont, Aegis of Granada Hills, Aegis of Laguna Niguel, Aegis of Moraga, Aegis of Napa, Aegis of Pleasant Hill, Aegis of San Francisco, Aegis of San Rafael[1], Aegis of Shadowridge (Oceanside), and Aegis of Ventura ("California Subclass"); and

(b) All persons who resided at one of the Aegis Living branded Washington assisted living facilities at any time between March 8, 2014, through and including

---

[1] The parties acknowledge and agree that, with respect to Aegis of San Rafael, the Settlement Class includes only persons who resided at the Aegis of San Rafael facility between April 12, 2012 through and including March 31, 2016.

October 30, 2020 (the "Washington Class Period") that were owned or managed by Defendant or in which Defendant was identified as a licensee by Washington's Department of Social and Health Services, including without limitation the following communities: Aegis Gardens (Newcastle), Aegis Lodge (Kirkland), Aegis of Ballard, Aegis of Bellevue, Callahan House (Shoreline), Aegis of Issaquah, Aegis of Kent, Aegis of Kirkland, Aegis of Lynnwood, Aegis of Madison (Seattle), Aegis of Marymoor (Redmond), Aegis of Mercer Island, Queen Anne on Galer, Queen Anne Rodgers Park, Aegis of Ravenna (Seattle), Aegis of Redmond, Aegis of Shoreline, and Aegis of West Seattle ("Washington Subclass").

(c) Excluded from the Settlement Class are (i) Defendant and their officers, directors, and employees; (ii) any Settlement Class Member (or their legal successors) who submits a valid and timely Request for Exclusion; and (iii) the Judges to whom these Actions are assigned and any members of their immediate families.

1.35    "Settlement Class Member" means any person falling within the description of the Settlement Class who does not timely opt out of the Settlement Class.

1.36    "Settlement Class Member Information List" means and includes all the following information to the extent it is within Defendant's possession, custody or control and reasonably accessible: (a) a list of any Person meeting the definition of the Settlement Class; (b) names of any resident contact person on file with Aegis; (d)  last-known addresses, e-mail addresses, or other contact information for any Settlement Class Member and their resident contact person on file with Aegis; and (e) amount of the Community Fee (if any) paid by or on behalf of each Settlement Class Member for whom Defendant has Community Fee information.  The Settlement Class Member Information List and all information contained therein shall be considered confidential and subject to the Protective Orders entered in the California and Washington Actions.

1.37    "Settlement Fund" means the Sixteen Million Two-Hundred-Fifty-Thousand Dollars ($16,250,000) that Defendant has agreed to pay in full settlement and resolution of the Actions (excluding Defendant's costs to comply with the Injunction).

1.38    "Settlement Website" means the Internet website to be established for this settlement by the Settlement Administrator to provide information to the public and the Settlement Class about this Agreement.

1.39    "Washington Action" means the action of *Carol M. Morrison by Stacy A. Van Vleck as Attorney-in-Fact, on her own behalf and on behalf of others similarly situated vs. Aegis Senior Communities, LLC, dba Aegis Living; and Does 1 – 100*, Case No. 18-2-06326-4 SEA, which is currently pending in the Superior Court of Washington, County of King, including, without limitation, the First Amended Complaint and any appeals or requests for leave to appeal any ruling or judgment entered in that case.

1.40    "Washington Named Plaintiff" means plaintiff Carol M. Morrison by Stacy A. Van Vleck as Attorney-in-Fact.

## 2.    PRELIMINARY APPROVAL OF SETTLEMENT

2.1    As soon as practicable after the signing of this Agreement, Named Plaintiffs shall move the Court for an order: (a) preliminarily approving this Agreement as fair, reasonable and adequate; (b) conditionally certifying the Settlement Class for settlement purposes; (c) approving the form, manner, and content of the Class Notice; (d) setting the date and time of the Final Approval Hearing; (e) appointing Named Plaintiffs as representatives of the Settlement Class for settlement purposes only; and (f) appointing Class Counsel for settlement purposes only. Defendant shall cooperate with Named Plaintiffs to obtain the Preliminary Approval Order consistent with the terms herein.

2.2    Defendant hereby consents, solely for purposes of the Agreement, to the certification of the Settlement Class, to the appointment of Class Counsel, and to the approval of Named Plaintiffs as suitable representatives of the Settlement Class; provided, however, that if the Court fails to approve this Agreement or the Agreement otherwise fails to be consummated, then this settlement shall be void *ab initio* and shall be of no force or effect whatsoever, shall not be referred to or utilized for any purpose whatsoever, and Defendant shall retain all rights it had immediately preceding the execution of this Agreement to object to and challenge the maintenance of the Actions as class actions or at all.

## 3.    SETTLEMENT ADMINISTRATOR

3.1    In addition to any tasks and responsibilities ordered by the Court, the Settlement Administrator shall be authorized to undertake various administrative tasks, including, without limitation: (1) mailing or arranging for the mailing, e-mailing or other distribution of the Court-approved notice to Settlement Class Members, (2) handling returned mail and e-mail not delivered to Settlement Class Members, (3) attempting to obtain updated address information for Settlement Class Members by all reasonable means, including running change of address, skip traces or other procedures on the Settlement Class Member Information List provided by Defendant, and any notices returned without a forwarding address or an expired forwarding address, (4) making any additional mailings required under the terms of this Agreement, (5) answering written inquiries from Settlement Class Members and/or forwarding such inquiries to Class Counsel or their designee, (6) receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion to the settlement, (7) establishing the Settlement Website that posts notices, distribution request forms and other related documents, (8) establishing a toll-telephone number that will provide settlement-related information to Settlement Class Members, (9) receiving and processing payment requests and distributing payments to Settlement Class Members, (10) receiving/forwarding opt outs and objections, and (11) otherwise assisting with administration of the Agreement.

3.2    The Court-approved costs, fees and expenses of the Administrator, including without limitation the Notice and Administration Expenses and all other costs of disseminating Notice to Settlement Class Members, administration of the claims process, and all of the other functions of the Administrator as described herein, shall be paid from the Settlement Fund only after entry of the Order of Final Approval and Judgment Approving Class Action Settlement or

pursuant to Section 12.2.  Funds allocated but not paid to the Settlement Administrator shall be paid to the Reserve Fund and distributed in accordance with section 7.9 below.

## 4.     NOTICE TO THE SETTLEMENT CLASS

4.1     No later than ten (10) business days after the execution of this Agreement, Defendant shall furnish the Settlement Administrator with the Settlement Class Member Information List.

4.2     No later than ten (10) business days after the entry by the Court of the Preliminary Approval Order, the Settlement Administrator shall substantially complete the dissemination of Class Notice to potential Settlement Class Members, as follows:

4.2.1     Mailed notice by first class U.S. Mail to the last known addresses of the Settlement Class Member, and their family members or legal representatives, as provided by Defendant in the Settlement Class Member Information List.  Returned mail shall be re-sent after a skip trace is performed.

4.2.2     E-mailed notice to the last known e-mail addresses of the Settlement Class Member, and their family members or legal representatives, as provided by Defendant in the Settlement Class Member Information List.

4.2.3     Publication of the summary version of the Notice as approved by the Court, through a single publication in the USA Today (California and Washington weekday edition).

4.2.4.     Posting of the Notice: No later than ten (10) business days from entry of the Preliminary Approval Order, the Settlement Administrator will post the Notice on the Settlement Website. The Notice shall remain available by these means until the Effective Date. The Notice may also be posted on the websites of Class Counsel at their option.

4.3     Five (5) days prior to the Final Approval Hearing, the Settlement Administrator shall provide the Court with an affidavit attesting that Notice was disseminated pursuant to the Notice Program set forth below.

## 5.     OBJECTIONS/REQUESTS FOR EXCLUSION

5.1     Objections

5.1.1     Any Settlement Class Member who intends to object to the fairness of the Settlement Agreement must do so in writing no later than the Objection Date. The written objection and notice of objection must be filed with the Clerk of the Court and served on Class Counsel and Defendant's Counsel by no later than the Objection Date. The written objection must include: (a) a heading which refers to the Action; (b) the objector's name, address, telephone number and, if represented by counsel, of his/her counsel; (c) a statement that the objector resided at or signed a contract with Defendant, predecessors,

successors, assigns or related entities during the California Class Period or Washington Class Period and (d) the Aegis Living Community at which they resided, or that the objector is the legal successor to such a person; (e) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel; (f) a clear and concise statement of the objection to the Settlement and this Settlement Agreement, including all factual and/or legal grounds supporting the objection; (g) copies of any papers, briefs, or other documents upon which the objection is based; and (h) the objector's signature under penalty of perjury.

5.1.2    Absent good cause found by the Court, any Settlement Class Member who fails to make a timely written objection in the time and manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by objection, appeal or otherwise) to the Settlement and this Agreement.

5.1.3    Any Settlement Class Member who has objected per Section 5.1.1 above may appear at the Final Approval Hearing, either in person or through counsel hired at the Settlement Class Member's sole expense, to object to any aspect of the fairness, reasonableness, or adequacy of this Agreement, including attorneys' fees.

5.1.4    The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a copy of all written objections on a rolling basis upon receipt and a final list of all written objections within five (5) business days after the Opt Out Date.  Class Counsel shall file a single packet of all objections with the Court with the Motion for Final Approval.

5.1.5    The Parties and their counsel shall have the right and opportunity to respond in writing to any objections to the Settlement prior to the Fairness Hearing, as well as to respond to the objections at the Fairness Hearing.

5.2    Requests for Exclusion

5.2.1    Any member of the Settlement Class may request to be excluded from the Settlement Class.  A Settlement Class Member who wishes to opt out of the Settlement Class and relinquish their rights to benefits under the Settlement Agreement must do so no later than the Opt Out Date.  In order to opt out, a Settlement Class Member must send to the Settlement Administrator via first class United States mail a written Request for Exclusion that is post-marked no later than the Opt Out Date.  The Request for Exclusion must be personally signed by the Settlement Class Member or their legal representative requesting exclusion and must contain the following information: (a) the Settlement Class Member's name, current address and telephone number; and (b) a statement that indicates a desire to be excluded from the Settlement Class.  Any Request for Exclusion postmarked after the Opt Out Date shall not be valid.

5.2.2    Any Settlement Class Member who does not make a timely written Request for Exclusion shall be bound by all subsequent proceedings, orders and the Order

of Final Approval and Judgment Approving Class Action Settlement, even if he or she has pending, or subsequently initiates, litigation, arbitration or any other proceeding against any Released Party relating to the Released Claims.

5.2.3    Any Settlement Class Member who properly requests to be excluded from the Settlement Class shall not: (a) be bound by any orders or judgments entered in the Actions relating to the Agreement; (b) be entitled to an Award from the Settlement Fund, or be affected by, the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Agreement.

5.2.4    The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with copies of all requests for exclusion upon receipt on a rolling basis and a final list of names for all timely Requests for Exclusion within five (5) business days after the Opt Out Date.  The names for all timely Requests for Exclusion will be deemed confidential under the Protective Orders and shall not be made publicly available.  In addition to its affidavit to the Court attesting that Notice was disseminated pursuant to the Notice Program, the Settlement Administrator shall also include in its affidavit the final number of all timely Requests for Exclusion five (5) business days prior to the Final Approval Hearing.

5.2.5    Notwithstanding any other provisions of this Stipulation of Settlement, Defendant may unilaterally withdraw from and terminate this Stipulation of Settlement if the total number of Settlement Class Members who submit timely requests for exclusion from this settlement exceeds ten percent (10%) of the Settlement Class.  In the event the Defendant exercises that option, the settlement and Stipulation of Settlement shall be of no force or effect whatsoever, all obligations hereunder shall be null and void, the Settlement Fund shall revert to Defendant and its insurers pursuant to Section 12.2, and the Parties shall otherwise be restored to their respective positions as if this settlement had never existed.

## 6.    COURT APPROVAL OF SETTLEMENT

6.1    This Agreement is subject to and conditioned upon the issuance by the Court of the Order of Final Approval and Judgment Approving Class Action Settlement that finally certifies the Settlement Class for the purposes of this settlement, grants final approval of the Agreement, and provides the relief specified herein, which relief shall be subject to the terms and conditions of the Agreement and the Parties' performance of their continuing rights and obligations hereunder.

6.2    The Parties agree that the Court shall retain exclusive and continuing jurisdiction over the Actions, all Parties, the claims administration process, including without limitation the Injunction, and the Settlement Class Members, to interpret and enforce the Agreement's terms, conditions, and obligations.

7.      **SETTLEMENT RELIEF**

7.1      Injunction

As an integral part of the consideration provided under this Agreement, Defendant stipulates to entry of the Court-approved injunction substantially in the form attached as Exhibit 1 to this Agreement ("Injunction").

7.2      Settlement Fund

Defendant shall make a payment of $16,250,000 into the Settlement Fund to be administered and distributed by the Settlement Administrator and/or Escrow Agent consistent with the terms of this Settlement Agreement, the Escrow Agreement, and the Escrow Procedure Agreement. The $16,250,000 payment shall cover all of Defendant's monetary obligations under the Settlement, including without limitation amounts payable to the Settlement Administrator, taxes and tax expenses, all Named Plaintiffs' and Settlement Class Members' attorneys' fees and expenses, Settlement Awards, and Service Awards, exclusive of Defendant's costs to comply with the Injunction. The Settlement Fund shall be maintained in an interest-bearing, secure account established by the Settlement Administrator and/or the Escrow Agent that, to the extent feasible, meets the requirements for a "Qualified Settlement Fund" within the meaning of Treasury Regulation section 1.468B. The payments by Defendant and its insurers to the Settlement Fund shall be made as follows: (a) $15,625,000 shall be paid within thirty (30) calendar days after the Court grants the Preliminary Approval Order; and (b) the remaining balance of $625,000 shall be paid within 180 calendar days after the Court grants the Preliminary Approval Order.

7.3      The Settlement Fund, less the money used from the Settlement Fund to pay the Notice and Administration Expenses, taxes and tax expenses, Attorneys' Fees and Expenses, Service Awards and the Reserve Fund, shall be the "Net Settlement Fund."

7.4      The Net Settlement Fund shall be distributed through Settlement Award checks made payable to each Settlement Class Member for whom a valid address has been provided to, or located by, the Settlement Administrator.

7.5      Any Settlement Class Member (or any legal successor to any deceased Settlement Class Member) that submits a timely Distribution Request to the Settlement Administrator, and who has not had a Settlement Award check already distributed to the Settlement Class Member shall likewise be mailed a Settlement Award check upon verification by the Settlement Administrator that the Person on whose behalf that Distribution Request has been submitted  is a member of the Settlement Class.

7.6      The amounts of the Settlement Awards shall be calculated as follows:

7.6.1      Settlement Class Members who paid no Community Fee (and had no Community Fee paid on their behalf) shall each be entitled to a Settlement Award in amount to be proposed by Plaintiffs' Counsel after receipt of the Community Fee

Information and approved by the Court.  The Settlement Administrator shall calculate the total amount owed to the "No Community Fee Paid" group.

7.6.2    Settlement Class Members for whom Community Fee Information is unavailable shall each be entitled to a Settlement Award calculated as follows.  The Settlement Administrator shall calculate the average Community Fee paid by Settlement Class Members in 2011.  The Settlement Administrator shall divide the number of Settlement Class Members who paid no Community Fee by the number of Settlement Class Members for whom Community Fee Information is available, resulting in a percentage.  The Settlement Administrator shall reduce the average Community Fee paid in 2011 by that percentage.  The reduced average Community Fee amount shall be treated as the Community Fee amount paid by each Settlement Class Member for whom Community Fee Information is unavailable for purposes of the calculation in 7.6.3 below.

7.6.3    Settlement Class Members who paid a Community Fee (or had someone pay a Community Fee on their behalf) and Settlement Class Members for whom Community Fee Information is unavailable shall each be entitled to a Settlement Award calculated as follows.  The Settlement Administrator shall first calculate a Settlement Payment Percentage ("SPP") by dividing the Net Settlement Fund (less the amounts allocated for the No Community Fee Paid group above in section 7.6.1) by the total amount of Community Fees paid by or on behalf of all Settlement Class Members including Settlement Class Members for whom Community Fee Information is unavailable.   Next, the SPP shall be applied against the Community Fee paid by or on behalf of each Settlement Class Member and the reduced average Community Fee assigned to each Settlement Class Member for whom Community Fee Information is unavailable, to derive the Settlement Award amount for each such Settlement Class Member.

7.7    The Settlement Administrator shall mail the Settlement Award checks to the above-described Settlement Class Members no later than thirty (30) calendar days after the Effective Date.  The Settlement Payments checks shall allow for a check cashing period of one-hundred-twenty (120) calendar days.

7.8    The Settlement Administrator shall have the discretion to pay settlement checks in response to Distribution Requests submitted after the Distribution Deadline, provided that the amount of such payments shall be calculated in accordance with the formula set forth in Section 7.6 above, or such lesser amount as the Settlement Administrator in its discretion determines can be paid from the Reserve Fund.

7.9    Except as stated in Sections 5.2.5 and 12.2, there shall be no reversion to Defendant of any portion of the Settlement Fund, any unclaimed funds, any uncashed Settlement Awards, or any interest earned on any such funds.  If the monies left in the Reserve Fund (after all Settlement Awards have been paid) is sufficient to make another distribution economically practical, the remaining monies shall be paid to the Settlement Class Members who cashed their initial settlement checks, with the share amounts of any supplemental distribution to be calculated using the same procedure set forth in Section 7.6 above.  If the Settlement Administrator determines that a supplemental distribution is not economically feasible, the remaining balance shall be distributed through cy pres payment to Groceries for Seniors, or other

appropriate cy pres recipient(s) qualified under 501(c)(3) and nominated by Class Counsel and approved by the Court.

## 8.   RELEASES

8.1     Upon the Effective Date, and subject to fulfillment of all of the terms of this Agreement, each and every Releasing Party shall be deemed to have released and forever discharged each Released Party of and from any and all liability for any and all Released Claims.

8.2     On the Effective Date, the Released Parties shall be deemed to have released and forever discharged each Settlement Class Member and Class Counsel, from any and all claims arising out of or relating to the institution, prosecution and resolution of the Actions, provided that the provisions of the Protective Orders shall remain in place unless otherwise modified by court order.

8.3     Upon the Effective Date without further action, for good and valuable consideration, with respect to all claims released herein, all Class Representatives and all Released Parties expressly waive and relinquish any and all provisions, rights, and benefits of Section 1542 of the California Civil Code and any and all similar provisions, rights, and benefits conferred under Washington law that is similar, comparable, or equivalent to Section 1542 of the California Civil Code, which provides:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

## 9.   ATTORNEYS' FEES AND EXPENSES AND PLAINTIFF SERVICE AWARDS

9.1     On or before fifteen (15) calendar days prior to the Objection Date, Class Counsel shall make an application for an award of attorneys' fees incurred not to exceed $6,350,000, plus reimbursement of litigation costs actually incurred not to exceed $1,300,000 in the prosecution of the Actions.  Class Counsel shall be responsible for allocating and distributing the Attorneys' Fees and Expenses award among themselves.

9.2     The Attorneys' Fees and Expenses awarded by the Court shall be paid from the Settlement Fund to Class Counsel within three (3) business days after the Court's order approving Attorneys' Fees and Expenses, provided that the Parties have reached agreement on a mutually acceptable form of security for Class Counsel's repayment in accordance with this paragraph 9.2.  The Parties shall confer in good faith in an effort to reach agreement on an acceptable form of security, but if no agreement is reached, the matter shall be submitted to the Court for binding resolution.  In no event shall the awarded Attorneys' Fees and Expenses be paid to Class Counsel any later than two (2) business days after the Effective Date.  If the Order of Final Approval and Judgment Approving Class Action Settlement or a separate order setting forth the amount awarded in Attorneys' Fees and Expenses is reversed, vacated, modified, and/or

remanded for further proceedings or otherwise disposed of in any manner other than one resulting in an affirmance of the Order of Final Approval and Judgment Approving Class Action Settlement or a separate order setting forth the amount awarded in Attorneys' Fees and Expenses, then each Class Counsel shall repay the Attorneys' Fees and Expenses disbursed to that Class Counsel to the Settlement Fund, within thirty (30) calendar days of such event, the full amount of the Attorneys' Fees and Expenses or repay the amount by which the award has been reduced.  The Parties stipulate the Order of Final Approval and Judgment Approving Class Action Settlement shall state that all monies held in the Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned to Defendants pursuant to the Settlement Stipulation, Escrow Agreement, the Escrow Procedure Agreement, or further order of the Court.  The Court's award of fees, costs and expenses to Class Counsel shall be separate from its determination of whether to approve the Settlement.  In the event the Court approves the Settlement but declines to award fees and costs to Class Counsel or awards a lesser amount of fees and costs than requested by Class Counsel, the Settlement will nevertheless be valid and binding on the Parties.  If the Court declines to approve the Settlement and this Agreement, no award of fees, costs and expenses shall be paid to Class Counsel.

9.3     On or before fifteen (15) calendar days prior to the Objection Date, Class Counsel shall make an application for Named Plaintiffs' service awards in an amount not to exceed Fifteen-Thousand Dollars ($15,000) to each Class Representative (the "Service Awards").  The Service Awards awarded by the Court shall be paid from the Settlement Fund to Named Plaintiffs within five (5) calendar days after the Effective Date.  The Court's award of the Service Payment to Named Plaintiffs shall be separate from its determination of whether to approve the Settlement as set forth in this Agreement.  In the event the Court approves the Settlement but declines to award the Service Payment to Named Plaintiffs or awards a lesser amount than what is requested, the Settlement will nevertheless be binding on the Parties.  If the Court declines to approve the Settlement, no Service Payment shall be made to Named Plaintiffs.

## 10.     REPRESENTATIONS AND WARRANTIES

10.1     Defendant represents and warrants: (1) that it has the requisite corporate power and authority to execute, deliver and perform the Agreement and to consummate the transactions contemplated hereby; (2) that the execution, delivery and performance of the Agreement and the consummation by it of the actions contemplated herein have been duly authorized by necessary corporate action on the part of Defendant; and (3) that the Agreement has been duly and validly executed and delivered by Defendant and constitutes its legal, valid and binding obligation.

10.2     Named Plaintiffs represent and warrant that they are entering into the Agreement on behalf of themselves individually, as the legal representative of or successor to a Settlement Class Member, and as proposed representatives of the Settlement Class, of their own free will and without the receipt of any consideration other than what is provided in the Agreement or disclosed to, and authorized by, the Court.  Named Plaintiffs represent and warrant they have legal authority to release Released Claims on behalf of themselves and the Settlement Class Members.  Named Plaintiffs represent and warrant that they have reviewed the terms of the Agreement in consultation with Class Counsel. Class Counsel represent and warrant that they are fully authorized to execute the Agreement on behalf of Named Plaintiffs.

10.3    The Parties represent and warrant that no promise, inducement or consideration for the Agreement has been made, except those set forth herein.

## 11.    NO ADMISSIONS OF FAULT, NO USE EXCEPT FOR ENFORCEMENT

11.1    The Agreement and every stipulation and term contained in it is conditioned upon final approval of the Court and is made for settlement purposes only.  Whether or not consummated, neither this Agreement nor any documents filed in connection with the approval of this Settlement shall be: (A) construed as, offered in evidence as, received in evidence as, and/or deemed to be, evidence of a presumption, concession or an admission by any Party of the truth of any fact alleged or the validity of any claim or defense that has been, could have been, or in the future might be asserted in any litigation or the deficiency of any claim or defense that has been, could have been, or in the future might be asserted in any litigation, or of any liability, fault, wrongdoing or otherwise of such Party; or (B) construed as, offered in evidence as, received in evidence as, and/or deemed to be, evidence of a presumption, concession or an admission of any liability, fault or wrongdoing, or in any way referred to for any other reason, by Named Plaintiffs, Defendant, any Releasing Party or Released Party, in the Actions or in any other civil, criminal or administrative claim, action, or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Agreement.

11.2    This Agreement shall be admissible in any proceeding related to the approval of this Agreement, to enforce its terms and conditions, or to support or defend this Agreement in an appeal from an order granting or denying final approval.

## 12.    TERMINATION

12.1    In addition to Defendant's termination rights pursuant to Section 5.2.5, Named Plaintiffs or Defendant may terminate this Agreement by providing written notice to the other Parties hereto within ten (10) calendar days of any of the following events:

12.1.1  The Court does not enter a Preliminary Approval Order that conforms in material respects to Exhibit 3 hereof; or

12.1.2  The Court does not enter an Order of Final Approval and Judgment Approving Class Action Settlement, or if entered, such Order of Final Approval and Judgment Approving Class Action Settlement is reversed, vacated, or modified in any material respect by another court, except as provided for herein.

12.2    In the event that this Agreement terminates for any reason, all Parties shall be restored to their respective positions as of immediately prior to the date of execution of this Agreement, and shall proceed in all respects as if this Agreement and any related Court orders had not been made or entered.  Upon termination, this Section and Sections 11 and 13.5 herein shall survive and be binding on the Parties, but this Agreement shall otherwise be null and void. In the event of termination pursuant to Sections 12.1 or 5.2.5, within five (5) business days after written notification of such event is sent by Defendant's Counsel or Class Counsel to the

Settlement Administrator and Escrow Agent, the Settlement Fund (including accrued interest), less Court-approved Notice and Administration Expenses up to $40,000, shall be refunded to Defendant and its insurers, pursuant to an allocation to be provided by Defendant's Counsel. In such event, Defendant shall be entitled to any tax refund owing to the Settlement Fund. At the request of Defendant, the Settlement Administrator or its designee shall apply for any such refund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for a refund, to Defendant and its insurers, pursuant to an allocation to be provided by Defendant's Counsel.

## 13.    MISCELLANEOUS PROVISIONS

13.1    Integration:  The Agreement, including all Exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the Agreement and shall supersede any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of the Agreement.  The Agreement may not be changed, modified, or amended except in a writing signed by one of Class Counsel and one of Defendant's Counsel and, if required, approved by the Court.  The Parties contemplate that the Exhibits to the Agreement may be modified by subsequent agreement of Defendant or Defendant's Counsel and Class Counsel, or by the Court.

13.2    Governing Law:  This Agreement is made and entered into in the State of California and shall in all respects be interpreted, enforced and governed by and under the laws of the State of California, without reference to its choice of law rules.  Any action to enforce the provisions of this Agreement shall be commenced in the United States District Court, Northern District of California.

13.3    Execution in Counterparts:  The Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Facsimile signatures, signatures scanned to PDF and sent by e-mail, or DocuSign signatures shall be treated as original signatures and shall be binding.

13.4    Notices:  Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided in writing by first class US Mail and e-mail to:

If to Plaintiffs or Class Counsel:

       Kathryn A. Stebner
       STEBNER & ASSOCIATES
       870 Market Street, Suite 1212
       San Francisco, CA 94102
       Telephone: (415) 362-9800
       Facsimile: (415) 362-9801
       kathryn@stebnerassociates.com

       Guy B. Wallace
       SCHNEIDER WALLACE COTTRELL KONECKY, LLP
       2000 Powell Street, Suite 1400
       Emeryville, CA  94608
       Telephone: (415) 421-7100
       Facsimile: (415) 421-7105
       gwallace@schneiderwallace.com

If to Defendant or Defendant's Counsel:

       Jeffrey S. Ranen
       Soojin Kang
       LEWIS BRISBOIS BISGAARD & SMITH LLP
       633 West 5th Street, Suite 4000
       Los Angeles, CA 90071
       Telephone: (213) 250-1800
       Facsimile: (213) 250-7900
       Jeffrey.Ranen@lewisbrisbois.com
       Soojin.Kang@lewisbrisbois.com

       Gregory J. Hollon
       Claire Martirosian
       McNAUL EBEL NAWROT & HELGREN, P.L.L.C
       600 University Street, Suite 2700
       Seattle, WA 98101
       Telephone: (206) 467-1816
       Facsimile: (206) 624-5128
       ghollon@mcnaul.com
       cmartirosian@mcnaul.com

    13.5    Stay of Proceedings:  Upon the execution of this Agreement, all discovery and other proceedings in the Actions shall be stayed until further order of the Court, except for proceedings that may be necessary to implement the Agreement or comply with or effectuate the terms of this Settlement Agreement.

    13.6    Good Faith:  The Parties agree that they will act in good faith and will not engage in any conduct that will or may frustrate the purpose of this Agreement.  As part of this, the

Parties and their counsel agree that they will make no statements to the media (including blogs) regarding this settlement or the case.  The Parties further agree, subject to Court approval as needed, to reasonable extensions of time to carry out any of the provisions of the Agreement.

13.7    Protective Orders:  All orders, agreements and designations regarding the confidentiality of documents and information ("Protective Orders") remain in effect, and all Parties and counsel remain bound to comply with the Protective Orders, including the provisions to certify the destruction of documents deemed Confidential under the Protective Orders. Notwithstanding such provision in the Protective Order, Defendant's Counsel and Class Counsel may retain copies of all deposition transcripts and exhibits and all documents submitted to the Court, but those documents must be kept confidential to the extent they were designated as "Confidential," and will continue to be subject to the Protective Order.

13.8    Binding on Successors:  This Agreement shall inure to the benefit of and be binding upon the respective agents, assigns, administrators, employees, trustees, executors, heirs, and successors in interest of each of the Parties.

13.9    Arms-Length Negotiations:  The determination of the terms and conditions contained herein and the drafting of the provisions of this Agreement has been by mutual understanding after negotiation, with consideration by, and participation of, the Parties hereto and their counsel.  This Agreement shall not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.  Any statute or rule of construction that ambiguities are to be resolved against the drafting party shall not be employed in the implementation of this Agreement and the Parties agree that the drafting of this Agreement has been a mutual undertaking.

13.10   Recitals:  The Recitals are a material part of this Agreement and are incorporated herein in their entirety.

13.11   Waiver:  The waiver by any Party of any provision or breach of the Agreement shall not be deemed a waiver of any other provision or breach of the Agreement.

13.12   Exhibits:  All Exhibits to this Agreement are material and integral parts hereof, and are incorporated by reference as if fully rewritten herein.

13.13   Taxes:  No opinion concerning the tax consequences of the Agreement to any Settlement Class Member is given or will be given by Defendant, Defendant's Counsel, or Class Counsel; nor is any Party or their counsel providing any representation or guarantee respecting the tax consequences of the Agreement as to any Settlement Class Member. Each Settlement Class Member is responsible for his/her tax reporting and other obligations respecting the Agreement, if any.  Defendant and Released Parties are in no way liable or responsible for any taxes Class Counsel, Named Plaintiffs, Settlement Class Members or others may be required or obligated to pay as a result of the receipt of settlement benefits or payments relating to the Settlement or under this Agreement.

13.14   The Parties listed below hereby acknowledge that, prior to the execution of this Agreement, each consulted with their respective counsel of record.

IN WITNESS WHEREOF, each of the Parties hereto has caused the Agreement to be executed, all as of the day set forth below.

DATED: 1/5/2021

                                **AEGIS SENIOR COMMUNITIES, LLC**



17E8701BABDC400...

By: Dwayne Clark

Its: Founder, Chairman and CEO

DATED: _____

By: _____
KATHI TROY
Successor-In-Interest for the Estate of June Newirth

DATED: _____

By: _____
ELIZABETH BARBER
Successor-In-Interest for the Estate of Margaret Pierce

DATED: _____

By: _____
ANDREW BARDIN
Successor-In-Interest for the Estate of Margaret Pierce

DATED: _____

AEGIS SENIOR COMMUNITIES, LLC

_____

By:_____

Its:_____

DATED: _1/11/2021_

By:_____
KATHI TROY
Successor-In-Interest for the Estate of June Newirth

DATED: _____

By:_____
ELIZABETH BARBER
Successor-In-Interest for the Estate of Margaret Pierce

DATED: _____

By:_____
ANDREW BARDIN
Successor-In-Interest for the Estate of Margaret Pierce

DATED: _____

AEGIS SENIOR COMMUNITIES, LLC

_____

By:_____

Its:_____

DATED: _____

By:_____
                      KATHI TROY
    Successor-In-Interest for the Estate of June Newirth

DATED: 01/14/2021

By:_____
            ELIZABETH BARBER
  Successor-In-Interest for the Estate of Margaret Pierce

DATED: _____

By:_____
           ANDREW BARDIN
  Successor-In-Interest for the Estate of Margaret Pierce

DATED: _____


AEGIS SENIOR COMMUNITIES, LLC


_____

By:_____

Its:_____


DATED: _____

By:_____
                    KATHI TROY
        Successor-In-Interest for the Estate of June Newirth


DATED: _____

By:_____
                ELIZABETH BARBER
    Successor-In-Interest for the Estate of Margaret Pierce


DATED: 1/15/2021

By:_____
                ANDREW BARDIN
    Successor-In-Interest for the Estate of Margaret Pierce


4847-9738-7732.1 115301148\V-1

DATED: _01-/4-2021_

By: _Thomas Bardin_
THOMAS BARDIN
Successor-In-Interest for the Estate of Margaret Pierce

DATED: _____

By: _____
STACY A. VAN VLECK
Attorney in fact for Carol M. Morrison

DATED: _____

Approved as to form and agreed in substance to Section 9.2 by

STEBNER & ASSOCIATES

By: _____
KATHRYN STEBNER
Attorney for Plaintiffs

DATED: _____

Approved as to form and agreed in substance to Section 9.2 by

SCHNEIDER WALLACE COTTRELL KONECKY, LLP

By: _____
GUY WALLACE
Attorney for Plaintiffs

DATED: _____

By:_____
THOMAS BARDIN
Successor-In-Interest for the Estate of Margaret Pierce

DATED: _January 13, 2021_

By:_____
STACY A. VAN VLECK
Attorney in fact for Carol M. Morrison

DATED: _____

Approved as to form and agreed in substance to Section 9.2 by

STEBNER & ASSOCIATES

By:_____
KATHRYN STEBNER
Attorney for Plaintiffs

DATED: _____

Approved as to form and agreed in substance to Section 9.2 by

SCHNEIDER WALLACE COTTRELL KONECKY, LLP

By:_____
GUY WALLACE
Attorney for Plaintiffs

DATED: _____

By:_____
                    THOMAS BARDIN
        Successor-In-Interest for the Estate of Margaret Pierce


DATED: _____

By:_____
                    STACY A. VAN VLECK
              Attorney in fact for Carol M. Morrison


DATED: December 23, 2020     Approved as to form and agreed in substance to Section 9.2 by

STEBNER & ASSOCIATES


By:_____
                    KATHRYN STEBNER
                  Attorney for Plaintiffs

DATED: _____     Approved as to form and agreed in substance to Section 9.2 by

SCHNEIDER WALLACE COTTRELL KONECKY, LLP


By:_____
                    GUY WALLACE
                  Attorney for Plaintiffs

DATED: _____

By:_____
                          THOMAS BARDIN
            Successor-In-Interest for the Estate of Margaret Pierce


DATED: _____

By:_____
                          STACY A. VAN VLECK
                Attorney in fact for Carol M. Morrison


DATED: _____          Approved as to form and agreed in substance to Section 9.2 by

                                  STEBNER & ASSOCIATES


                                  By:_____
                                                    KATHRYN STEBNER
                                                   Attorney for Plaintiffs

DATED: January 4, 2021            Approved as to form and agreed in substance to Section 9.2 by

                                  SCHNEIDER WALLACE COTTRELL KONECKY, LLP


                                  By:_____
                                                      GUY WALLACE
                                                   Attorney for Plaintiffs

DATED:   12/31/20           Approved as to form and agreed in substance to Section 9.2 by

DENTONS US LLP

By: _____

CHRISTOPHER HEALEY
Attorney for Plaintiffs

DATED: _____   Approved as to form and agreed in substance to Section 9.2 by

LAW OFFICE OF MICHAEL D. THAMER

By: _____

MICHAEL D. THAMER
Attorney for Plaintiffs

DATED: _____   Approved as to form and agreed in substance to Section 9.2 by

ARNS LAW FIRM

By: _____

ROBERT S. ARNS
Attorney for Plaintiffs

DATED: _____   Approved as to form and agreed in substance to Section 9.2 by

JANSSEN MALLOY LLP

By: _____

W. TIMOTHY NEEDHAM
Attorney for Plaintiffs

DATED: _____

Approved as to form and agreed in substance to Section 9.2 by

DENTONS US LLP

By:_____
　　　　　CHRISTOPHER HEALEY
　　　　　Attorney for Plaintiffs

DATED: _12 · 3 /· 7ʊ_

Approved as to form and agreed in substance to Section 9.2 by

LAW OFFICE OF MICHAEL D. THAMER

By:_____
　　　　　MICHAEL D. THAMER
　　　　　Attorney for Plaintiffs

DATED: _____

Approved as to form and agreed in substance to Section 9.2 by

ARNS LAW FIRM

By:_____
　　　　　ROBERT S. ARNS
　　　　　Attorney for Plaintiffs

DATED: _____

Approved as to form and agreed in substance to Section 9.2 by

JANSSEN MALLOY LLP

By:_____
　　　　　W. TIMOTHY NEEDHAM
　　　　　Attorney for Plaintiffs

DATED: _____          Approved as to form and agreed in substance to Section 9.2 by

DENTONS US LLP


By:_____
                    CHRISTOPHER HEALEY
                    Attorney for Plaintiffs

DATED: _____          Approved as to form and agreed in substance to Section 9.2 by

LAW OFFICE OF MICHAEL D. THAMER


By:_____
                    MICHAEL D. THAMER
                    Attorney for Plaintiffs

DATED: January 4, 2021          Approved as to form and agreed in substance to Section 9.2 by

ARNS LAW FIRM


By:_____
                    ROBERT S. ARNS
                    Attorney for Plaintiffs

DATED: _____          Approved as to form and agreed in substance to Section 9.2 by

JANSSEN MALLOY LLP


By:_____
                    W. TIMOTHY NEEDHAM
                    Attorney for Plaintiffs

DATED: _____        Approved as to form and agreed in substance to Section 9.2 by

DENTONS US LLP


By:_____
                    CHRISTOPHER HEALEY
                    Attorney for Plaintiffs

DATED: _____        Approved as to form and agreed in substance to Section 9.2 by

LAW OFFICE OF MICHAEL D. THAMER


By:_____
                    MICHAEL D. THAMER
                    Attorney for Plaintiffs

DATED: _____        Approved as to form and agreed in substance to Section 9.2 by

ARNS LAW FIRM


By:_____
                    ROBERT S. ARNS
                    Attorney for Plaintiffs

DATED: 12/23/2e               Approved as to form and agreed in substance to Section 9.2 by

JANSSEN MALLOY LLP


By:_____
                    W. TIMOTHY NEEDHAM
                    Attorney for Plaintiffs

DATED: __January 4, 2021__    Approved as to form and agreed in substance to Section 9.2 by

MARKS, BALETTE, GIESSEL & YOUNG, P.L.L.C.

By:_____
                    DAVID T. MARKS
                    Attorney for Plaintiffs

DATED: _____    Approved as to form and agreed in substance to Section 9.2 by

ZWERLING, SCHACHTER & ZWERLING, LLP

By:_____
                    DAN DRACHLER
                    Attorney for Plaintiffs

DATED: _____    Approved as to form and agreed in substance to Section 9.2 by

EMBER LAW P.L.L.C.

By:_____
                    LEAH S. SNYDER
                    Attorney for Plaintiffs

DATED: _____    Approved as to form and agreed in substance to Section 9.2 by

NEEDHAM KEPNER & FISH LLP

By:_____
                    KIRSTEN FISH
                    Attorney for Plaintiffs

4847-9738-7732.1 115301148\V-1

DATED: _____       Approved as to form and agreed in substance to Section 9.2 by

MARKS, BALETTE, GIESSEL & YOUNG, P.L.L.C.


By:_____
                DAVID T. MARKS
                Attorney for Plaintiffs

DATED: _12/27/20_             Approved as to form and agreed in substance to Section 9.2 by

ZWERLING, SCHACHTER & ZWERLING, LLP


By:_____
                DAN DRACHLER
                Attorney for Plaintiffs

DATED: _____       Approved as to form and agreed in substance to Section 9.2 by

EMBER LAW P.L.L.C.


By:_____
                LEAH S. SNYDER
                Attorney for Plaintiffs

DATED: _____       Approved as to form and agreed in substance to Section 9.2 by

NEEDHAM KEPNER & FISH LLP


By:_____
                KIRSTEN FISH
                Attorney for Plaintiffs

DATED: _____          Approved as to form and agreed in substance to Section 9.2 by

                                       MARKS, BALETTE, GIESSEL & YOUNG, P.L.L.C.

                                       By:_____
                                                        DAVID T. MARKS
                                            Attorney for Plaintiffs

DATED: _____          Approved as to form and agreed in substance to Section 9.2 by

                                       ZWERLING, SCHACHTER & ZWERLING, LLP

                                       By:_____
                                                        DAN DRACHLER
                                            Attorney for Plaintiffs

DATED: 1/4/21          Approved as to form and agreed in substance to Section 9.2 by

                                       EMBER LAW P.L.L.C.

                                       By:_____
                                                        LEAH S. SNYDER
                                            Attorney for Plaintiffs

DATED: _____          Approved as to form and agreed in substance to Section 9.2 by

                                       NEEDHAM KEPNER & FISH LLP

                                       By:_____
                                                        KIRSTEN FISH
                                            Attorney for Plaintiffs

DATED: _____    Approved as to form and agreed in substance to Section 9.2 by

MARKS, BALETTE, GIESSEL & YOUNG, P.L.L.C.


By:_____
            DAVID T. MARKS
          Attorney for Plaintiffs

DATED: _____    Approved as to form and agreed in substance to Section 9.2 by

ZWERLING, SCHACHTER & ZWERLING, LLP




By:_____
            DAN DRACHLER
          Attorney for Plaintiffs

DATED: _____    Approved as to form and agreed in substance to Section 9.2 by

EMBER LAW P.L.L.C.


By:_____
            LEAH S. SNYDER
          Attorney for Plaintiffs

DATED: 12/23/2020    Approved as to form and agreed in substance to Section 9.2 by

NEEDHAM KEPNER & FISH LLP


By:_____
            KIRSTEN FISH
          Attorney for Plaintiffs

## EXHIBITS

**Document**                                                          **Exhibit Number**

Injunction (Exhibit A addendum thereto to be provided to Class Counsel and made available to

Settlement Class Members upon their request) ...................................................................1

Class Notice (Long Form and Summary Form) ..................................................................2

Proposed Preliminary Approval Order ...............................................................................3

Escrow Agreement and Escrow Procedure Agreement (redacted of personally identifiable and

security related confidential information)...........................................................................4

# EXHIBIT 1

Christopher J. Healey, State Bar No. 105798
**DENTONS US LLP**
4655 Executive Drive, Suite 700
San Diego, CA  92121
Tel:    (619) 236-1414
Fax:    (619) 232-8311

Kathryn A. Stebner, State Bar No. 121088
George Kawamoto, State Bar No. 280358
Brian S. Umpierre, State Bar No. 236399
**STEBNER AND ASSOCIATES**
870 Market Street, Suite 1212
San Francisco, CA  94102
Tel:    (415) 362-9800
Fax:    (415) 362-9801

Guy B. Wallace, State Bar No. 176151
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel:    (415) 421-7100
Fax:    (415) 421-7105

[Additional counsel listed on signature page]

Attorneys for Plaintiff and the Proposed Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| June Newirth, by and through her Guardian ad Litem, Frederick J. Newirth; Barbara Feinberg; and Elizabeth Barber, Andrew Bardin, and Thomas Bardin as successors-in-interest to the Estate of Margaret Pierce; on their own behalves and on behalf of others similarly situated,<br><br>            Plaintiffs,<br><br>vs.<br><br>Aegis Senior Communities, LLC, dba Aegis Living; and Does 1 Through 100,<br><br>            Defendants. | CASE NO.  4:16-cv-03991-JSW<br><br>**STIPULATED INJUNCTION AND ORDER** |

1    This injunction ("Injunction") is entered into and shall be enforceable against Aegis Senior

2  Living Communities LLC ("Aegis") ("Defendant"), and its agents, subsidiaries and assigns.

3    As referenced herein, the term "Community" and "Communities" means any residential

4  care facility for the elderly (RCFE) or assisted living facility (ALF) that is owned or operated by

5  Aegis in California and Washington.

6    This Court has jurisdiction over the Parties and the claims asserted by the Named Plaintiffs

7  in this action. The following injunction ("Injunction") shall be entered:

8  **DISCLOSURE REQUIREMENTS**

9    1.    Aegis personnel shall refrain from making any oral or written statements to current

10 or prospective residents (and if applicable, family members or representatives of current or

11 prospective residents) that state or imply that resident assessments are the only factor used to

12 determine, set or monitor staffing levels at Aegis communities.

13    2.    Aegis shall ensure that all new Residence and Care Agreements at its communities

14 provided to, made available or entered into after the Effective Date (as defined in the Settlement

15 Stipulation) contain disclosures substantially in the form as follows: (a) the resident assessments

16 described in the Residence and Care Agreement, including those conducted at the time of

17 admission and thereafter during a resident's stay, are considered by Aegis in determining, setting

18 and monitoring staffing levels at its communities. Aegis considers the assessments and other

19 factors to determine, set or monitor staffing levels at Aegis communities; and (b) Aegis does not

20 guarantee that any resident will receive a specific number of minutes or amount of care on any

21 given day or time period.

22    3.    Aegis shall ensure that its web pages, marketing brochures or other materials, and

23 any other written statements provided to or made available to the consuming public in California

24 and Washington after the Effective Date and that discuss resident assessments contain the

25 following disclosure substantially in this form: "In determining and monitoring staffing levels,

26 Aegis considers resident assessments and other factors."

27    4.    Not later than the Effective Date, Aegis shall ensure that all Residence and Care

28 Agreements, web pages, marketing brochures or other materials, and any other written statements

to be provided to or made available to the consuming public in California and Washington and that discuss resident assessments are in compliance with the terms of this Injunction. The requirements of this paragraph of the Injunction shall apply only to Residence and Care Agreements, marketing brochures, web pages and any other statements provided to, made available or entered into with new or prospective residents after the Effective Date, and shall not require or obligate Aegis to amend or modify Residence and Care Agreements or other documents or statements provided to, made available or entered into prior to the Effective Date.

**STAFFING REQUIREMENTS**

5.      Not later than the Effective Date, Aegis shall ensure continued compliance with all applicable regulations, including those related to providing  staffing levels sufficient to provide current residents with the care services set forth in their service plans, including but not limited to: 22 CCR § 87411(a), § 87705(c)(4), WAC 388-78A-2450, WAC 388-78A-2160.

6.      Without limitation to (and consistent with) the above-stated requirements, Aegis shall set staffing at its facilities based on Aegis's determination of the staffing hours reasonably required to perform the assessed care tasks needed by the residents as determined by Aegis's assessment procedures, the amount of time it takes to accomplish the given tasks, the experience and/or education of the staff, and the ability of staff to perform various tasks in parallel.

**COMPLIANCE REPORTS AND MONITORING**

7.      Aegis shall implement appropriate internal monitoring procedures to ensure compliance with all terms of this Injunction. Without limitation, not later than June 1, 2022, Aegis shall implement a software program to monitor care service delivery to all residents. By that date, Aegis shall also implement an auditing process for Aegis to investigate and correct deviations from Aegis care standards.

8.      On or before thirty (30) calendar days before the Effective Date, Aegis shall provide to Class Counsel: (a) an exemplar of the staffing compliance report referenced in paragraph 9 below; and (b) the revised Residence and Care Agreement referenced in paragraph 2 above.

9.     Six months after the Effective Date occurs, and semi-annually thereafter, Aegis shall provide Plaintiffs' Counsel with an Injunction Compliance Report verifying compliance with the requirements herein.  The Injunction Compliance Report Addendum, which sets for the specifics of the Injunction Compliance Report, has been provided to Class Counsel and is available to Settlement Class Members upon their request.  Aegis shall respond to reasonable inquiries from Plaintiffs' Counsel regarding such reports and meet and confer regarding same.

10.     On or before fifteen (15) calendar days after the Effective Date, Aegis shall file with the Court a sworn declaration that confirms compliance with all terms of this Injunction.

**OTHER PROVISIONS**

11.     Nothing stated in this Injunction shall relieve Aegis from complying with any other applicable federal or state law or regulation.

12.     The District Court shall retain continuing jurisdiction over all parties and over this action for purposes of the interpretation and enforcement of the terms of this Injunction. If Aegis violates the terms of this Injunction, Plaintiffs may seek a Court order extending the Injunction duration, in addition to any other available remedy; Aegis reserves all rights to challenge and oppose any such requests. If questions arise concerning Aegis' compliance with any term of this Injunction, the parties shall engage in reasonable meet and confer efforts before seeking Court relief.

13.     The Injunction shall remain in force and effect for a period of three (3) years commencing on the Effective Date. Upon the expiration of the three (3) year period, the Injunction shall terminate and no longer be enforceable.

IT IS SO ORDERED, ADJUDGED AND DECREED.


DATED:  _____     _____
                                                    The Honorable Jeffrey S. White

US_Active\115315151\V-1

# EXHIBIT 2

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*The United States District Court, Northern District of California has authorized this Notice.  It is not a solicitation from a lawyer.*

Did you (in this notice, the terms "you", "your", "yourself" mean you and the person, if any, to whom you are the legal successor) reside at one of the Aegis Living branded assisted living facilities owned and/or operated by Aegis Senior Communities, LLC, dba Aegis Living ("Aegis")

> **(1)** in California at any time between April 12, 2012 through and including October 30, 2020, or

> **(2)** in Washington at any time between March 8, 2014 through and including October 30, 2020?

If so, please read this notice very carefully and in its entirety.  Your rights are probably affected by a class settlement of a lawsuit because you may be a member of the settlement class.  If you are a member of the settlement class, you must decide whether to:

1) include yourself in the settlement class and seek money from the class settlement but give up your right to sue in a different case about the same subject matter.  If you choose this option, you do not need to do anything, as you will automatically be included in the settlement class;

2) include yourself in the settlement class and seek money from the class settlement, give up your right to sue in a different case about the same subject matter, but object to the terms of the settlement. If you choose this option, you do not need to do anything in order to be included in the settlement class, as you will automatically be included in the settlement class.  However, if you want to object to the terms of the settlement, you or your own counsel will need to prepare and submit a written objection; or

3) exclude yourself from the settlement class and give up your right to seek money from the class settlement but keep your right to sue in a different case about the same subject matter.  If you choose this option, you will need to prepare and submit a written request to be excluded from the settlement class.

**NOTICE OF PENDENCY OF A PROPOSED CLASS ACTION LAWSUIT:**  Please be advised that your rights may be affected by a lawsuit entitled *June Newirth, by and through her Guardian ad Litem, Frederick J. Newirth; Barbara Feinberg; and Elizabeth Barber, Andrew Bardin, and Thomas Bardin as successors-in-interest to the Estate of Margaret Pierce; on their own behalves and on behalf of others similarly situated vs. Aegis Senior*

*Communities, LLC, dba Aegis Living; and Does 1 – 100* (case number 4:16-cv-03991-JSW), pending in the United States District Court, Northern District of California – Oakland and a lawsuit entitled *Carol M. Morrison, et al. v. Aegis Senior Communities, LLC, dba Aegis Living* (case no. 18-2-06326-4-SEA), pending in Washington state court (collectively "lawsuit"), if you resided at one of the Aegis Living branded assisted living facilities (1) in California at any time between April 12, 2012 through and including October 30, 2020, or (2) in Washington at any time between March 8, 2014 through and including October 30, 2020.

**NOTICE OF SETTLEMENT:**  Please be advised that named plaintiffs June Newirth, by and through her Guardian ad Litem, Frederick J. Newirth; Elizabeth Barber, Andrew Bardin, and Thomas Bardin as successors-in-interest to the Estate of Margaret Pierce; and Carol M. Morrison by Stacy A. Van Vleck as Attorney-in-Fact ("Plaintiffs" or "Class Representatives"), on behalf of themselves and all of the other Settlement Class Members (as defined below), have reached a proposed settlement with Aegis on the terms and conditions set forth in the Stipulation of Settlement entered into by and between Plaintiffs and Aegis.  The Court in charge of this lawsuit still has to decide whether to approve the settlement.  A settlement fund will be available for distribution to the Settlement Class, and an Injunction will become effective, only if the settlement is approved by the Court and the approval is upheld following any appeals.

The following provides a detailed description about the proposed class settlement and the rights you have if you are a Settlement Class Member, the benefits available under the settlement and how you can get the benefits, including the relevant deadlines and requirements.

**BASIC INFORMATION**

| |
|---|
| **WHAT IS THIS LAWSUIT ABOUT?** |
| Plaintiffs bring this proposed class action on behalf of residents of Aegis Living branded assisted living communities owned or operated by Aegis in California and Washington, alleging that Aegis made misleading statements and/or omissions about how resident evaluations would be used to determine, set and monitor staffing levels at Aegis's assisted living facilities in California and Washington, which Plaintiffs allege resulted in monetary damages to residents. Aegis denies all allegations and claims in the lawsuit and denies that it committed any wrongdoing.  This settlement is not an admission of any wrongdoing by Aegis. The Parties have agreed to settle the lawsuit on the terms and conditions explained in this notice. |
| **WHY IS THIS A CLASS ACTION?** |
| In a class action, one or more people called class representatives (in this case, the Named Plaintiffs listed above) sue on behalf of people who they believe have similar claims.  If the |

court decides that the case should proceed as a class action, all of these people are called a Class or Class Members and one court resolves the issues for all Class Members, except for those who choose to exclude themselves from the Class.

The Plaintiffs and Aegis disputed whether this case should proceed as a class action.  The court has not decided whether this case should proceed as a class action.

Judge Jeffrey S. White of the United States District Court, Northern District of California – Oakland, is in charge of this proposed class action.

### WHY IS THERE A SETTLEMENT?

The Court also has not decided the merits of this case in favor of Plaintiffs or Aegis.  Instead, both sides agreed to a settlement.  That way, they avoid the cost, uncertainty, and distraction of further litigation and a potential trial.  The Class Representatives and their attorneys think the settlement is in the best interest of the Settlement Class Members taking into account the benefits of the proposed settlement, the risks of continued litigation, and the delay in obtaining relief for the Class if the lawsuit continues.

### WHO IS IN THE SETTLEMENT CLASS?

You are a Settlement Class Member if you resided at one of the Aegis Living branded assisted living facilities (1) in California at any time between April 12, 2012 through and including October 30, 2020, or (2) in Washington at any time between March 8, 2014 through and including October 30, 2020 (collectively, the "Settlement Class Period"), including without limitation the following communities: Aegis Gardens (Fremont),  Aegis of Aptos, Aegis of Carmichael, Aegis of Corte Madera, Aegis of Dana Point, Aegis of Fremont, Aegis of Granada Hills, Aegis of Laguna Niguel, Aegis of Moraga, Aegis of Napa, Aegis of Pleasant Hill, Aegis of San Francisco, Aegis of San Rafael*, Aegis of Shadowridge (Oceanside), Aegis of Ventura, Aegis Gardens (Newcastle), Aegis Lodge (Kirkland), Aegis of Ballard, Aegis of Bellevue, Callahan House (Shoreline), Aegis of Issaquah, Aegis of Kent, Aegis of Kirkland, Aegis of Lynnwood, Aegis of Madison (Seattle), Aegis of Marymoor (Redmond), Aegis of Mercer Island, Queen Anne on Galer, Queen Anne Rodgers Park, Aegis of Ravenna (Seattle), Aegis of Redmond, Aegis of Shoreline, and Aegis of West Seattle.

*With respect to Aegis of San Rafael, the Settlement Class includes only persons who resided at the Aegis of San Rafael facility between April 12, 2012 through and including March 31, 2016.

To be eligible for benefits under the settlement, you must be a Settlement Class Member or a legal successor to a deceased Settlement Class Member.

## THE SETTLEMENT BENEFITS

### CASH PAYMENTS AND INJUNCTIVE RELIEF

Under the terms of the settlement, Aegis has agreed to provide a total settlement fund of $16.25 million (the "Fund") in full settlement of the claims of the Settlement Class.  The Fund will be used to pay for class notice and payment distribution administration expenses (not to exceed $_____), as well as Class Counsel's attorneys' fees not to exceed $6.35 million, Class Counsel's litigation expenses not to exceed $1,300,000, and service awards not to exceed $15,000 to each Class Representative.  The remaining amount (the "Net Settlement Fund") will be used to make cash payments to Settlement Class Members (or if a Settlement Class Member is deceased, to their legal successor).  Depending on the amounts the Court awards for the Class Counsel's attorneys' fees and costs, the estimated cash payment for each Settlement Class Member will be approximately __% of the amount of the Community Fee paid during the Settlement Class Period. By way of illustration only, if a Settlement Class Member paid a Community Fee of $1,000, their estimated settlement payment is $_____. Settlement Class Members who paid no Community Fee shall each be entitled to a Settlement Award in an amount to be proposed by Plaintiffs' Counsel after receipt of the Community Fee information, subject to approval by the Court.  Settlement Class Members for whom Aegis Living does not have Community Fee information available shall each be entitled to a Settlement Award that will be approximately __% of the average amount of the Community Fee paid by Settlement Class Members in the earliest year when Community Fee information is available, adjusted for the percentage of Settlement Class Members who paid Community Fees.  The settlement distribution process will be administered by an independent settlement administrator (the "Settlement Administrator") approved by the Court.  **The settlement amount and Net Settlement Fund are contingent on final approval by the Court.**

In addition, as part of the settlement Aegis has agreed to an Injunction, which is subject to Court approval, in which, among other things, Aegis is to ensure that its caregiver staffing levels are sufficient to provide residents with the care services set forth in their service plans.  While Aegis believes it has always done and will continue to do this, irrespective of an Injunction, the Injunction provides a verification mechanism.  The Injunction will remain in place for three years.  The full terms of the Injunction are available on the Settlement Website at **[web address]**, or at the public court records on file in this lawsuit.

**AMOUNT OF CASH PAYMENT**

The actual cash payment amounts to Settlement Class Members will be determined by the Settlement Administrator based on the formula described in the Stipulation of Settlement and may be increased if funds are available.  Subject to Court approval, the Administrator will reserve $25,000 from the Fund to pay claims that are submitted late.  Any amounts left in the Fund and not paid from the reserve or from uncashed checks, if any, will be paid to Groceries for Seniors or other non-profit organization(s) approved by the Court.

**HOW CAN I GET A CASH PAYMENT?**

If you are a Settlement Class Member and the address above is correct, **you do not need to take any action.**  Your cash payment will be mailed to you if the settlement is approved by the Court and becomes effective.  If your address has changed, you must provide your new address to the Settlement Administrator.  If a Settlement Class Member is deceased, his or her legal

successor must submit a payment request and supporting documentation to the Settlement Administrator.  To contact the Settlement Administrator, visit **[insert website]** or call **[insert]**.

**WHEN WILL I RECEIVED MY SETTLEMENT AWARD?**

The Court will hold a final approval hearing on **[date]** at **[time]** before the Honorable Jeffrey S. White, Courtroom 5, United States District Court, Northern District of California – Oakland, 1301 Clay Street, Oakland, California 94612, to decide whether to approve the settlement.  **The date, time, or place of the final approval hearing may be changed by the Court without notice to the Settlement Class, and you should check the Settlement Website at [insert web address] or the public court records on file in this lawsuit for any updates.**  If the Court approves the settlement, there may be appeals, which could extend the process by several months or more.

**IN RETURN FOR THESE SETTLEMENT BENEFITS, WHAT AM I GIVING UP?**

If the Court approves the proposed settlement and you do not request to be excluded from the Settlement Class, you must release (meaning, give up) all legal claims concerning Aegis's alleged misrepresentations and/or nondisclosures with respect to whether or how resident assessments are used to set, determine, or monitor staffing levels in Aegis's assisted living facilities in California or Washington. The release includes any claim for losses, damages, Community Fees, care services fees, rent, entrance fees, transfer fees or other fees charged to or paid at any time during the Class Period by or on behalf of a Settlement Class Member based on the allegations stated in the lawsuit. **This includes any other lawsuit or proceeding already in progress.** The Release does not include claims solely for personal injury, wrongful death, bodily harm, or emotional distress resulting from personal injury, wrongful death, or bodily harm.

The judgment and orders entered in this case, whether favorable or unfavorable, will bind all Settlement Class Members who do not request to be excluded.  The full terms of the Release are contained in the Stipulation of Settlement that is available on the Settlement Website at **[web address]**, or at the public court records on file in this lawsuit.

## THE LAWYERS REPRESENTING YOU

**DO I HAVE A LAWYER IN THIS CASE?**

All Settlement Class Members are represented by Plaintiffs' Counsel, who have been preliminarily approved by the Court to serve as Class Counsel representing the Settlement Class for purposes of the settlement.  If you want to be represented by your own lawyer, you may hire one at your own expense and enter an appearance through your own counsel.

**HOW WILL THE LAWYERS BE PAID?**

Class Counsel will ask the Court to award their attorneys' fees not to exceed $6.35 million and their litigation expenses not to exceed $1,300,000.  The actual award of attorneys' fees and litigation expenses to Class Counsel will be decided by the Court upon consideration of all

| relevant factors, including what is fair, reasonable and consistent with prevailing marketplace standards. The amount of attorneys' fees and costs awarded by the Court to Class Counsel will be paid from the Fund. |
| --- |

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue Aegis on your own about the legal issues in this case, then you must take steps to be excluded from the settlement.  This is called excluding your self – or is sometimes referred to as opting out of the Settlement Class.

| **HOW DO I GET OUT OF THE SETTLEMENT?** |
| --- |
| If you do not wish to be included in the Settlement Class and receive a cash payment, you must send a letter stating that you want to be excluded from the Settlement Class in *June Newirth, et al. v. Aegis Senior Communities, LLC, dba Aegis Living*, case no. 4:16-cv-03991-JSW (United States District Court, Northern District of California – Oakland).<br><br>Be sure to include your name, your current address and telephone number, your signature (or that of the legal representative, along with the representative's name, current address, and telephone number), and a statement that you wish to be excluded from the Settlement Class.<br><br>You must mail your letter requesting exclusion by first class United States mail postmarked no later than **[date]** to: **[insert Administrator address]**<br><br>You cannot exclude yourself via telephone, fax, or email. |
| **WHAT HAPPENS IF I EXCLUDE MYSELF FROM THE SETTLEMENT?** |
| If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement.  However, you will not be legally bound by anything that happens in this lawsuit and you will keep your right to separately pursue claims against Aegis relating to the subject matter of this lawsuit. |
| **IF I DON'T EXCLUDE MYSELF, CAN I SUE DEFENDANTS FOR THE SAME THING LATER?** |
| No.  Unless you exclude yourself, you give up the right to sue Aegis for the claims that this settlement resolves.  You must exclude yourself from *this* case and the Settlement Class to pursue your own lawsuit.  Remember, your letter requesting exclusion must be postmarked on or before **[date]**. |
| **IF I EXCLUDE MYSELF, CAN I GET MONEY FROM THIS SETTLEMENT?** |
| No.  If you exclude yourself, you will not receive any money from the settlement.  But, you will not lose any right you may have to sue (or continue to sue) in a different lawsuit against Aegis about the legal issues or claims in this case.  If you choose to initiate a new lawsuit, your claim will be subject to time limitations. |

**OBJECTING TO THE SETTLEMENT**

You can tell the Court that you do not like the settlement or some part of it.

| How do I tell the Court that I do not like the settlement? |
| --- |
| If you are a Settlement Class Member (or a legal representative of such person), you can object to the settlement if you do not like any part of it, and the Court will consider your views.  To object, you must file a letter with the Court and serve a copy to Class Counsel and Aegis's Counsel saying that you object to the settlement in *June Newirth, et al. v. Aegis Senior Communities, LLC, dba Aegis Living*, case no. 4:16-cv-03991-JSW (United States District Court, Northern District of California – Oakland). |
| Be sure to include a heading which refers to the name of this case, your name, your address, your telephone number, your signature, a statement that you resided at  Aegis during the Settlement Class Period or that you are a legal successor to such a person, the name of the Aegis community at which you or the person to whom you are a legal successor resided, a statement whether you intend to appear at the Final Approval Hearing, and the reasons and facts for why you object to the settlement.  You must also affirm under penalty of perjury that you are a Settlement Class Member (or a legal representative of or successor to a Settlement Class Member) or provide other proof of Settlement Class membership.  If you are represented by counsel, be sure to include the name, address, and telephone number of that lawyer. |
| Your objection ***must be received by*** these four different places no later than **[date]:** |
| Clerk of the Court, Courtroom 5<br>United States District Court, Northern District of California – Oakland<br>1301 Clay Street, Oakland, California 94612<br><br>Kathryn A. Stebner<br>STEBNER AND ASSOCIATES<br>870 Market Street, Suite 1212<br>San Francisco, CA  94102<br>Telephone: (415) 362-9800 |

| |
|---|
| Jeffrey S. Ranen<br>LEWIS BRISBOIS BISGAARD & SMITH LLP<br>633 West 5th Street, Suite 4000<br>Los Angeles, CA 90071<br>Telephone: (213) 250-1800<br><br>Gregory J. Hollon<br>McNAUL EBEL NAWROT & HELGREN, P.L.L.C<br>600 University Street, Suite 2700<br>Seattle, WA 98101<br>Telephone: (206) 467-1816 |

| **WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING?** |
|---|
| Objecting is telling the Court that you do not like something about the settlement.  You can object only if you stay in the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class or the lawsuit.  You cannot request exclusion **and** object to the settlement.  If you exclude yourself, you have no basis to object because the lawsuit and settlement no longer affect you. |

### THE FINAL APPROVAL HEARING

The Court will hold a Final Approval Hearing to decide whether to approve the settlement.  You may attend, and you may ask to speak at the hearing, but you are not required to do either.

| **WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?** |
|---|
| The Court will hold a Final Approval Hearing at **[time]** and **[date]** before the Honorable Jeffrey S. White, Courtroom 5, United States District Court, Northern District of California – Oakland, 1301 Clay Street, Oakland, California 94612.  **The hearing date or time may be changed by the Court without notice to the Settlement Class, and you should check the Settlement Website at [web address] or the public court records on file in this lawsuit at https://ecf.cand.uscourts.gov for any updates.**  At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable and adequate.  The Court will also consider how much to award Class Counsel as reasonable attorneys' fees and litigation expenses.  We do not know how long this decision will take. |

| **DO I HAVE TO COME TO THE HEARING?** |
|---|
| No.  Class Counsel will answer any questions the Court may have.  But you are welcome to come to the hearing at your own expense.  If you submit an objection, you do not have to attend the hearing.  As long as you filed and delivered your written objection on time, signed it and provided all of the required information, the Court will consider it.  You may also pay your own lawyer to attend the hearing, but it is not necessary. |

| **MAY I SPEAK AT THE HEARING?** |
|---|
| In its discretion, the Court may or may not allow Settlement Class Members to speak at the hearing.  You cannot speak at the hearing if you exclude yourself from the Settlement Class. |

## IF YOU DO NOTHING

| **WHAT HAPPENS IF I DO NOTHING AT ALL?** |
|---|
| If you do nothing, you will be part of the Settlement Class.  You will receive a cash payment from the settlement and you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Aegis about the claims and issues in this case. |

## GETTING MORE INFORMATION

| **ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?** |
|---|
| The Stipulation of Settlement contains the complete terms of the parties' agreement.  You can get a copy at **[Settlement Website]**, or by reviewing the records on file in the Court's civil case records at **https://ecf.cand.uscourts.gov**.<br><br>The pleadings and other documents in this lawsuit may also be examined during regular business hours at the Office of the Clerk, United States District Court, Northern District of California – Oakland, 1301 Clay Street, Oakland, California 94612 or online at **https://ecf.cand.uscourts.gov**.<br><br>If you have additional questions, you may call the Settlement Administrator at **[insert]**. |
| |
| **DO NOT CONTACT THE COURT OR COURT CLERK'S OFFICE REGARDING THIS NOTICE.** |
| |
| **By order of the Honorable Jeffrey S. White, United States District Court, Northern District of California – Oakland.** |
| DATED: _____                      [/s/ The Honorable Jeffrey S. White] |
|                                                           Judge of the United States District Court |
|                                                           Northern District of California – Oakland |

# LEGAL NOTICE

**If you resided at one of the Aegis Living branded assisted living facilities
(1) in California at any time between April 12, 2012 through and including October 30, 2020, or
(2) in Washington at any time between March 8, 2014 through and including October 30, 2020,
you are a potential Settlement Class Member and could be entitled to benefits under a class action settlement.**

## WHAT IS THIS LAWSUIT ABOUT?

A proposed settlement of a class action entitled *June Newirth, et al. v. Aegis Senior Communities, LLC, dba Aegis Living*, and *Carol M. Morrison et al. v. Aegis Senior Communities, LLC, dba Aegis Living*, has been reached in the United States District Court, Northern District of California – Oakland (case number 16-cv-03991-JSW).

Plaintiffs allege that Aegis made misleading statements and/or omissions about how resident evaluations would be used to determine, set and monitor staffing levels at Aegis's assisted living facilities in California and Washington, which Plaintiffs allege resulted in monetary damages to residents.  Aegis denies all allegations and claims in the lawsuit and denies that it committed any wrongdoing.  This settlement is not an admission of any wrongdoing by Aegis.

## WHAT DOES THE SETTLEMENT PROVIDE?

If the Court approves the proposed settlement and you do not request to be excluded from the settlement class, the cash payment for each Settlement Class Member who paid a Community Fee during the Settlement Class Period will be approximately ___% of the amount of the Community Fee paid, depending on the amounts the Court awards for attorneys' fees and costs.  Settlement Class Members who paid no Community Fee or for whom payment information is unavailable shall each be entitled to a Settlement Award in an amount to be calculated as set forth in the Settlement Stipulation and approved by the Court. To be eligible for benefits under the settlement, you must be a Settlement Class Member or a legal successor of a deceased Settlement Class Member.

## WHAT ARE MY RIGHTS AND OPTIONS?

If you are a Settlement Class Member, you may include yourself in the settlement class and seek money from the class settlement but give up your right to sue in a different case about the same subject matter.  If you choose this option, you do not need to do anything, as you will automatically be included in the settlement class. Alternatively, you can include yourself in the settlement class and seek money from the class settlement, give up your right to sue in a different case about the same subject matter, but object to the terms of the settlement by submitting a written objection. Your third option is to exclude yourself from the settlement class and give up your right to seek money from the class settlement but keep your right to sue in a different case about the same subject matter. You will need to prepare and submit a timely written request to be excluded from the settlement class.  Please visit **[settlement website]** for instructions on how to submit a written objection to the settlement or a request for exclusion. Written objections and exclusion requests must be submitted no later than **[date].**

## FAIRNESS HEARING

The Court will hold a Final Approval Hearing on **[date]** at **[time],** to decide whether to approve the settlement before the Honorable Jeffrey S. White, Courtroom 5, United States District Court, Northern District of California – Oakland, 1301 Clay Street, Oakland, California 94612.  The Court will also decide Plaintiffs' request for attorneys' fees (not to exceed $6.35 million) and litigation costs (not to exceed $1,300,000).  The date, time, or place may be changed by the Court without notice to the settlement class, so please check for updates on the Settlement Website at **[settlement website].  You do not need to attend the hearing but may do so at your own expense.**

## OBTAIN MORE INFORMATION

More information about the lawsuit and settlement can be found at **[settlement website],** by calling the number below, or by reviewing online court records at https://ecf.cand.uscourts.gov.

**[settlement website]
1-888-XXX-XXXX**

# EXHIBIT 3

1  Kathryn A. Stebner, State Bar No. 121088
   **STEBNER AND ASSOCIATES**
2  870 Market Street, Suite 1212
   San Francisco, CA  94102
3  Tel:  (415) 362-9800
   Fax:  (415) 362-9801
4
   Guy B. Wallace, State Bar No. 176151
5  **SCHNEIDER WALLACE COTTRELL KONECKY LLP**
   2000 Powell Street, Suite 1400
6  Emeryville, CA 94608
   Tel:     (415) 421-7100
7  Fax:     (415) 421-7105

8  [Additional counsel listed on service list]

9  Attorneys for Plaintiff and the Proposed Class

10
                        **UNITED STATES DISTRICT COURT**
11
               **NORTHERN DISTRICT OF CALIFORNIA - OAKLAND**
12

| | |
|---|---|
| June Newirth, by and through her Guardian ad Litem, Frederick J. Newirth; Barbara Feinberg; and Elizabeth Barber, Andrew Bardin, and Thomas Bardin as successors-in-interest to the Estate of Margaret Pierce; on their own behalves and on behalf of others similarly situated, | CASE NO.  **4:16-cv-03991-JSW** <br><br> **[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT** |
| Plaintiffs, | |
| vs. | Judge:  Hon. Jeffrey S. White <br> Courtroom 5, 2nd Floor |
| Aegis Senior Communities, LLC, dba Aegis Living; and Does 1 Through 100, | Action Filed: April 12, 2016 <br> Trial Date: None Set |
| Defendants. | |

**RECITALS**

A.      Plaintiffs June Newirth, by and through her successor-in-interest Kathi Troy; Elizabeth Barber, Andrew Bardin, and Thomas Bardin as successors-in-interest to the Estate of Margaret Pierce; and Carol M. Morrison by Stacy A. Van Vleck as Attorney-in-Fact (collectively, "Plaintiffs"), on their own behalf and on behalf of others similarly situated, and Defendant Aegis Senior Communities, LLC, dba Aegis Living ("Defendant") have entered into a Stipulation of Settlement ("Settlement Stipulation"), dated _____, 2020, to resolve the action *June Newirth, et al. v. Aegis Senior Communities, LLC, dba Aegis Living*, case no. 16-cv-03991-JSW ("California Action") and the action *Carol M. Morrison, et al. v. Aegis Senior Communities, LLC, dba Aegis Living*, case no. 18-2-06326-4-SEA ("Washington Action") after substantial discovery and lengthy arms-length settlement discussion.

B.      The parties have agreed to settle the California Action and the Washington Action (together, "Actions") upon the terms and conditions set forth in the Settlement Stipulation. The definitions in the Settlement Stipulation are hereby incorporated as though fully set forth in this Order.  This Court has jurisdiction over the subject matter and Parties to the Actions pursuant to 28 U.S.C. § 1332(d)(2), 28 U.S.C. § 1453, and 28 U.S.C. § 1367.

C.      The Settlement Class shall consist of the following subclasses:

(a) All persons who resided at one of the Aegis Living branded California assisted living facilities at any time between April 12, 2012, through and including October 30, 2020 (the "California Class Period") that were owned or managed by Defendant or in which Defendant was identified as a licensee by California's Department of Social Services, including without limitation the following communities: Aegis Gardens (Fremont), Aegis of Aptos, Aegis of Carmichael, Aegis of Corte Madera, Aegis of Dana Point, Aegis of Fremont, Aegis of Granada Hills, Aegis of Laguna Niguel, Aegis of Moraga, Aegis of Napa, Aegis of Pleasant Hill, Aegis of San Francisco, Aegis of San Rafael[1], Aegis of Shadowridge (Oceanside), and Aegis of Ventura ("California

---

[1] With respect to Aegis of San Rafael, the Settlement Class includes only persons who resided at the Aegis of San Rafael facility between April 12, 2012 through and including March 31, 2016.

1    Subclass"); and

2          (b) All Persons who resided at one of the Aegis Living branded Washington

3 assisted living facilities at any time between March 8, 2014, through and including October 30,

4 2020 (the "Washington Class Period") that were owned or managed by Defendant or in which

5 Defendant was identified as a licensee by Washington's Department of Social and Health

6 Services, including without limitation the following communities: Aegis Gardens (Newcastle),

7 Aegis Lodge (Kirkland), Aegis of Ballard, Aegis of Bellevue, Callahan House (Shoreline), Aegis

8 of Issaquah, Aegis of Kent, Aegis of Kirkland, Aegis of Lynnwood, Aegis of Madison (Seattle),

9 Aegis of Marymoor (Redmond), Aegis of Mercer Island, Queen Anne on Galer, Queen Anne

10 Rodgers Park, Aegis of Ravenna (Seattle), Aegis of Redmond, Aegis of Shoreline, and Aegis of

11 West Seattle ("Washington Subclass").

12       D.      Excluded from the Settlement Class are: (i) Defendants and their officers, directors

13 and employees; (ii) any Settlement Class Member (or their legal successors) who submits a valid

14 and timely Request for Exclusion; and (iii) the Judges to whom this Action and the Other Actions

15 are assigned and any members of their immediate families.

16       E.      The proposed Class Representatives are Plaintiffs Kathi Troy as successor-in-

17 interest to the Estate of June Newirth; Elizabeth Barber, Andrew Bardin, and Thomas Bardin as

18 successors-in-interest to the Estate of Margaret Pierce; and Carol M. Morrison by Stacy A. Van

19 Vleck as Attorney-in-Fact.

20       F.      The proposed Class Counsel are: Kathryn Stebner of Stebner & Associates;

21 Christopher Healey of Dentons US LLP; Guy Wallace of Schneider Wallace Cottrell Konecky

22 Wotkyns LLP; Robert Arns of The Arns Law Firm; Michael D. Thamer of the Law Offices of

23 Michael D. Thamer; Megan Yarnall of Janssen Malloy LLP; David Marks of Marks, Balette,

24 Giessel & Young, P.L.L.C.; Dan Drachler of Zwerling, Schachter & Zwerling, LLP; and Leah

25 Snyder of Ember Law, P.L.L.C.

26                       **FINDINGS**

27       1.      Having read and considered the Parties' Settlement Stipulation and Plaintiffs'

28

Motion for Preliminary Settlement Approval, and the exhibits thereto, the Court makes the following findings for purposes of preliminary settlement approval only:

2.      The Settlement Stipulation, including all exhibits thereto, is preliminarily approved as fair, reasonable, and adequate. The Plaintiffs, by and through their counsel, have investigated the facts and law related to the matters alleged in the Actions, have engaged in extensive motion practice, and have evaluated the risks associated with continued litigation, trial, and/or appeal. The Court finds that the Settlement Stipulation was reached in the absence of collusion, is the product of informed, good-faith, arms-length negotiations between the parties and their capable and experienced counsel, including two full-day formal mediations for the California Action, and two additional full-day joint mediations for both Actions.

3.      The Court further finds that the proposed Settlement Class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3), and should be certified for settlement purposes only; that the Named Plaintiffs should be appointed Class Representatives and the attorneys identified above should be preliminarily appointed as Class Counsel; and that it is appropriate to effectuate notice to the Settlement Class as set forth in the Settlement Stipulation, and to schedule a hearing for the Court to determine whether to grant final approval for the class action settlement ("Final Approval Hearing").

4.      The Court finds that the Settlement Stipulation confers substantial benefits upon the Settlement Class, particularly in light of the injunctive relief and the damages that the Class Representatives and Class Counsel believe would be recoverable at trial and the defenses that would be asserted and pursued, without the costs, uncertainty, delays, and other risks associated with continued litigation, trial, and/or appeal.

5.      The Court has conducted a preliminary assessment of the Settlement Stipulation and finds that the proposed settlement is within the "range of reasonableness" meriting possible final approval such that dissemination of notice to the Settlement Class Members, and the scheduling of a final approval hearing, are worthwhile and appropriate.  4 *Newberg* § 11.25; *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007); *Young v.*

1 | *Polo Retail, LLC*, 2006 WL 3050861, at \*5 (N.D. Cal. Oct. 25, 2006).

2 |     6.    For settlement purposes only, the Court preliminarily finds that the prerequisites for

3 | a settlement class under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been

4 | satisfied, including: (a) numerosity; (b) commonality; (c) typicality; (d) adequacy of the Class

5 | Representatives and Class Counsel; (e) predominance of common questions; and (f) superiority.

6 |     a.    For settlement purposes only, the Court designates the Named Plaintiffs as

7 | representatives of the Settlement Class.

8 |     b.    For settlement purposes only, the Court preliminarily appoints as Class

9 | Counsel to effectuate the Settlement Stipulation: Kathryn A. Stebner, Christopher J. Healey,

10 | Michael D. Thamer, Guy B. Wallace, David T. Marks, Robert S. Arns, W. Megan Yarnall, Dan

11 | Drachler, and Leah S. Snyder.  For purposes of these settlement approval proceedings, the Court

12 | finds that these attorneys and their law firms are well-qualified to serve as Class Counsel.

13 |     c.    In addition to injunctive relief, the Settlement Stipulation provides for

14 | monetary relief to Settlement Class Members.

15 |     7.    The Court finds that the Class Notice (both in long form and summary form)

16 | attached as Exhibit 2 to the Settlement Stipulation is reasonable and constitutes due, adequate and

17 | sufficient notice to all persons entitled to receive notice, and meets the requirements of due

18 | process and Rule 23. The Court further finds that the Class Notice complies with Rule 23(c)(2)(B)

19 | because it is appropriate under the circumstances, provides individual notice to all Settlement

20 | Class Members who can be identified through a reasonable effort, and is reasonably calculated

21 | under all the circumstances to apprise the Settlement Class Members of the pendency of the

22 | Actions, the terms of the Settlement Stipulation, and the right to object to and be excluded from

23 | the Settlement Stipulation.  The Court finds that dissemination of the Class Notice in the manner

24 | set forth in this Order and the Settlement Stipulation meets the requirements of due process and is

25 | the best notice practicable under the circumstances and shall constitute due and sufficient notice to

26 | all persons entitled thereto.

27 | //

28 |

## ORDER

Accordingly, and good cause appearing, IT IS HEREBY ORDERED and ADJUDGED as follows:

**Preliminary Settlement Approval**

8.     The Court preliminarily approves the parties' settlement as set forth in the Settlement Stipulation and preliminarily grants class certification for the Settlement Class as defined above, and the Court approves the Class Representatives and Class Counsel to act on behalf of the Settlement Class.

**Establishing and Maintaining the Settlement Fund**

9.     The Court approves the designation of The Huntington National Bank, ("Escrow Agent") to serve as the Escrow Agent for the Settlement Fund, pursuant to the terms of the Settlement Stipulation and Exhibit 4 of the Settlement Stipulation, the Escrow Agreement and Escrow Procedure Agreement.   The Court further approves  establishing and maintaining the Settlement Fund pursuant to the terms of the Settlement Stipulation, the Escrow Agreement, and the Escrow Procedure Agreement, and orders the Escrow Agent and Settlement Administrator to carry out their duties under the Settlement Stipulation, the Escrow Agreement, and the Escrow Procedure Agreement with respect to the Settlement Fund.  All funds held in the Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned to Defendants pursuant to the Settlement Stipulation, Escrow Agreement, the Escrow Procedure Agreement, or further order of the Court.

**Approval as to the Form and Method of Class Notice**

10.     The Court approves, as to form and content, the proposed long form and summary form of Class Notice, copies of which are hereto attached collectively as **Exhibit 1**.

11.     The Court approves the designation of CPT Group, Inc., (herein "Settlement Administrator") to serve as the settlement administrator for the settlement. The Settlement Administrator shall disseminate Class Notice, supervise and carry out the notice procedure and

other administrative functions, shall respond to Settlement Class Member inquiries, and perform such other duties as set forth in the Settlement Stipulation and this Order under the direction and supervision of the Court.

12.     The Court directs the Settlement Administrator to establish a Settlement Website, making available copies of this Order, the Class Notice, the Settlement Stipulation and all filed exhibits thereto, and such other information as may be of assistance to Settlement Class Members or required under the Settlement Stipulation.

13.     The Settlement Administrator is ordered to substantially complete dissemination of the Class Notice no later than ten (10) business days after the entry of this Preliminary Approval Order.

14.     The costs of the Class Notice, creating and maintaining the Settlement Website, and all other Notice and Payment Distribution Administration Expenses shall be paid out of the Settlement Fund in accordance with the applicable provisions of the Settlement Stipulation, Escrow Agreement, and Escrow Procedure Agreement.

15.     The Settlement Administrator shall mail and e-mail the Notice to all Settlement Class Members at the addresses provided by Defendant, as updated by the Settlement Administrator, and shall also publish the summary form of Notice in a single publication of the *USA Today* (California and Washington weekday edition), as set forth in the Settlement Stipulation.

**Procedure for Settlement Class Members to Participate in the Settlement**

16.     Settlement Class Members who wish to receive a settlement award do not need to take any action.  If a Settlement Class Member is deceased, the legal successor for the Settlement Class Member may obtain payment by providing the Settlement Administrator with appropriate proof of successor status and a current address.

**Procedure for Requesting Exclusion from the Class**

17.     Any person falling within the definition of the Settlement Class may, upon his or her request, be excluded from the Settlement Class. Any such persons (or their legal representative

or successor-in-interest) must submit a request for exclusion to the Settlement Administrator via first class United States mail postmarked no later than the Opt Out Date, which shall be sixty (60) calendar days from the Notice Date, as set forth in the Class Notice.  Requests for exclusion purportedly filed on behalf of groups of persons are prohibited and will be deemed to be void.

18.    Any Settlement Class Member who does not send a signed request for exclusion postmarked or delivered on or before the Opt-Out Date will be deemed to be a Settlement Class Member for all purposes and will be bound by all further orders of the Court in this Action and by the terms of the settlement, if finally approved by the Court. The written request for exclusion must be signed by the potential Settlement Class Member (or his/her legal representative or successor-in-interest) and contain the following information: (a) the Settlement Class Member's name, current address and telephone number and (b) a statement that indicates a desire to be excluded from the Settlement Class.  All Persons who submit valid and timely requests for exclusion in the manner set forth in the Settlement Stipulation shall have no rights under the Settlement Stipulation and shall not be bound by the Settlement Stipulation or the Final Judgment and Order.

19.    The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with all timely Requests for Exclusion on a rolling basis upon receipt and a final list of all timely Requests for Exclusion within five (5) business days after the Opt Out Date.  The names for all timely Requests for Exclusion will be deemed confidential under the Protective Order and shall not be made publicly available.  In addition to its affidavit to the Court attesting that Notice was disseminated pursuant to the Notice Program, the Settlement Administrator shall also include in its affidavit the final number of all timely Requests for Exclusion five (5) business days prior to the Final Approval Hearing.

**Procedure for Objecting to the Settlement**

20.    Any Settlement Class Member (or their legal representative or successor-in-interest) who desires to object to the proposed settlement, including the requested attorneys' fees and expenses or service awards to the Plaintiffs, must timely file with the Clerk of this Court a

1   notice of the objection(s), together with all papers that the Settlement Class Member desires to

2   submit to the Court no later than the Objection Date, which shall be sixty (60) calendar days after

3   the Notice Date as set forth in the Class Notice.  The objection must also be served on Class

4   Counsel and Defendant's counsel no later than the Objection Date.

5      21. The written objection must include: (a) a heading which refers to the Action; (b)

6   the objector's name, address, telephone number and, if represented by counsel, of his/her counsel;

7   (c) a statement that the objector resided at or signed a contract with Defendant, predecessors,

8   successors, assigns or related entities during the Settlement Class Period and (d) the Defendant

9   assisted living facility at which they resided, or that the objector is the legal representative of such

10  a person; (e) a statement whether the objector intends to appear at the Final Approval Hearing,

11  either in person or through counsel; (f) a clear and concise statement of the objection to the

12  Settlement and the Settlement Stipulation, including all factual and/or legal grounds supporting the

13  objection; (g) copies of any papers, briefs, or other documents upon which the objection is based;

14  and (h) the objector's signature under penalty of perjury.

15     22. Absent good cause found by the Court, any Settlement Class Member who fails to

16  make a timely written objection in the time and manner specified above shall be deemed to have

17  waived any objections and shall be foreclosed from making any objection (whether by objection,

18  appeal or otherwise) to the Settlement and the Settlement Stipulation.

19  **Final Approval Hearing**

20     23. The Court will hold a final approval hearing on _____, at

21  _____a.m./p.m., before this Court in Courtroom 5, United States District Court, Northern

22  District of California – Oakland, 1301 Clay Street, Oakland, California 94612, for the following

23  purposes:

24      A. determining whether the proposed settlement of the Actions on the terms

25  and conditions provided for in the Settlement Stipulation is fair, reasonable, and adequate and

26  should be approved by the Court;

27      B. considering whether the Court should enter the [Proposed] Order of Final

28

Approval and Judgment Approving Class Action Settlement;

        C.     considering whether the Court should enter an Order for the Injunction;

        D.     considering the application for service awards to the Named Plaintiffs as provided for under the Settlement Stipulation;

        E.     considering the application of Class Counsel for an award of attorneys' fees and litigation expenses as provided for under the Settlement Stipulation; and

        F.     ruling upon such other matters as the Court may deem just and appropriate.

24.     The Court may adjourn the Final Approval Hearing and later reconvene such hearing without further notice to the Settlement Class Members.

25.     Any Settlement Class Member (or their legal representative) who has timely filed an objection pursuant to Paragraphs 20 and 21 above may appear at the Final Approval Hearing, either in person or through counsel hired at the Settlement Class Member's expense, to object to any aspect of the fairness, reasonableness, or adequacy of the settlement and the Settlement Stipulation, including Class Counsel's request for award of attorneys' fees and litigation costs. All Settlement Class Members who do not enter an appearance will be represented by Class Counsel.

26.     Opening papers in support of final approval of the Settlement Stipulation, and opening papers in support of Plaintiffs' and Class Counsel's application for attorneys' fees, litigation expenses and service awards, shall be filed and served fifteen (15) calendar days prior to the deadline for any objections to the Settlement Stipulation.  Opposition papers, if any, must be filed with the Court and served on the Parties' counsel at least fourteen (14) calendar days prior to the Final Approval Hearing. Reply papers, including response to oppositions or objections, if any, must be filed and served at least seven (7) calendar days prior to the Final Approval Hearing.

27.     The Parties may further modify the Settlement Stipulation prior to the Final Approval Hearing so long as such modifications do not materially change the terms of the settlement provided therein. The Court may approve the Settlement Stipulation with such modifications as may be agreed to by the Parties, if appropriate, without further notice to

1  Settlement Class Members.

2      28.    The schedule for the settlement process satisfies the requirements set forth in *In re*

3  *Mercury Interactive Corporation Securities Litigation*, 618 F.3d 988, 994-95 (9th Cir. 2010), in

4  that Settlement Class Members are provided notice and access to Class Counsel's pleading in

5  connection with their Motion for Final Approval of the Settlement and Application for Attorneys'

6  Fees and Costs, as well as an adequate amount of time to review such information before the

7  deadline for submission of requests for exclusion or objections.

8      29.    Counsel for the Parties are hereby authorized to utilize all reasonable procedures in

9  connection with the administration of the settlement which are not materially inconsistent with

10  either this Order or the terms of the Settlement Stipulation, Escrow Agreement, and/or Escrow

11  Procedure Agreement.

12      IT IS SO ORDERED.

13  DATED: _____          _____

14                                     The Honorable Jeffrey S. White

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO.  4:16-CV-03991-JSW
[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT

# EXHIBIT 4

## ESCROW AGREEMENT

This Escrow Agreement ("Escrow Agreement") dated _____, is made among Stebner & Associates, Dentons US LLP, and Schneider Wallace Cottrell Konecky, LLP ("Representative Class Counsel"), Aegis Senior Communities LLC, a Washington limited liability company, d/b/a Aegis Living (the "Defendant"), CPT Group, Inc. ("Settlement Administrator") and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, as escrow agent ("Escrow Agent") (individually "Escrow Party" and collectively "Escrow Parties").

### Recitals

A.      This Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Stipulation of Settlement (the "Settlement Agreement") dated _____ attached hereto as Exhibit A, entered into by, among others, Representative Class Counsel on behalf of the Named Plaintiffs and the Defendant, will be paid in connection with the class actions captioned *June Newirth et al v. Aegis Senior Communities LLC, dba Aegis Living; and Does 1 Through 100*, Case No. 4:16-CV-03991-JSW pending in the United States District Court, Northern District of California (the "Court") and *Carol M. Morrison* et al *vs. Aegis Senior Communities, LLC, dba Aegis Living*; *and Does 1 – 100*, Case No. 18-2-06326-4 SEA, pending in the Superior Court of Washington, County of King, and which will be consolidated and/or joined with the *Newirth* action before the Court (collectively "Class Action").

B.      Pursuant to the terms of the Settlement Agreement, the Defendant has agreed to pay or cause to be paid the total amount of $16,250,000 in cash (the "Settlement Amount") in settlement of the claims brought against the Defendant in the Class Action.

C.      The Settlement Amount will be paid severally and not jointly by the Defendant, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (together, the "Contributors" and each a "Contributor").

D.      The Settlement Amount is to be deposited into escrow and, if the settlement is approved by the Court in accordance with the terms of the Settlement Agreement, used, together with any interest accrued thereon, to satisfy payments to Settlement Class Members, payments for Attorneys' Fees and Expenses, payments for tax liabilities, payments for Settlement Administrator fees and costs, payment for Class Representative Service Awards, and all of the Defendant's monetary obligations under and pursuant to the terms of the Settlement Agreement.

E.      Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

**Agreement**

1. <u>Recitals</u>.  The recitals above and the exhibits and schedules now or later attached to this Agreement are incorporated herein by reference and made a part hereof.

2. <u>Contributors and Defense Counsel Authorized Agents as Third-Party Beneficiaries</u>.  The Escrow Parties agree that the Contributors and the Defense Counsel Authorized Agents are third-party beneficiaries to this Escrow Agreement to the extent of their respective contributions to the Settlement Fund until there has been Final Disbursement as defined in Section 12 below.

3. <u>Appointment of Escrow Agent</u>.  The Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.

4. <u>The Escrow Account</u>.  Within five (5) calendar days after the Court grants the Preliminary Approval Order, Escrow Agent shall establish and maintain an escrow account titled as Aegis Settlement Fund (the "<u>Escrow Account</u>") and shall provide to the Authorized Agents (as defined below) the account number and wire instructions for the Escrow Account.  Pursuant to the Settlement Agreement, the Contributors shall deposit the Settlement Amount into the Escrow Account as follows:  (a) $15,625,000 shall be deposited within thirty (30) calendar days after the Court grants the Preliminary Approval Order; and (b) the remaining balance of $625,000 shall be deposited within 180 calendar days after the Court grants the Preliminary Approval Order.  Escrow Agent shall receive the Settlement Amount into the Escrow Account; the Settlement Amount and all interest accrued thereon shall be referred to herein as the "<u>Settlement Fund</u>."  The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement and in orders of the Court approving the disbursement of the Settlement Fund. The Authorized Agents (as defined below) shall have the right to inspect and obtain copies of the records of the Escrow Agent pertaining to the Escrow Account and this Escrow Agreement and to receive monthly reports of the status of the Escrow Account. On or before the fifth (5th) business day following each calendar month during the term of this Escrow Agreement, the Escrow Agent shall deliver account statements to the Authorized Agents with respect to the Escrow Account for the prior calendar month, which statements shall include the account balance, disbursements made and income earned during the preceding month.

5. <u>Investment of Settlement Fund</u>.  Prior to the Final Disbursement as defined in Section 12, below, at the written direction of the Defendant, Escrow Agent shall invest the Settlement Fund exclusively in securities or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government, but excluding a government money market fund as defined by Rule 2a-7 of the Investment Company Act of 1940.  After any payment of the Settlement

Amount is deposited into the Escrow Account, the Contributors and the Authorized Agents shall not bear any responsibility for or liability related to the investment of such payment and the Settlement Fund by the Escrow Agent.

6. <u>Escrow Funds Subject to Jurisdiction of the Court</u>.  The Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Settlement Fund shall be distributed, pursuant to the Settlement Agreement and on further order(s) of the Court.

7. <u>Tax Treatment & Report</u>.  The Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1.  Representative Class Counsel and, as required by law, the Defendant, shall jointly and timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date.  For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be the Settlement Administrator.  The Settlement Administrator shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1.  The Settlement Administrator shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Settlement Fund and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

8. <u>Tax Payments of Settlement Fund</u>.  All Taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the Settlement Fund and the Escrow Agent shall timely pay such Taxes out of the Settlement Fund without prior order of the Court, as directed by Representative Class Counsel.  The Settlement Administrator shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties and the timely filing of all tax returns and other tax reports required by law.  The Settlement Administrator may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Section 7 and this Section 8, and the expense of such assistance shall be paid from the Settlement Fund by the Escrow Agent upon approval by the Court.  The Settlement Fund shall indemnify and hold each and all Contributors and Defense Counsel Authorized Agents harmless for any taxes that may be deemed to be payable by the Defendant by reason of the income earned on the Settlement Fund, and Escrow Agent, as directed by Representative Class Counsel, shall establish such reserves as are necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this Section. If the Settlement Fund is returned to the Contributors pursuant to the terms of this Escrow Agreement and the Settlement Agreement, each of the Contributors shall provide Escrow Agent with a properly completed Form W-9.

9. <u>Authorized Agents</u>.

4840-7275-5924.1
US_Active\115531308\V-2

a.   The Defendant hereby appoints the following as the "Defense Counsel Authorized Agents" to act as agents for and on behalf of the Defendant as provided in this Escrow Agreement:



b.   The "Class Counsel Authorized Agents" are:



c.   The Defense Counsel Authorized Agents and the Class Counsel Authorized Agents may be referred to individually as an "Authorized Agent" and collectively as the "Authorized Agents."

d.   The Authorized Agents shall act in good faith to carry out the transactions contemplated by the Settlement Agreement and this Escrow Agreement. No Authorized Agent shall be liable or responsible in any way for any cost, damage or expense arising out of or based upon such Authorized Agent's performance of his or her duties under this Escrow Agreement. Each Authorized Agent shall be indemnified and held harmless by the Settlement Fund against any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by such Authorized Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Authorized Agent, except as a result of such Authorized Agent's bad faith, willful misconduct or gross negligence.

Information and Signature Documents.  Prior to or at the time that the settlement funds are deposited into the Escrow Account pursuant to Section 4 of this Agreement, each Authorized Agent will provide to the Escrow Agent an Information and Signature Document

11.   Revisions to Information and Signature Documents.  An Authorized Agent may change the information on his or her Information and Signature Document solely by means of



12. <u>Disbursements Up To and Including the Final Disbursement</u>.

    a.     "<u>Final Disbursement</u>" means the transfer of the entirety of the Settlement Fund, including accrued interest, to the Settlement Administrator following the Effective Date.

    b.     All disbursements from the Settlement Fund, other than payments for Taxes in accordance with Section 8, up to and including the Final Disbursement, must comply with the provisions of this Section 12.

    c.     <u>Standing Funds Transfer Instructions</u>.  Prior to or at the time that the Settlement Amount is deposited into the Escrow Account pursuant to Section 4 of this Agreement, the Defendant shall deliver Standing Funds Transfer Instructions to Escrow Agent, to be used solely upon Escrow Agent's receipt of Defense Authorized Disbursement Instructions, containing the wet signatures of all Defense Counsel Authorized Agents setting forth wiring instructions to be used to transfer money:  (a) to the Contributors severally in the event of a return of funds to the Contributors pursuant to Section 15 below, (b) to the Settlement Administrator for Court-approved notice and administration costs up to $40,000 in the event of a return of funds to the Contributors, (c) to Class Counsel for Court-approved Attorneys' Fees and Expenses, (d) to each Class Representative for Court-approved Service Awards not to exceed $15,000 each, and (e) to the Settlement Administrator for purposes of the Final Disbursement.

          i.     The Escrow Parties each acknowledge that the Escrow Agent is authorized to use the Standing Funds Transfer Instructions to disburse any funds due to the Settlement Administrator or to the

Contributors, severally as described herein, or to Representative Class Counsel, provided that the Escrow Agent has received a Defense Authorized Disbursement Instruction as defined in Section 12.d.i below prior to executing the transfer.

 The Standing Funds Transfer Instructions may be amended (the "Amended Funds Transfer Instructions") only by means of



d.   <u>Defense Authorized Disbursement Instructions</u>:



All disbursements, other than Tax Payments in accordance with Section 8 and any award to Class Counsel for Attorneys' Fees and Expenses, up to and including the Final Disbursement may only be authorized via a Defense Authorized Disbursement Instruction, which is made up

e.   <u>Class Authorized Disbursement Instructions.</u>

4840-7275-5924.1
US_Active\115531308\V-2

i. Before Final Disbursement, Class Authorized Disbursement Instructions may be used solely for the following two purposes: (1) disbursements for Tax Payments in accordance with Section 8 and (2) disbursements for any award to Class Counsel for Attorneys' Fees and Expenses, which shall be accompanied by the applicable Court order. A Class Authorized Disbursement must be made up of





f. Within three (3) business days after the Court issues the Order of Final Approval and Judgment Approving Class Action Settlement, if any, a Defense Authorized Disbursement Instruction for the Final Disbursement will be provided to the Escrow Agent with instructions that the Final Disbursement be made on the third business day after the anticipated Effective Date. The date

of the Final Disbursement will be specified in the Final Disbursement Instruction.  If prior to the anticipated Effective Date, the Defense Counsel Authorized Agents determine that the anticipated Effective Date will not occur timely, then ██████████████████████ will rescind the Defense Authorized Disbursement Instruction for the Final Disbursement. If on the earlier of (i) the rescission of the Defense Authorized Disbursement Instruction for the Final Disbursement or (ii) a later date, a new Effective Date can be determined, then ██████████████████ will provide a new Defense Authorized Disbursement Instruction for the Final Disbursement within one business day of such determination.

g.  After Final Disbursement, the Contributors and the Defense Counsel Authorized Agents shall have no responsibility for the Settlement Fund and Representative Class Counsel assumes full responsibility for the Settlement Fund.

13.  <u>Account Management After Final Disbursement.</u>  After Final Disbursement, the Settlement Administrator shall disburse all funds in accordance with the Settlement Agreement in consultation with Representative Class Counsel, as necessary.  After Final Disbursement, no Escrow Party shall have any further obligations under this Escrow Agreement.

14.  <u>Notice of Disbursements; Errors.</u>  The Escrow Agent shall immediately notify Representative Class Counsel and the Defense Counsel Authorized Agents when a disbursement has been completed.  Representative Class Counsel and Defense Counsel Authorized Agents shall notify Escrow Agent of any errors, delays or other problems within thirty (30) days after receiving notification that a transaction has been executed.  If it is determined that the transaction was delayed or erroneously executed as a result of Escrow Agent's error, Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law.  Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of ninety-one (91) days.

15.  <u>Termination of Settlement.</u>  If the Settlement Agreement terminates for any reason in accordance with its terms prior to the date on which Escrow Agent makes the Final Disbursement, then Representative Class Counsel and the Defense Counsel Authorized Agents shall jointly notify Escrow Agent of the termination of the Settlement Agreement. Upon such notification, the balance of the Settlement Fund, together with any interest earned thereon, less Court-approved Notice and Administration Expenses up to $40,000, and any unpaid Taxes due, as determined by Representative Class Counsel and the Defense Counsel Authorized Agents, shall be returned to the Contributors in accordance with a Defense Authorized Disbursement Instruction, which is to be submitted to the Escrow Agent within ten (10) business days of the date the Escrow Agent is notified of the termination of the Settlement Agreement and which shall identify the amount to be paid to each Contributor. The Escrow Agent shall not be liable for any losses, costs or expenses arising out of Escrow Agent's performance under any Standing Funds Transfer Instructions, Amended Funds Transfer Instructions, Defense Authorized Disbursement Instruction or Class Authorized

Disbursement Instruction if the Escrow Agent complied with the applicable instructions and the procedures set forth in Sections 11 and 12 of this Escrow Agreement.

16. <u>Fees</u>.  The Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit B. All fees and expenses of the Escrow Agent shall be paid solely from the Settlement Fund.  The Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment by Representative Class Counsel.  If Escrow Agent is asked to provide additional services, such as the preparation and administration of payments to Authorized Claimants, a separate agreement and fee schedule will be entered into.

17. <u>Duties, Liabilities and Rights of Escrow Agent</u>.  This Escrow Agreement sets forth all of the obligations of Escrow Agent, and no additional obligations shall be implied from the terms of this Escrow Agreement or any other agreement, instrument or document.

   a.  Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Authorized Agents, as long as Escrow Agent complies with the verification procedures set forth in Sections 11 and 12 above.

   b.  Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel.  Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Escrow Account only (i) upon approval by Representative Class Counsel and the Defense Counsel Authorized Agents or (ii) pursuant to an order of the Court.

   c.  Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

   d.  Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

   e.  Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of Section 5 of this Escrow Agreement. The Escrow Agent will be indemnified and held harmless by the Settlement Fund against any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Escrow Agent of,

any of the Escrow Agent's duties under this Agreement, except as a result of the Escrow Agent's bad faith, willful misconduct or gross negligence.

f.   Upon distribution of all of the funds in the Escrow Account pursuant to the terms of this Escrow Agreement and any orders of the Court, Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Escrow Agreement, except as otherwise specifically set forth herein.

g.   In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Escrow Agent shall be permitted to interplead all of the assets held hereunder into a court of competent jurisdiction, and thereafter be fully relieved from any and all liability or obligation with respect to disbursement of such interpleaded assets. To the extent possible, the parties further agree to pursue any redress or recourse in connection with such a dispute without making the Escrow Agent a party to same.

18. <u>Non-Assignability by Escrow Agent</u>.   Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Representative Class Counsel and the Defendant.

19. <u>Resignation of Escrow Agent</u>.   Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Escrow Agreement herein.   On the effective date of such resignation, Escrow Agent shall deliver this Escrow Agreement together with any and all related instruments or documents and all funds in the Escrow Account to the successor Escrow Agent appointed in writing by Representative Class Counsel and the Defendant, subject to this Escrow Agreement.   If a successor Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Escrow Agent may petition the Court for the appointment of a successor Escrow Agent, or other appropriate relief.   Any such resulting appointment shall be binding upon all of the parties to this Escrow Agreement.

20. <u>Notices</u>.   Notice to the parties hereto shall be in writing and delivered by hand-delivery, electronic mail or overnight courier service, addressed as follows:

If to Representative
Class Counsel:



If to the
Defendant/Defense
Counsel Authorized
Agents:



4840-7275-5924.1
US_Active\115531308\V-2

12



If to Escrow Agent:

21. <u>Patriot Act Warranties</u>.  Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information").  The parties to this Escrow Agreement agree that they will provide the Escrow Agent with such Identification Information as the Escrow Agent may request in order for the Escrow Agent to satisfy the requirements of the Patriot Act.

22. <u>Cybersecurity</u>.

    a. <u>Security Program</u>. Escrow Agent, as a National Banking Association, shall maintain a comprehensive written information security program ("<u>Security Program</u>") that (i) complies with all applicable laws and (ii) contains reasonable and appropriate administrative, organizational, and physical safeguards, policies and procedures to preserve and protect the Settlement Fund. Such safeguards and procedures shall include, at a minimum: (i) implementation of updated protection programs, including the use of multi-factor authentication for certain systems where deemed necessary and access controls within applications, operating systems, and equipment, except that multi-factor authentication will not be required for mainframe direct access; (ii) ensuring that confidential Escrow Account information is processed, stored, and transmitted in a secure manner including, without limitation, by means of encryption; and (iii) conducting risk assessments, penetration testing, and vulnerability scans.

b. <u>Notice</u>. Escrow Agent shall notify the parties promptly, and in any event within forty-eight (48) hours or sooner as required by law, after it becomes aware of any Cybersecurity Event (as defined below) that impacts the Escrow Account or the Settlement Fund. Escrow Agent shall take prompt steps to remedy the Cybersecurity Event and mitigate any harmful effects. Escrow Agent shall cooperate with the parties in any subsequent investigation, litigation, or provision of notices. Escrow Agent shall document the Cybersecurity Event and shall provide documentation of the Cybersecurity Event to the extent it is requested by any of the Escrow Parties. Unless required by law, Escrow Agent shall not inform any other party of any Cybersecurity Event without first obtaining the prior written consent of the parties hereto. "Cybersecurity Event" means any act or attempt, successful or unsuccessful, to gain unauthorized access to, disrupt or misuse the Escrow Account or information delivered by the parties in relation to the Escrow Account.

23. <u>Entire Agreement</u>.  This Escrow Agreement, including all Schedules and Exhibits hereto constitutes the entire agreement and understanding of the parties hereto. Any modification of this Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto. To the extent this Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

24. <u>Governing Law</u>.  This Escrow Agreement shall be governed by the law of the State of California in all respects. The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Escrow Agent may commence pursuant to this Escrow Agreement for the appointment of a successor escrow agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

25. <u>Termination of Escrow Account</u>.  The Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Escrow Agreement.

26. <u>Miscellaneous Provisions</u>.

a. <u>Counterparts</u>.  This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Escrow Agreement.

b. <u>Further Cooperation</u>.  The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Escrow Agent may reasonably request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Escrow Agreement in order (a)

to give Escrow Agent confirmation and assurance of Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Escrow Agreement, each in such form and substance as may be acceptable to Escrow Agent.

c.   <u>Non-Waiver</u>.  The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.


*[Remainder of page intentionally left blank.]*

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.


THE HUNTINGTON NATIONAL BANK, as Escrow Agent

By: _____
      Rose Kohles, ~~Assistant~~ Vice President


REPRESENTATIVE CLASS COUNSEL

By: _____
      Kathryn A. Stebner, Stebner & Associates


By: _____
      Christopher J. Healey, Dentons US LLP


By: _____
      Guy B. Wallace, Schneider Wallace Cottrell Konecky, LLP


DEFENDANT

AEGIS SENIOR COMMUNITIES LLC


By: _____
Name: _____
Title: _____


SETTLEMENT ADMINISTRATOR

By: _____
      Julie Green, CPT Group, Inc.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Escrow Agent

By: _____
     Rose Kohles, Assistant Vice President

REPRESENTATIVE CLASS COUNSEL

By: _____
     Kathryn A. Stebner, Stebner & Associates

By: _____
     Christopher J. Healey, Dentons US LLP

By: _____
     Guy B. Wallace, Schneider Wallace Cottrell Konecky, LLP

DEFENDANT

AEGIS SENIOR COMMUNITIES LLC

By: _____
Name: _____
Title: _____

SETTLEMENT ADMINISTRATOR

By: _____
     Julie Green, CPT Group, Inc.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.


THE HUNTINGTON NATIONAL BANK, as Escrow Agent

By: _____

      Rose Kohles, Assistant Vice President


REPRESENTATIVE CLASS COUNSEL

By: _____

      Kathryn A. Stebner, Stebner & Associates

By: _____

      Christopher J. Healey, Dentons US LLP


By: _____

      Guy B. Wallace, Schneider Wallace Cottrell Konecky, LLP


DEFENDANT

AEGIS SENIOR COMMUNITIES LLC


By: _____

Name: _____

Title: _____


SETTLEMENT ADMINISTRATOR

By: _____

      Julie Green, CPT Group, Inc.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.


THE HUNTINGTON NATIONAL BANK, as Escrow Agent

By: _____
     Rose Kohles, Assistant Vice President


REPRESENTATIVE CLASS COUNSEL

By: _____
     Kathryn A. Stebner, Stebner & Associates


By: _____
     Christopher J. Healey, Dentons US LLP

By: _____
     Guy B. Wallace, Schneider Wallace Cottrell Konecky, LLP


DEFENDANT

AEGIS SENIOR COMMUNITIES LLC


By: _____
Name: _____
Title: _____


SETTLEMENT ADMINISTRATOR

By: _____
     Julie Green, CPT Group, Inc.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Escrow Agent

By: _____
    Rose Kohles, Assistant Vice President

REPRESENTATIVE CLASS COUNSEL

By: _____
    Kathryn A. Stebner, Stebner & Associates

By: _____
    Christopher J. Healey, Dentons US LLP

By: _____
    Guy B. Wallace, Schneider Wallace Cottrell Konecky, LLP

DEFENDANT

AEGIS SENIOR COMMUNITIES LLC

By: _____
    Dwayne Clark
Name: _____
Title: `Founder, Chairman and CEO`

SETTLEMENT ADMINISTRATOR

By: _____
    Julie Green, CPT Group, Inc.

DocuSign Envelope ID: B9A06F92-B38C-44D3-8D4B-FAB06675D7E7

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.


THE HUNTINGTON NATIONAL BANK, as Escrow Agent

By: _____
        Rose Kohles, Assistant Vice President


REPRESENTATIVE CLASS COUNSEL

By: _____
        Kathryn A. Stebner, Stebner & Associates


By: _____
        Christopher J. Healey, Dentons US LLP


By: _____
        Guy B. Wallace, Schneider Wallace Cottrell Konecky, LLP


DEFENDANT

AEGIS SENIOR COMMUNITIES LLC


By: _____
Name: _____
Title: _____


SETTLEMENT ADMINISTRATOR

By: _____
        Julie Green, CPT Group, Inc.

**Exhibit A**

**Settlement Agreement**

4840-7275-5924.1
US_Active\115531308\V-2

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| June Newirth, by and through her Guardian ad Litem, Frederick J. Newirth; and Elizabeth Barber, Andrew Bardin, and Thomas Bardin as successors-in-interest to the Estate of Margaret Pierce; on their own behalves and on behalf of others similarly situated,<br><br>          Plaintiffs,<br><br>vs.<br><br>Aegis Senior Communities, LLC, dba Aegis Living; and Does 1 Through 100,<br><br>          Defendants. | CASE NO.  4:16-CV-03991-JSW<br><br>**STIPULATION OF SETTLEMENT** |

# RECITALS

A.      This Stipulation of Settlement is entered into by California Named Plaintiffs June Newirth, by and through her successor in interest, Kathi Troy; and Elizabeth Barber, Andrew Bardin, and Thomas Bardin as successors-in-interest to the Estate of Margaret Pierce, on behalf of themselves and all others similarly situated (together, "California Named Plaintiffs"), Washington Named Plaintiff Carol M. Morrison by Stacy A. Van Vleck as Attorney-in-Fact on behalf of herself and all others similarly situated ("Washington Named Plaintiff"), and Defendant Aegis Senior Communities, LLC, dba Aegis Living ("Defendant").  This Stipulation of Settlement resolves in full the California Action and the Washington Action (as defined below).  Subject to Court approval and as provided herein, the Parties hereby stipulate and agree that, in consideration for the promises and covenants set forth in the Stipulation of Settlement and upon the entry by the Court of an Order of Final Approval and Judgment Approving Class Action Settlement and the occurrence of the Effective Date, the California Action and the Washington Action shall be settled and compromised upon the terms and conditions contained herein.  This Stipulation of Settlement is entered into as of the last date it has been executed by the Parties shown on the signature lines at the end of this Agreement.

B.      On April 12, 2016, the California Named Plaintiffs filed a putative class action complaint against Defendant in the Superior Court of California, County of Alameda.  On June 9, 2016, the California Named Plaintiffs filed a First Amended Complaint.  Defendant removed to Federal Court on July 14, 2016.  On July 21, 2016, Defendant filed a Motion to Compel Arbitration and Dismiss Class Claims and a Motion to Dismiss the First Amended Class Action Complaint.  On August 24, 2016, the California Named Plaintiffs filed a Second Amended Complaint captioned *June Newirth, et al. v. Aegis Senior Communities, LLC, dba Aegis Living*, case no. 4:16-cv-03991-JSW ("California Action"), for claims arising under the Consumers Legal Remedies Act ("CLRA", Civ. Code § 1750 et seq.), California's Unfair Competition Law ("UCL", B&P Code § 17200 et seq.), and section 15610.30 of the Welfare and Institutions Code (collectively, the "California Claims").  On September 21, 2016, Defendant filed a Motion to Dismiss the Second Amended Class Action Complaint.  On May 18, 2017, the District Court denied Defendant's Motion to Dismiss the Second Amended Class Action Complaint.  On July 28, 2017, Defendant renewed its Motion to Compel Arbitration and Dismiss Class Claims.  On September 29, 2017, the District Court denied Defendant's renewed Motion to Compel Arbitration and Dismiss Class Claims.  On October 27, 2017, Defendant filed a Notice of Appeal and Motion to Stay Pending Appeal.  On November 21, 2017, the District Court denied Defendant's Motion to Stay Pending Appeal.  On July 24, 2019, the United States Court of Appeals for the Ninth Circuit affirmed the District Court's order denying Defendant's Motion to Compel Arbitration.  On September 10, 2019, Defendant answered the Second Amended Complaint, wherein Defendant expressly denied the allegations and claims alleged in the Second Amended Complaint.  On October 4, 2019, Defendant filed a Motion to Strike Class Definition or to Deny Class Certification in the alternative.  On October 18, 2019, Defendant filed a Motion for Summary Judgment.  On October 21, 2019, the California Named Plaintiffs filed a Motion for Class Certification.  The District Court subsequently granted the stipulated requests by the California Named Plaintiffs and Defendant (together, "California Parties") to continue the hearings on the Motion for Class Certification and Motion for Summary Judgment.  When the California Parties notified the District Court about this settlement on July 23, 2020, the District

Court denied, without prejudice, the Motion for Class Certification, Motion for Summary Judgment, Motion to Strike the Class Definition or Deny Class Certification, subject to renewal if this settlement is not consummated.

C.     The California Parties engaged in substantial discovery and law-and-motion efforts prior to negotiating a settlement of the California Action.  Those efforts included litigation of Defendant's Motion to Dismiss the Second Amended Class Action Complaint, Motion to Compel Arbitration and Dismiss Class Claims, Motion for Summary Judgment, and Motion to Strike the Class Definition or Deny Class Certification; litigation of Defendant's appeal of the District Court's order denying Defendant's Motion to Compel Arbitration; extensive meet and confer efforts and motion practice to obtain Defendant's production of documents and responses to interrogatory discovery; participation in discovery hearings before magistrate judges to compel Defendant's production of certain documents; and extensive written and deposition discovery, including written discovery responses exchanged between the parties, Defendant's production of approximately 132,483 pages of documents, including approximately 621 Excel files, and the depositions of eleven witnesses, including Defendant's executive-level and facility-level personnel, and designated Persons Most Knowledgeable, the Plaintiffs' experts, and two witnesses with knowledge about the claims of the California Named Plaintiffs; as well as data intensive discovery resulting in the production of 78 Excel spreadsheets of employee payroll data as well as meet and confer efforts among Defendant and its resident assessment software vendor to obtain Defendant's resident assessment data which resulted in the production of an additional six data intensive Excel spreadsheets.

D.     On March 8, 2018, the Washington Named Plaintiff filed a putative class action complaint against Defendant in the Superior Court of Washington, County of King.  On October 15, 2018, the Washington Named Plaintiff filed a First Amended Complaint captioned *Carol M. Morrison, et al. v. Aegis Senior Communities, LLC, dba Aegis Living*, case no. 18-2-06326-4-SEA ("Washington Action"), for claims arising under Washington's Consumer Protection Act ("CPA", RCW 19.86.020) and Financial Exploitation of Vulnerable Adults Statute (RCW 74.34.020, 74.34.200) (collectively, the "Washington Claims").  On October 17, 2019, Defendant filed a Motion to Deny Class Certification.  By order dated May 1, 2020, the Washington state court (Hon. Marshall Ferguson) denied Defendant's motion.  On October 25, 2019, Defendant answered the First Amended Complaint, wherein Defendant expressly denied the allegations and claims alleged in the First Amended Complaint.

E.     The Washington Named Plaintiff and Defendant (together, "Washington Parties") engaged in substantial discovery and law-and-motion efforts prior to negotiating a settlement of the Washington Action.  Those efforts included litigation of Defendant's Motion to Deny Class Certification; extensive meet and confer efforts and motion practice to obtain Defendant's production of documents and responses to interrogatory discovery; and extensive written and deposition discovery, including written discovery responses exchanged between the parties, Defendant's production of approximately 82,063 pages of documents, including 3,667 Excel and native files, and the depositions of three witnesses, including the Class Representative in this action; as well as data intensive discovery resulting on the production of eleven Excel spreadsheets of employee payroll data as well as six Excel spreadsheets of resident assessment data.

F.      This Agreement was reached as a result of extensive arm's length negotiations between the California Parties, the Washington Parties, and their counsel.  Through their counsel, the Parties have engaged in extensive settlement discussions.  This included a full-day mediation of the California Action on May 29, 2018 before the Honorable Ronald Sabraw (ret.) of JAMS in San Jose, California; a second full-day mediation of the California Action on October 2, 2018 before the Honorable Ronald Sabraw (ret.) of JAMS in San Jose, California; a full-day joint mediation of the California Action and Washington Action on October 22, 2019 before the Honorable Bruce Hilyer (ret.) of Hilyer Dispute Resolution in Seattle, Washington; and a full-day joint mediation of the California Action and Washington Action on March 24, 2020 before the Honorable Rebecca Westerfield (ret.) of JAMS in San Francisco, California.

G.      Class Counsel have determined that a settlement of the California Action and the Washington Action on the terms reflected in this Agreement provides substantial benefits to the Settlement Class, is fair, reasonable, adequate, and in the best interests of Named Plaintiffs and the Settlement Class.  In agreeing to the settlement set forth in this Agreement, Class Counsel have considered numerous risks of continued litigation and other factors.  One such factor is the potential recovery at trial on the California Named Plaintiffs' and Washington Named Plaintiff's claims for damages, including the damages claim with respect to Community Fees.

H.      Defendant has agreed to this Settlement Agreement to avoid the costs, disruption and distraction of further litigation.  Without admitting the truth of any allegations made in the California Action or Washington Action, or any liability with respect thereto, Defendant and its counsel have concluded that it is desirable that the claims against Defendant be settled on the terms reflected in this Agreement.

I.      Accordingly, IT IS HEREBY STIPULATED AND AGREED by and among the undersigned, on behalf of the California Named Plaintiffs, the Washington Named Plaintiff, the Settlement Class, and Defendant, that the California Action, the Washington Action, and the Claims shall be finally and fully compromised, settled, and released, subject to the approval of the Court on the following terms and conditions.

## SETTLEMENT TERMS

## 1.      DEFINITIONS

1.1      "Actions" means the California Action and the Washington Action.

1.2      "California Action" means the action of *June Newirth, by and through her Guardian ad Litem, Frederick J. Newirth; Barbara Feinberg; and Elizabeth Barber, Andrew Bardin, and Thomas Bardin as successors-in-interest to the Estate of Margaret Pierce; on their own behalves and on behalf of others similarly situated vs. Aegis Senior Communities, LLC, dba Aegis Living; and Does 1 – 100*, Case No. 4:16-cv-03991-JSW, which is currently pending in the United States District Court, Northern District of California, including, without limitation, the Second Amended Complaint and any appeals or requests for leave to appeal any ruling or judgment entered in that case.

1.3     "Agreement" or "Settlement Agreement" means this Stipulation of Settlement (including all Exhibits attached hereto).

1.4     "Attorneys' Fees and Expenses" means such attorneys' fees as may be awarded by the Court upon application by Class Counsel not to exceed $6,350,000, and reimbursement of litigation costs actually incurred not to exceed $1,300,000, as described more particularly in Section 9 of this Agreement.

1.5     "Award" or "Settlement Award" means the settlement payment to be made to Settlement Class Members pursuant to Sections 7.2 to 7.9 of this Agreement.

1.6     "Class Notice" or "Notice" means the notice to be disseminated to Settlement Class Members informing them about the Settlement Agreement, in the form approved by the Court.  A copy of the Notice that will be proposed for Court approval is attached substantially in the form of Exhibit 2.

1.7     "California Named Plaintiffs" means plaintiffs June Newirth, by and through her successor in interest, Kathi Troy; and Elizabeth Barber, Andrew Bardin, and Thomas Bardin as successors-in-interest to the Estate of Margaret Pierce.

1.8     "Class Counsel" means:

STEBNER & ASSOCIATES
870 Market Street, Suite 1212
San Francisco, CA 94102
Telephone: (415) 362-9800
Facsimile: (415) 362-9801

Kathryn A. Stebner
kathryn@stebnerassociates.com
Brian Umpierre
brian@stebnerassociates.com
George Kawamoto
george@stebnerassociates.com

DENTONS US LLP
4655 Executive Drive, Suite 700
San Diego, CA 92121
Telephone: (619) 236-1414
Facsimile: (619) 232-8311

Christopher J. Healey
christopher.healey@dentons.com

JANSSEN MALLOY LLP
730 Fifth Street
Eureka, CA 95501
Telephone: (707) 445-2071
Facsimile: (707) 445-8305

W. Timothy Needham
tneedham@janssenlaw.com
Megan Yarnall
myarnall@janssenlaw.com

ARNS LAW FIRM
515 Folsom Street
3rd Floor
San Francisco, CA 94105
Telephone:     (415) 495-7800
Facsimile:     (415) 495-7888

Robert S. Arns
rsa@arnslaw.com
Shounak Dharap
ssd@arnslaw.com

MARKS, BALETTE, GIESSEL & YOUNG,
P.L.L.C.
7521 Westview Drive
Houston, Texas 77055
Telephone:     (713) 681-3070
Facsimile:     (713) 681-2811

David T. Marks
DavidM@marksfirm.com

EMBER LAW P.L.L.C.
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154
Telephone: (206) 899-6816
Facsimile: (206) 858-8182

Leah S. Snyder
leah@emberlaw.com

LAW OFFICE OF MICHAEL D. THAMER
Old Callahan School House
12444 South Highway 3
Callahan, CA 96014
Telephone: (530) 467-5307
Facsimile: (530) 467-5437

Michael D. Thamer
michael@trinityinstitute.com

SCHNEIDER WALLACE COTTRELL
KONECKY, LLP
2000 Powell Street, Suite 1400
Emeryville, CA  94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Guy B. Wallace
gwallace@schneiderwallace.com
Mark T. Johnson
mjohnson@schneiderwallace.com

ZWERLING, SCHACHTER & ZWERLING,
LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Telephone: (206) 223-2053
Facsimile: (206) 343-9636

Dan Drachler
ddrachler@zsz.com

NEEDHAM KEPNER & FISH LLP
1960 The Alameda, Suite 210
San Jose, CA 95126
Telephone: (408) 956-6949
Facsimile: (408) 244-7815

Kirsten Fish
kfish@nkf-law.com

1.9     "Community Fee" means the fee, if any, identified as such and paid by or for a Settlement Class Member typically at the time of move-in to an Aegis Living branded assisted living facility in California or Washington.  By way of example, the Community Fee paid by

named plaintiff June Newirth is described in the paragraph entitled "Community Fee" that appears on page 4 of Ms. Newirth's Residence and Care Agreement.

     1.10   "Court" means the United States District Court, Northern District of California, the Honorable Jeffrey S. White presiding.

     1.11   "Defendant" means Aegis Senior Communities, LLC, dba Aegis Living.

     1.12   "Defendant's California Counsel" means the following counsel of record for Defendant for the California Action:

> LEWIS BRISBOIS BISGAARD & SMITH LLP
> 633 West 5th Street, Suite 4000
> Los Angeles, CA 90071
> Telephone: (213) 250-1800
> Facsimile: (213) 250-7900
>
> Jeffrey S. Ranen
> Jeffrey.Ranen@lewisbrisbois.com
> Soojin Kang
> Soojin.Kang@lewisbrisbois.com

     1.13   "Defendant's Washington Counsel" means the following counsel of record for Defendant for the Washington Action:

> McNAUL EBEL NAWROT & HELGREN, P.L.L.C
> 600 University Street, Suite 2700
> Seattle, WA 98101
> Telephone: (206) 467-1816
> Facsimile: (206) 624-5128
>
> Robert M. Sulkin
> rsulkin@mcnaul.com
> Gregory J. Hollon
> ghollon@mcnaul.com
> Claire Martirosian
> cmartirosian@mcnaul.com

     1.14   "Distribution Request" means a request for payment of a Settlement Award made by a Settlement Class Member, or made by the legal representative or successor in interest of a deceased Settlement Class Member, who has not had a Settlement Award check previously sent to the Settlement Class Member by the Settlement Administrator.  Any Distribution Request must be submitted to the Settlement Administrator and post-marked not later than thirty (30) calendar days after the Effective Date (herein the "Distribution Deadline").

1.15    "Effective Date" means the later in time of: (a) sixty (60) calendar days after the date of entry of the Order of Final Approval and Judgment Approving Class Action Settlement, if no timely motions for reconsideration and/or no appeals or other efforts to obtain review have been filed; or (b) in the event that an appeal or other effort to obtain review has been initiated, fifteen (15) calendar days after the date after such appeal or other review has been finally concluded and is no longer subject to review, whether by appeal, petitions for rehearing, petitions for rehearing en banc, petitions for writ of certiorari, or otherwise.

1.16    "Escrow Agent" means The Huntington National Bank. "Escrow Agreement" and "Escrow Procedure Agreement" mean the agreements attached hereto as Exhibit 4, pursuant to which and Court approval, the Escrow Agent will safeguard, control, and maintain the Settlement Fund until the Effective Date.  For privacy and security reasons, the names of Aegis' insurers and all of the Authorized Agents and certain security procedures are redacted from the Escrow Agreement and Escrow Procedure Agreement attached hereto as Exhibit 4.

1.17    "Final Approval Hearing" means the hearing to be conducted by the Court on such date as the Court may order to determine the fairness, adequacy, and reasonableness of the Agreement.

1.18    "Order of Final Approval and Judgment Approving Class Action Settlement" means the final order and judgment approving the settlement as fair, adequate, and reasonable and confirming the certification of the Settlement Class, in the form approved and signed by the Court.

1.19    "Motion for Final Approval" means the motion, to be filed by Class Counsel on behalf of the California Named Plaintiffs, Washington Named Plaintiff, and the Settlement Class, after consultation with Defendant's Counsel and not to be opposed by Defendant, for Final Approval of this Agreement.

1.20    "Motion for Preliminary Approval of Settlement" means the motion, to be filed by Class Counsel on behalf of the California Named Plaintiffs and Washington Named Plaintiff, after consultation with Defendant's Counsel and not to be opposed by Defendant, for Preliminary Approval of this Agreement.

1.21    "Notice and Administration Expenses" means all costs and expenses incurred by the Settlement Administrator, including all notice expenses, the cost of administering the Notice Program and the costs of processing all payments to Settlement Class Members.

1.22    "Notice Date" means the date by which the Settlement Administrator substantially completes dissemination of the Class Notice as provided in the Agreement and shall be no later than ten (10) business days after the entry by the Court of the Preliminary Approval Order.

1.23    "Objection Date" means the date by which Settlement Class Members must file and serve objections to the settlement, which shall be sixty (60) calendar days after the Notice Date.

1.24    "Opt Out Date" means the postmark date by which a Request for Exclusion must be submitted to the Settlement Administrator in order for a Settlement Class Member to be excluded from the Settlement Class, and shall be sixty (60) calendar days after the Notice Date.

1.25    "Parties" means Named Plaintiffs, the Settlement Class, and Defendant.

1.26    "Named Plaintiffs" means the California Named Plaintiffs and the Washington Named Plaintiff.

1.27    "Preliminary Approval Order" means the order preliminarily approving this Settlement, conditionally certifying the Settlement Class for settlement purposes only, approving the Notice Program and Class Notice, setting the Opt Out Date, Objection Date and Notice Date, and setting the date of the Final Approval Hearing, in the form of order approved and signed by the Court.  The Preliminary Approval Order that will be submitted to the Court for approval is attached substantially in the form of Exhibit 3.

1.28    "Released Claims" means and includes any and all actions, claims, demands, rights, suits, and causes of action of whatever kind or nature whatsoever that the Releasing Parties ever had, now have or hereafter can, shall, or may have against the Released Parties, including without limitation any and all damages, loss, costs, expenses, penalties, attorneys' fees and expert fees, and interest, whether known or unknown, suspected or unsuspected, asserted or unasserted, fixed or contingent, direct or indirect, whether sounding in tort or contract or any other legal theory, whether statutory, administrative, common law or otherwise, however pled, wherever brought and whether brought in law, equity or otherwise, arising out of or relating in any way or manner to the claims and allegations asserted or that could have been asserted in either or both Actions based on the facts alleged in the complaints in the California and/or Washington Actions; provided that the following claims only are specifically excluded from this Release: (i) any individual claims for personal injuries, wrongful death, bodily harm, or emotional distress resulting from said claims for personal injuries, wrongful death or bodily harm; and (ii) claims based on a breach of this Agreement or the Injunction (collectively, "Excluded Claims").  Nothing in this Agreement shall preclude any person or entity from asserting any and all relevant allegations in support of a claim for personal injuries, wrongful death, bodily harm, or emotional distress resulting from said personal injuries, wrongful death or bodily harm, including without limitation, allegations that the facility was understaffed.

1.29    "Releasing Party" or "Releasing Parties" means (i) the California Named Plaintiffs, Washington Named Plaintiff, and each Settlement Class Member; (ii) any person or entity that paid fees to have any of the foregoing move in to, reside or receive care at an Aegis branded assisted living facility in California during the California Class Period or in Washington during the Washington Class Period; (iii) any persons and entities claiming by or through any of the foregoing (i)-(ii); (iv)  any predecessors, successors, agents, representatives, estates, executors, administrators, dependents, heirs, beneficiaries, trustees, attorneys, employees, assignors or assignees of any of the foregoing (i)-(iii).

1.30    "Released Party" or "Released Parties" means "(i) Aegis Senior Communities, LLC, dba Aegis Living and its insurers (Columbia Casualty Company, RSUI Indemnity

Company, and Wesco Insurance Company)  (ii) any direct or indirect parents, subsidiaries, divisions, affiliates, and related entities of any of the forgoing, including all Aegis communities in California and Washington; (iii) any predecessors, successors, or assigns of any of the foregoing (i)-(ii); and (iv) any past, present or future employees, officers, directors, affiliates, partners, joint ventures, co-venturers, licensors, licensees, principals, members, managers, managing agents, agents, attorneys, insurers, reinsurers, shareholders, trusts, trustees, representatives, administrators, fiduciaries, heirs, subrogees, and executors of any of the foregoing (i)-(iii) in his, her, or its capacity as such.

1.31    "Request for Exclusion" means the written communication that must be submitted to the Settlement Administrator and postmarked on or before the Opt Out Date by a Settlement Class Member who wishes to be excluded from the Settlement Class.

1.32    "Reserve Fund" means the Twenty-Five-Thousand Dollars ($25,000) that the Settlement Administrator shall hold in the Settlement Fund to pay late-submitted Distribution Requests.   The amount of any Settlement Award checks not cashed within the check cashing deadline (after reasonable reminders issued by the Settlement Administrator) shall be added to the Reserve Fund.  Any moneys left in the Reserve Fund not paid to Settlement Class Members shall be paid to Groceries for Seniors, or other appropriate cy pres recipient(s) qualified under 501(c)(3) and nominated by Class Counsel and approved by the Court.

1.33    "Settlement Administrator" or "Administrator" means CPT Group, Inc., which subject to Court approval, shall design and implement the program for disseminating notice to the Settlement Class, and except as provided by the Escrow Agreement and in coordination therewith, administer the payment portion of this settlement and perform overall administrative functions.

1.34    "Settlement Class", as defined for the purpose of this Settlement Agreement only, shall consist of the following subclasses:

(a) All persons who resided at one of the Aegis Living branded California assisted living facilities at any time between April 12, 2012, through and including October 30, 2020 (the "California Class Period") that were owned or managed by Defendant or in which Defendant was identified as a licensee by California's Department of Social Services, including without limitation the following communities: Aegis Gardens (Fremont),  Aegis of Aptos, Aegis of Carmichael, Aegis of Corte Madera, Aegis of Dana Point, Aegis of Fremont, Aegis of Granada Hills, Aegis of Laguna Niguel, Aegis of Moraga, Aegis of Napa, Aegis of Pleasant Hill, Aegis of San Francisco, Aegis of San Rafael[1], Aegis of Shadowridge (Oceanside), and Aegis of Ventura ("California Subclass"); and

(b) All persons who resided at one of the Aegis Living branded Washington assisted living facilities at any time between March 8, 2014, through and including

---

[1] The parties acknowledge and agree that, with respect to Aegis of San Rafael, the Settlement Class includes only persons who resided at the Aegis of San Rafael facility between April 12, 2012 through and including March 31, 2016.

October 30, 2020 (the "Washington Class Period") that were owned or managed by Defendant or in which Defendant was identified as a licensee by Washington's Department of Social and Health Services, including without limitation the following communities: Aegis Gardens (Newcastle), Aegis Lodge (Kirkland), Aegis of Ballard, Aegis of Bellevue, Callahan House (Shoreline), Aegis of Issaquah, Aegis of Kent, Aegis of Kirkland, Aegis of Lynnwood, Aegis of Madison (Seattle), Aegis of Marymoor (Redmond), Aegis of Mercer Island, Queen Anne on Galer, Queen Anne Rodgers Park, Aegis of Ravenna (Seattle), Aegis of Redmond, Aegis of Shoreline, and Aegis of West Seattle ("Washington Subclass").

(c) Excluded from the Settlement Class are (i) Defendant and their officers, directors, and employees; (ii) any Settlement Class Member (or their legal successors) who submits a valid and timely Request for Exclusion; and (iii) the Judges to whom these Actions are assigned and any members of their immediate families.

1.35   "Settlement Class Member" means any person falling within the description of the Settlement Class who does not timely opt out of the Settlement Class.

1.36   "Settlement Class Member Information List" means and includes all the following information to the extent it is within Defendant's possession, custody or control and reasonably accessible: (a) a list of any Person meeting the definition of the Settlement Class; (b) names of any resident contact person on file with Aegis; (d)  last-known addresses, e-mail addresses, or other contact information for any Settlement Class Member and their resident contact person on file with Aegis; and (e) amount of the Community Fee (if any) paid by or on behalf of each Settlement Class Member for whom Defendant has Community Fee information.  The Settlement Class Member Information List and all information contained therein shall be considered confidential and subject to the Protective Orders entered in the California and Washington Actions.

1.37   "Settlement Fund" means the Sixteen Million Two-Hundred-Fifty-Thousand Dollars ($16,250,000) that Defendant has agreed to pay in full settlement and resolution of the Actions (excluding Defendant's costs to comply with the Injunction).

1.38   "Settlement Website" means the Internet website to be established for this settlement by the Settlement Administrator to provide information to the public and the Settlement Class about this Agreement.

1.39   "Washington Action" means the action of *Carol M. Morrison by Stacy A. Van Vleck as Attorney-in-Fact, on her own behalf and on behalf of others similarly situated vs. Aegis Senior Communities, LLC, dba Aegis Living; and Does 1 – 100*, Case No. 18-2-06326-4 SEA, which is currently pending in the Superior Court of Washington, County of King, including, without limitation, the First Amended Complaint and any appeals or requests for leave to appeal any ruling or judgment entered in that case.

1.40   "Washington Named Plaintiff" means plaintiff Carol M. Morrison by Stacy A. Van Vleck as Attorney-in-Fact.

## 2.   PRELIMINARY APPROVAL OF SETTLEMENT

2.1     As soon as practicable after the signing of this Agreement, Named Plaintiffs shall move the Court for an order: (a) preliminarily approving this Agreement as fair, reasonable and adequate; (b) conditionally certifying the Settlement Class for settlement purposes; (c) approving the form, manner, and content of the Class Notice; (d) setting the date and time of the Final Approval Hearing; (e) appointing Named Plaintiffs as representatives of the Settlement Class for settlement purposes only; and (f) appointing Class Counsel for settlement purposes only. Defendant shall cooperate with Named Plaintiffs to obtain the Preliminary Approval Order consistent with the terms herein.

2.2     Defendant hereby consents, solely for purposes of the Agreement, to the certification of the Settlement Class, to the appointment of Class Counsel, and to the approval of Named Plaintiffs as suitable representatives of the Settlement Class; provided, however, that if the Court fails to approve this Agreement or the Agreement otherwise fails to be consummated, then this settlement shall be void *ab initio* and shall be of no force or effect whatsoever, shall not be referred to or utilized for any purpose whatsoever, and Defendant shall retain all rights it had immediately preceding the execution of this Agreement to object to and challenge the maintenance of the Actions as class actions or at all.

## 3.   SETTLEMENT ADMINISTRATOR

3.1     In addition to any tasks and responsibilities ordered by the Court, the Settlement Administrator shall be authorized to undertake various administrative tasks, including, without limitation: (1) mailing or arranging for the mailing, e-mailing or other distribution of the Court-approved notice to Settlement Class Members, (2) handling returned mail and e-mail not delivered to Settlement Class Members, (3) attempting to obtain updated address information for Settlement Class Members by all reasonable means, including running change of address, skip traces or other procedures on the Settlement Class Member Information List provided by Defendant, and any notices returned without a forwarding address or an expired forwarding address, (4) making any additional mailings required under the terms of this Agreement, (5) answering written inquiries from Settlement Class Members and/or forwarding such inquiries to Class Counsel or their designee, (6) receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion to the settlement, (7) establishing the Settlement Website that posts notices, distribution request forms and other related documents, (8) establishing a toll-telephone number that will provide settlement-related information to Settlement Class Members, (9) receiving and processing payment requests and distributing payments to Settlement Class Members, (10) receiving/forwarding opt outs and objections, and (11) otherwise assisting with administration of the Agreement.

3.2     The Court-approved costs, fees and expenses of the Administrator, including without limitation the Notice and Administration Expenses and all other costs of disseminating Notice to Settlement Class Members, administration of the claims process, and all of the other functions of the Administrator as described herein, shall be paid from the Settlement Fund only after entry of the Order of Final Approval and Judgment Approving Class Action Settlement or

pursuant to Section 12.2. Funds allocated but not paid to the Settlement Administrator shall be paid to the Reserve Fund and distributed in accordance with section 7.9 below.

## 4.    NOTICE TO THE SETTLEMENT CLASS

4.1    No later than ten (10) business days after the execution of this Agreement, Defendant shall furnish the Settlement Administrator with the Settlement Class Member Information List.

4.2    No later than ten (10) business days after the entry by the Court of the Preliminary Approval Order, the Settlement Administrator shall substantially complete the dissemination of Class Notice to potential Settlement Class Members, as follows:

4.2.1    Mailed notice by first class U.S. Mail to the last known addresses of the Settlement Class Member, and their family members or legal representatives, as provided by Defendant in the Settlement Class Member Information List. Returned mail shall be re-sent after a skip trace is performed.

4.2.2    E-mailed notice to the last known e-mail addresses of the Settlement Class Member, and their family members or legal representatives, as provided by Defendant in the Settlement Class Member Information List.

4.2.3    Publication of the summary version of the Notice as approved by the Court, through a single publication in the USA Today (California and Washington weekday edition).

4.2.4.    Posting of the Notice: No later than ten (10) business days from entry of the Preliminary Approval Order, the Settlement Administrator will post the Notice on the Settlement Website. The Notice shall remain available by these means until the Effective Date. The Notice may also be posted on the websites of Class Counsel at their option.

4.3    Five (5) days prior to the Final Approval Hearing, the Settlement Administrator shall provide the Court with an affidavit attesting that Notice was disseminated pursuant to the Notice Program set forth below.

## 5.    OBJECTIONS/REQUESTS FOR EXCLUSION

5.1    Objections

5.1.1    Any Settlement Class Member who intends to object to the fairness of the Settlement Agreement must do so in writing no later than the Objection Date. The written objection and notice of objection must be filed with the Clerk of the Court and served on Class Counsel and Defendant's Counsel by no later than the Objection Date. The written objection must include: (a) a heading which refers to the Action; (b) the objector's name, address, telephone number and, if represented by counsel, of his/her counsel; (c) a statement that the objector resided at or signed a contract with Defendant, predecessors,

successors, assigns or related entities during the California Class Period or Washington Class Period and (d) the Aegis Living Community at which they resided, or that the objector is the legal successor to such a person; (e) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel; (f) a clear and concise statement of the objection to the Settlement and this Settlement Agreement, including all factual and/or legal grounds supporting the objection; (g) copies of any papers, briefs, or other documents upon which the objection is based; and (h) the objector's signature under penalty of perjury.

5.1.2    Absent good cause found by the Court, any Settlement Class Member who fails to make a timely written objection in the time and manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by objection, appeal or otherwise) to the Settlement and this Agreement.

5.1.3    Any Settlement Class Member who has objected per Section 5.1.1 above may appear at the Final Approval Hearing, either in person or through counsel hired at the Settlement Class Member's sole expense, to object to any aspect of the fairness, reasonableness, or adequacy of this Agreement, including attorneys' fees.

5.1.4    The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a copy of all written objections on a rolling basis upon receipt and a final list of all written objections within five (5) business days after the Opt Out Date.  Class Counsel shall file a single packet of all objections with the Court with the Motion for Final Approval.

5.1.5    The Parties and their counsel shall have the right and opportunity to respond in writing to any objections to the Settlement prior to the Fairness Hearing, as well as to respond to the objections at the Fairness Hearing.

5.2    Requests for Exclusion

5.2.1    Any member of the Settlement Class may request to be excluded from the Settlement Class.  A Settlement Class Member who wishes to opt out of the Settlement Class and relinquish their rights to benefits under the Settlement Agreement must do so no later than the Opt Out Date.  In order to opt out, a Settlement Class Member must send to the Settlement Administrator via first class United States mail a written Request for Exclusion that is post-marked no later than the Opt Out Date.  The Request for Exclusion must be personally signed by the Settlement Class Member or their legal representative requesting exclusion and must contain the following information: (a) the Settlement Class Member's name, current address and telephone number; and (b) a statement that indicates a desire to be excluded from the Settlement Class.  Any Request for Exclusion postmarked after the Opt Out Date shall not be valid.

5.2.2    Any Settlement Class Member who does not make a timely written Request for Exclusion shall be bound by all subsequent proceedings, orders and the Order

of Final Approval and Judgment Approving Class Action Settlement, even if he or she has pending, or subsequently initiates, litigation, arbitration or any other proceeding against any Released Party relating to the Released Claims.

        5.2.3    Any Settlement Class Member who properly requests to be excluded from the Settlement Class shall not: (a) be bound by any orders or judgments entered in the Actions relating to the Agreement; (b) be entitled to an Award from the Settlement Fund, or be affected by, the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Agreement.

        5.2.4    The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with copies of all requests for exclusion upon receipt on a rolling basis and a final list of names for all timely Requests for Exclusion within five (5) business days after the Opt Out Date. The names for all timely Requests for Exclusion will be deemed confidential under the Protective Orders and shall not be made publicly available. In addition to its affidavit to the Court attesting that Notice was disseminated pursuant to the Notice Program, the Settlement Administrator shall also include in its affidavit the final number of all timely Requests for Exclusion five (5) business days prior to the Final Approval Hearing.

        5.2.5    Notwithstanding any other provisions of this Stipulation of Settlement, Defendant may unilaterally withdraw from and terminate this Stipulation of Settlement if the total number of Settlement Class Members who submit timely requests for exclusion from this settlement exceeds ten percent (10%) of the Settlement Class. In the event the Defendant exercises that option, the settlement and Stipulation of Settlement shall be of no force or effect whatsoever, all obligations hereunder shall be null and void, the Settlement Fund shall revert to Defendant and its insurers pursuant to Section 12.2, and the Parties shall otherwise be restored to their respective positions as if this settlement had never existed.

## 6.      COURT APPROVAL OF SETTLEMENT

        6.1    This Agreement is subject to and conditioned upon the issuance by the Court of the Order of Final Approval and Judgment Approving Class Action Settlement that finally certifies the Settlement Class for the purposes of this settlement, grants final approval of the Agreement, and provides the relief specified herein, which relief shall be subject to the terms and conditions of the Agreement and the Parties' performance of their continuing rights and obligations hereunder.

        6.2    The Parties agree that the Court shall retain exclusive and continuing jurisdiction over the Actions, all Parties, the claims administration process, including without limitation the Injunction, and the Settlement Class Members, to interpret and enforce the Agreement's terms, conditions, and obligations.

7.      **SETTLEMENT RELIEF**

7.1     Injunction

As an integral part of the consideration provided under this Agreement, Defendant stipulates to entry of the Court-approved injunction substantially in the form attached as Exhibit 1 to this Agreement ("Injunction").

7.2     Settlement Fund

Defendant shall make a payment of $16,250,000 into the Settlement Fund to be administered and distributed by the Settlement Administrator and/or Escrow Agent consistent with the terms of this Settlement Agreement, the Escrow Agreement, and the Escrow Procedure Agreement. The $16,250,000 payment shall cover all of Defendant's monetary obligations under the Settlement, including without limitation amounts payable to the Settlement Administrator, taxes and tax expenses, all Named Plaintiffs' and Settlement Class Members' attorneys' fees and expenses, Settlement Awards, and Service Awards, exclusive of Defendant's costs to comply with the Injunction. The Settlement Fund shall be maintained in an interest-bearing, secure account established by the Settlement Administrator and/or the Escrow Agent that, to the extent feasible, meets the requirements for a "Qualified Settlement Fund" within the meaning of Treasury Regulation section 1.468B. The payments by Defendant and its insurers to the Settlement Fund shall be made as follows: (a) $15,625,000 shall be paid within thirty (30) calendar days after the Court grants the Preliminary Approval Order; and (b) the remaining balance of $625,000 shall be paid within 180 calendar days after the Court grants the Preliminary Approval Order.

7.3     The Settlement Fund, less the money used from the Settlement Fund to pay the Notice and Administration Expenses, taxes and tax expenses, Attorneys' Fees and Expenses, Service Awards and the Reserve Fund, shall be the "Net Settlement Fund."

7.4     The Net Settlement Fund shall be distributed through Settlement Award checks made payable to each Settlement Class Member for whom a valid address has been provided to, or located by, the Settlement Administrator.

7.5     Any Settlement Class Member (or any legal successor to any deceased Settlement Class Member) that submits a timely Distribution Request to the Settlement Administrator, and who has not had a Settlement Award check already distributed to the Settlement Class Member shall likewise be mailed a Settlement Award check upon verification by the Settlement Administrator that the Person on whose behalf that Distribution Request has been submitted  is a member of the Settlement Class.

7.6     The amounts of the Settlement Awards shall be calculated as follows:

7.6.1   Settlement Class Members who paid no Community Fee (and had no Community Fee paid on their behalf) shall each be entitled to a Settlement Award in amount to be proposed by Plaintiffs' Counsel after receipt of the Community Fee

Information and approved by the Court.  The Settlement Administrator shall calculate the total amount owed to the "No Community Fee Paid" group.

   7.6.2 Settlement Class Members for whom Community Fee Information is unavailable shall each be entitled to a Settlement Award calculated as follows.  The Settlement Administrator shall calculate the average Community Fee paid by Settlement Class Members in 2011.  The Settlement Administrator shall divide the number of Settlement Class Members who paid no Community Fee by the number of Settlement Class Members for whom Community Fee Information is available, resulting in a percentage.  The Settlement Administrator shall reduce the average Community Fee paid in 2011 by that percentage.  The reduced average Community Fee amount shall be treated as the Community Fee amount paid by each Settlement Class Member for whom Community Fee Information is unavailable for purposes of the calculation in 7.6.3 below.

   7.6.3 Settlement Class Members who paid a Community Fee (or had someone pay a Community Fee on their behalf) and Settlement Class Members for whom Community Fee Information is unavailable shall each be entitled to a Settlement Award calculated as follows.  The Settlement Administrator shall first calculate a Settlement Payment Percentage ("SPP") by dividing the Net Settlement Fund (less the amounts allocated for the No Community Fee Paid group above in section 7.6.1) by the total amount of Community Fees paid by or on behalf of all Settlement Class Members including Settlement Class Members for whom Community Fee Information is unavailable.   Next, the SPP shall be applied against the Community Fee paid by or on behalf of each Settlement Class Member and the reduced average Community Fee assigned to each Settlement Class Member for whom Community Fee Information is unavailable, to derive the Settlement Award amount for each such Settlement Class Member.

   7.7 The Settlement Administrator shall mail the Settlement Award checks to the above-described Settlement Class Members no later than thirty (30) calendar days after the Effective Date.  The Settlement Payments checks shall allow for a check cashing period of one-hundred-twenty (120) calendar days.

   7.8 The Settlement Administrator shall have the discretion to pay settlement checks in response to Distribution Requests submitted after the Distribution Deadline, provided that the amount of such payments shall be calculated in accordance with the formula set forth in Section 7.6 above, or such lesser amount as the Settlement Administrator in its discretion determines can be paid from the Reserve Fund.

   7.9 Except as stated in Sections 5.2.5 and 12.2, there shall be no reversion to Defendant of any portion of the Settlement Fund, any unclaimed funds, any uncashed Settlement Awards, or any interest earned on any such funds.  If the monies left in the Reserve Fund (after all Settlement Awards have been paid) is sufficient to make another distribution economically practical, the remaining monies shall be paid to the Settlement Class Members who cashed their initial settlement checks, with the share amounts of any supplemental distribution to be calculated using the same procedure set forth in Section 7.6 above.  If the Settlement Administrator determines that a supplemental distribution is not economically feasible, the remaining balance shall be distributed through cy pres payment to Groceries for Seniors, or other

appropriate cy pres recipient(s) qualified under 501(c)(3) and nominated by Class Counsel and approved by the Court.

## 8.   RELEASES

8.1     Upon the Effective Date, and subject to fulfillment of all of the terms of this Agreement, each and every Releasing Party shall be deemed to have released and forever discharged each Released Party of and from any and all liability for any and all Released Claims.

8.2     On the Effective Date, the Released Parties shall be deemed to have released and forever discharged each Settlement Class Member and Class Counsel, from any and all claims arising out of or relating to the institution, prosecution and resolution of the Actions, provided that the provisions of the Protective Orders shall remain in place unless otherwise modified by court order.

8.3     Upon the Effective Date without further action, for good and valuable consideration, with respect to all claims released herein, all Class Representatives and all Released Parties expressly waive and relinquish any and all provisions, rights, and benefits of Section 1542 of the California Civil Code and any and all similar provisions, rights, and benefits conferred under Washington law that is similar, comparable, or equivalent to Section 1542 of the California Civil Code, which provides:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

## 9.   ATTORNEYS' FEES AND EXPENSES AND PLAINTIFF SERVICE AWARDS

9.1     On or before fifteen (15) calendar days prior to the Objection Date, Class Counsel shall make an application for an award of attorneys' fees incurred not to exceed $6,350,000, plus reimbursement of litigation costs actually incurred not to exceed $1,300,000 in the prosecution of the Actions. Class Counsel shall be responsible for allocating and distributing the Attorneys' Fees and Expenses award among themselves.

9.2     The Attorneys' Fees and Expenses awarded by the Court shall be paid from the Settlement Fund to Class Counsel within three (3) business days after the Court's order approving Attorneys' Fees and Expenses, provided that the Parties have reached agreement on a mutually acceptable form of security for Class Counsel's repayment in accordance with this paragraph 9.2. The Parties shall confer in good faith in an effort to reach agreement on an acceptable form of security, but if no agreement is reached, the matter shall be submitted to the Court for binding resolution. In no event shall the awarded Attorneys' Fees and Expenses be paid to Class Counsel any later than two (2) business days after the Effective Date. If the Order of Final Approval and Judgment Approving Class Action Settlement or a separate order setting forth the amount awarded in Attorneys' Fees and Expenses is reversed, vacated, modified, and/or

remanded for further proceedings or otherwise disposed of in any manner other than one resulting in an affirmance of the Order of Final Approval and Judgment Approving Class Action Settlement or a separate order setting forth the amount awarded in Attorneys' Fees and Expenses, then each Class Counsel shall repay the Attorneys' Fees and Expenses disbursed to that Class Counsel to the Settlement Fund, within thirty (30) calendar days of such event, the full amount of the Attorneys' Fees and Expenses or repay the amount by which the award has been reduced.  The Parties stipulate the Order of Final Approval and Judgment Approving Class Action Settlement shall state that all monies held in the Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned to Defendants pursuant to the Settlement Stipulation, Escrow Agreement, the Escrow Procedure Agreement, or further order of the Court.  The Court's award of fees, costs and expenses to Class Counsel shall be separate from its determination of whether to approve the Settlement.  In the event the Court approves the Settlement but declines to award fees and costs to Class Counsel or awards a lesser amount of fees and costs than requested by Class Counsel, the Settlement will nevertheless be valid and binding on the Parties.  If the Court declines to approve the Settlement and this Agreement, no award of fees, costs and expenses shall be paid to Class Counsel.

9.3     On or before fifteen (15) calendar days prior to the Objection Date, Class Counsel shall make an application for Named Plaintiffs' service awards in an amount not to exceed Fifteen-Thousand Dollars ($15,000) to each Class Representative (the "Service Awards").  The Service Awards awarded by the Court shall be paid from the Settlement Fund to Named Plaintiffs within five (5) calendar days after the Effective Date.  The Court's award of the Service Payment to Named Plaintiffs shall be separate from its determination of whether to approve the Settlement as set forth in this Agreement.  In the event the Court approves the Settlement but declines to award the Service Payment to Named Plaintiffs or awards a lesser amount than what is requested, the Settlement will nevertheless be binding on the Parties.  If the Court declines to approve the Settlement, no Service Payment shall be made to Named Plaintiffs.

## 10.     REPRESENTATIONS AND WARRANTIES

10.1     Defendant represents and warrants: (1) that it has the requisite corporate power and authority to execute, deliver and perform the Agreement and to consummate the transactions contemplated hereby; (2) that the execution, delivery and performance of the Agreement and the consummation by it of the actions contemplated herein have been duly authorized by necessary corporate action on the part of Defendant; and (3) that the Agreement has been duly and validly executed and delivered by Defendant and constitutes its legal, valid and binding obligation.

10.2     Named Plaintiffs represent and warrant that they are entering into the Agreement on behalf of themselves individually, as the legal representative of or successor to a Settlement Class Member, and as proposed representatives of the Settlement Class, of their own free will and without the receipt of any consideration other than what is provided in the Agreement or disclosed to, and authorized by, the Court.  Named Plaintiffs represent and warrant they have legal authority to release Released Claims on behalf of themselves and the Settlement Class Members.  Named Plaintiffs represent and warrant that they have reviewed the terms of the Agreement in consultation with Class Counsel. Class Counsel represent and warrant that they are fully authorized to execute the Agreement on behalf of Named Plaintiffs.

10.3    The Parties represent and warrant that no promise, inducement or consideration for the Agreement has been made, except those set forth herein.

## 11.    NO ADMISSIONS OF FAULT, NO USE EXCEPT FOR ENFORCEMENT

11.1    The Agreement and every stipulation and term contained in it is conditioned upon final approval of the Court and is made for settlement purposes only.  Whether or not consummated, neither this Agreement nor any documents filed in connection with the approval of this Settlement shall be: (A) construed as, offered in evidence as, received in evidence as, and/or deemed to be, evidence of a presumption, concession or an admission by any Party of the truth of any fact alleged or the validity of any claim or defense that has been, could have been, or in the future might be asserted in any litigation or the deficiency of any claim or defense that has been, could have been, or in the future might be asserted in any litigation, or of any liability, fault, wrongdoing or otherwise of such Party; or (B) construed as, offered in evidence as, received in evidence as, and/or deemed to be, evidence of a presumption, concession or an admission of any liability, fault or wrongdoing, or in any way referred to for any other reason, by Named Plaintiffs, Defendant, any Releasing Party or Released Party, in the Actions or in any other civil, criminal or administrative claim, action, or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Agreement.

11.2    This Agreement shall be admissible in any proceeding related to the approval of this Agreement, to enforce its terms and conditions, or to support or defend this Agreement in an appeal from an order granting or denying final approval.

## 12.    TERMINATION

12.1    In addition to Defendant's termination rights pursuant to Section 5.2.5, Named Plaintiffs or Defendant may terminate this Agreement by providing written notice to the other Parties hereto within ten (10) calendar days of any of the following events:

12.1.1  The Court does not enter a Preliminary Approval Order that conforms in material respects to Exhibit 3 hereof; or

12.1.2  The Court does not enter an Order of Final Approval and Judgment Approving Class Action Settlement, or if entered, such Order of Final Approval and Judgment Approving Class Action Settlement is reversed, vacated, or modified in any material respect by another court, except as provided for herein.

12.2    In the event that this Agreement terminates for any reason, all Parties shall be restored to their respective positions as of immediately prior to the date of execution of this Agreement, and shall proceed in all respects as if this Agreement and any related Court orders had not been made or entered.  Upon termination, this Section and Sections 11 and 13.5 herein shall survive and be binding on the Parties, but this Agreement shall otherwise be null and void. In the event of termination pursuant to Sections 12.1 or 5.2.5, within five (5) business days after written notification of such event is sent by Defendant's Counsel or Class Counsel to the

Settlement Administrator and Escrow Agent, the Settlement Fund (including accrued interest), less Court-approved Notice and Administration Expenses up to $40,000, shall be refunded to Defendant and its insurers, pursuant to an allocation to be provided by Defendant's Counsel. In such event, Defendant shall be entitled to any tax refund owing to the Settlement Fund. At the request of Defendant, the Settlement Administrator or its designee shall apply for any such refund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for a refund, to Defendant and its insurers, pursuant to an allocation to be provided by Defendant's Counsel.

## 13.    MISCELLANEOUS PROVISIONS

13.1    Integration:  The Agreement, including all Exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the Agreement and shall supersede any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of the Agreement.  The Agreement may not be changed, modified, or amended except in a writing signed by one of Class Counsel and one of Defendant's Counsel and, if required, approved by the Court.  The Parties contemplate that the Exhibits to the Agreement may be modified by subsequent agreement of Defendant or Defendant's Counsel and Class Counsel, or by the Court.

13.2    Governing Law:  This Agreement is made and entered into in the State of California and shall in all respects be interpreted, enforced and governed by and under the laws of the State of California, without reference to its choice of law rules.  Any action to enforce the provisions of this Agreement shall be commenced in the United States District Court, Northern District of California.

13.3    Execution in Counterparts:  The Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Facsimile signatures, signatures scanned to PDF and sent by e-mail, or DocuSign signatures shall be treated as original signatures and shall be binding.

13.4    Notices:  Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided in writing by first class US Mail and e-mail to:

If to Plaintiffs or Class Counsel:

      Kathryn A. Stebner
      STEBNER & ASSOCIATES
      870 Market Street, Suite 1212
      San Francisco, CA 94102
      Telephone: (415) 362-9800
      Facsimile: (415) 362-9801
      kathryn@stebnerassociates.com

      Guy B. Wallace
      SCHNEIDER WALLACE COTTRELL KONECKY, LLP
      2000 Powell Street, Suite 1400
      Emeryville, CA  94608
      Telephone: (415) 421-7100
      Facsimile: (415) 421-7105
      gwallace@schneiderwallace.com

If to Defendant or Defendant's Counsel:

      Jeffrey S. Ranen
      Soojin Kang
      LEWIS BRISBOIS BISGAARD & SMITH LLP
      633 West 5th Street, Suite 4000
      Los Angeles, CA 90071
      Telephone: (213) 250-1800
      Facsimile: (213) 250-7900
      Jeffrey.Ranen@lewisbrisbois.com
      Soojin.Kang@lewisbrisbois.com

      Gregory J. Hollon
      Claire Martirosian
      McNAUL EBEL NAWROT & HELGREN, P.L.L.C
      600 University Street, Suite 2700
      Seattle, WA 98101
      Telephone: (206) 467-1816
      Facsimile: (206) 624-5128
      ghollon@mcnaul.com
      cmartirosian@mcnaul.com

      13.5    Stay of Proceedings:  Upon the execution of this Agreement, all discovery and other proceedings in the Actions shall be stayed until further order of the Court, except for proceedings that may be necessary to implement the Agreement or comply with or effectuate the terms of this Settlement Agreement.

      13.6    Good Faith:  The Parties agree that they will act in good faith and will not engage in any conduct that will or may frustrate the purpose of this Agreement.  As part of this, the

Parties and their counsel agree that they will make no statements to the media (including blogs) regarding this settlement or the case.  The Parties further agree, subject to Court approval as needed, to reasonable extensions of time to carry out any of the provisions of the Agreement.

13.7     Protective Orders:  All orders, agreements and designations regarding the confidentiality of documents and information ("Protective Orders") remain in effect, and all Parties and counsel remain bound to comply with the Protective Orders, including the provisions to certify the destruction of documents deemed Confidential under the Protective Orders. Notwithstanding such provision in the Protective Order, Defendant's Counsel and Class Counsel may retain copies of all deposition transcripts and exhibits and all documents submitted to the Court, but those documents must be kept confidential to the extent they were designated as "Confidential," and will continue to be subject to the Protective Order.

13.8     Binding on Successors:  This Agreement shall inure to the benefit of and be binding upon the respective agents, assigns, administrators, employees, trustees, executors, heirs, and successors in interest of each of the Parties.

13.9     Arms-Length Negotiations:  The determination of the terms and conditions contained herein and the drafting of the provisions of this Agreement has been by mutual understanding after negotiation, with consideration by, and participation of, the Parties hereto and their counsel.  This Agreement shall not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.  Any statute or rule of construction that ambiguities are to be resolved against the drafting party shall not be employed in the implementation of this Agreement and the Parties agree that the drafting of this Agreement has been a mutual undertaking.

13.10    Recitals:  The Recitals are a material part of this Agreement and are incorporated herein in their entirety.

13.11    Waiver:  The waiver by any Party of any provision or breach of the Agreement shall not be deemed a waiver of any other provision or breach of the Agreement.

13.12    Exhibits:  All Exhibits to this Agreement are material and integral parts hereof, and are incorporated by reference as if fully rewritten herein.

13.13    Taxes:  No opinion concerning the tax consequences of the Agreement to any Settlement Class Member is given or will be given by Defendant, Defendant's Counsel, or Class Counsel; nor is any Party or their counsel providing any representation or guarantee respecting the tax consequences of the Agreement as to any Settlement Class Member. Each Settlement Class Member is responsible for his/her tax reporting and other obligations respecting the Agreement, if any.  Defendant and Released Parties are in no way liable or responsible for any taxes Class Counsel, Named Plaintiffs, Settlement Class Members or others may be required or obligated to pay as a result of the receipt of settlement benefits or payments relating to the Settlement or under this Agreement.

13.14   The Parties listed below hereby acknowledge that, prior to the execution of this Agreement, each consulted with their respective counsel of record.

IN WITNESS WHEREOF, each of the Parties hereto has caused the Agreement to be executed, all as of the day set forth below.

DATED: _____

                                 AEGIS SENIOR COMMUNITIES, LLC

_____

By:_____

Its:_____

DATED: _____

By:_____
                                KATHI TROY
           Successor-In-Interest for the Estate of June Newirth

DATED: _____

By:_____
                           ELIZABETH BARBER
        Successor-In-Interest for the Estate of Margaret Pierce

DATED: _____

By:_____
                           ANDREW BARDIN
        Successor-In-Interest for the Estate of Margaret Pierce

DATED: _____

By: _____
                 THOMAS BARDIN
   Successor-In-Interest for the Estate of Margaret Pierce

DATED: _____

By: _____
            STACY A. VAN VLECK
      Attorney in fact for Carol M. Morrison

DATED: _____   Approved as to form and agreed in substance to Section 9.2 by

STEBNER & ASSOCIATES

By: _____
            KATHRYN STEBNER
        Attorney for Plaintiffs

DATED: _____   Approved as to form and agreed in substance to Section 9.2 by

SCHNEIDER WALLACE COTTRELL KONECKY, LLP

By: _____
             GUY WALLACE
        Attorney for Plaintiffs

DATED: _____     Approved as to form and agreed in substance to Section 9.2 by

DENTONS US LLP


By: _____
                CHRISTOPHER HEALEY
                Attorney for Plaintiffs

DATED: _____     Approved as to form and agreed in substance to Section 9.2 by

LAW OFFICE OF MICHAEL D. THAMER


By: _____
                MICHAEL D. THAMER
                Attorney for Plaintiffs

DATED: _____     Approved as to form and agreed in substance to Section 9.2 by

ARNS LAW FIRM


By: _____
                ROBERT S. ARNS
                Attorney for Plaintiffs

DATED: _____     Approved as to form and agreed in substance to Section 9.2 by

JANSSEN MALLOY LLP


By: _____
                W. TIMOTHY NEEDHAM
                Attorney for Plaintiffs

DATED: _____   Approved as to form and agreed in substance to Section 9.2 by

MARKS, BALETTE, GIESSEL & YOUNG, P.L.L.C.


By:_____
          DAVID T. MARKS
          Attorney for Plaintiffs

DATED: _____   Approved as to form and agreed in substance to Section 9.2 by

ZWERLING, SCHACHTER & ZWERLING, LLP


By:_____
          DAN DRACHLER
          Attorney for Plaintiffs

DATED: _____   Approved as to form and agreed in substance to Section 9.2 by

EMBER LAW P.L.L.C.


By:_____
          LEAH S. SNYDER
          Attorney for Plaintiffs

DATED: _____   Approved as to form and agreed in substance to Section 9.2 by

NEEDHAM KEPNER & FISH LLP


By:_____
          KIRSTEN FISH
          Attorney for Plaintiffs

## EXHIBITS

**Document**                                                        **Exhibit Number**

Injunction (Exhibit A addendum thereto to be provided to Class Counsel and made available to

Settlement Class Members upon their request) ...................................................................1

Class Notice (Long Form and Summary Form) ....................................................................2

Proposed Preliminary Approval Order ................................................................................3

Escrow Agreement and Escrow Procedure Agreement (redacted of personally identifiable and

security related confidential information)............................................................................4

**Exhibit B**

**Fees of Escrow Agent**


**Acceptance Fee:**                                             **Waived**

The Acceptance Fee includes the review of the Escrow Agreement,
acceptance of the role as Escrow Agent, establishment of Escrow
Account(s), and receipt of funds.


**Annual Administration Fee:**                                 **Waived**

The Annual Administration Fee includes the performance of
administrative duties associated with the Escrow Account
including daily account management, generation of account
statements to appropriate parties, and disbursement of funds in
accordance with the Escrow Agreement.  Administration Fees are
payable annually in advance without proration for partial years.


**Out of Pocket Expenses:**                                    **Waived**

Out of pocket expenses include postage, courier, overnight mail,
wire transfer, and travel fees.

**Exhibit C**

**Information and Signature Document
of Authorized Agent**

4840-7275-5924.1
US_Active\115531308\V-2

3956-001 ji10bv21xc.002

**Exhibit C**

**Information and Signature Document
of Authorized Agent**

**Name**: _____

**Firm**: _____

**Address**: _____

_____

**Office Phone**: _____

**Mobile Phone**: _____

**E-mail**: _____

**Signature**: _____

---

STATE OF _____

COUNTY OF _____

The foregoing document was acknowledged before me this _____ day of _____, 20___ by _____, who personally appeared who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument the person, or the entity on behalf of which the person acted, executed the instrument.

By: _____
            Notary Public

My Commission expires: _____

(Seal)

---

*If not notarized, this form must be accompanied by a copy of the
Authorized Agent's state driver's license or U.S. Passport.
This information will be held by the Escrow Agent in strict confidence.*

**PROCEDURE AGREEMENT – NEWIRTH/MORRISON/AEGIS SETTLEMENT**

This Procedure Agreement – Newirth/Morrison/Aegis Settlement (this "Procedure Agreement") dated _____, is made among Aegis Senior Communities, LLC, dba Aegis Living ("Defendant"); ████████████████████████████████ CPT Group, Inc. ("Settlement Administrator"), and Stebner & Associates, Dentons US LLP, and Schneider Wallace Cottrell Konecky, LLP ("Representative Class Counsel") (individually "Procedure Agreement Party" and collectively "Procedure Agreement Parties").

Recitals

A. This Procedure Agreement is made in reference to the Escrow Agreement dated _____, which is attached hereto as Exhibit "A."

B. The Escrow Agreement contemplates the provision to the Escrow Agent of certain documents, information, and instructions by the "Authorized Agents," who are identified in Section 9 of the Escrow Agreement.

C. The Procedure Agreement Parties desire to ensure that the documents, information, and instructions provided to the Escrow Agent by the Authorized Agents pursuant to the terms of the Escrow Agreement are accurate, valid, and not fraudulent and, for that reason, enter into this Procedure Agreement.

**Agreement**

1. Recitals; Defined Terms. The recitals above and the exhibits attached to this Procedure Agreement are incorporated herein by reference and made a part hereof. Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Escrow Agreement.

2. Information and Signature Documents. Each Authorized Agent will be responsible for providing to the Escrow Agent his or her Information and Signature Document pursuant to the terms of the Escrow Agreement and will provide Procedure Agreement Parties with confirmation that such Information and Signature Document has been delivered to the Escrow Agent.

3. Revisions to Information and Signature Documents. Each Authorized Agent will be responsible for providing the Escrow Agent with any revised Information and Signature Document pursuant to the terms of the Escrow Agreement and will provide Procedure Agreement Parties with confirmation that such revised Information and Signature Document has been delivered to the Escrow Agent.

4. Standing Funds Transfer Instructions and Amended Standing Funds Transfer Instructions. The Standing Funds Transfer Instructions to be provided to the Escrow Agent prior to or at

the time that the Settlement Amount is deposited into the Escrow Account pursuant to Section 4 of the Escrow Agreement and any Amended Standing Funds Transfer Instructions will be prepared in the following manner:

a. <u>Provision of Wiring Instructions to Defense Counsel Authorized Agents</u>:

    i. ▆▆▆▆▆▆▆▆▆▆▆▆ will provide to Defense Counsel Authorized Agents wiring instructions to be used to transfer money to the Defendant in the event of a return of funds to the Contributors pursuant to Section 15 of the Escrow Agreement and ▆▆▆ ▆▆▆▆▆ will provide to Defense Counsel Authorized Agents any amendments to said wiring instructions.

    ii. ▆▆▆▆▆▆▆▆▆▆▆ will provide to Defense Counsel Authorized Agents wiring instructions to be used to transfer money to ▆▆▆ in the event of a return of funds to the Contributors pursuant to Section 15 of the Escrow Agreement and ▆▆▆▆▆ ▆▆▆▆ will provide to Defense Counsel Authorized Agents any amendments to said wiring instructions.

    iii. ▆▆▆▆▆▆▆▆▆▆, counsel for ▆▆, will provide to Defense Counsel Authorized Agents wiring instructions to be used to transfer money to ▆▆ in the event of a return of funds to the Contributors pursuant to Section 15 of the Escrow Agreement and ▆▆ ▆▆▆▆ will provide to Defense Counsel Authorized Agents any amendments to said wiring instructions.

    iv. ▆▆▆▆▆▆▆▆, counsel for ▆▆▆, will provide to Defense Counsel Authorized Agents wiring instructions to be used to transfer money to ▆▆ in the event of a return of funds to the Contributors pursuant to Section 15 of the Escrow Agreement and ▆▆ ▆▆▆▆ will provide to Defense Counsel Authorized Agents any amendments to said wiring instructions.

    v. ▆▆▆▆▆▆▆▆▆▆will provide to Defense Counsel Authorized Agents wiring instructions to be used to transfer money to the Settlement Administrator for Court-approved notice and administration costs up to $40,000 in the event of a return of funds to the Contributors pursuant to Section 15 of the Escrow Agreement and ▆▆▆ ▆▆▆▆ will provide to Defense Counsel Authorized Agents any amendments to said wiring instructions.

    vi. ▆▆▆▆▆▆▆▆▆▆of CPT Group, Inc. will provide to Defense Counsel Authorized Agents wiring instructions to be used to transfer money to the Settlement Administrator for purposes of the

Final Disbursement and ▨▨▨▨▨▨▨▨▨▨ will provide to Defense Counsel Authorized Agents any amendments to said wiring instructions.

vii. ▨▨▨▨▨▨▨▨▨▨▨▨ of Representative Class Counsel will provide to Defense Counsel Authorized Agents wiring instructions to be used to transfer money to Class Counsel for Attorneys' Fees and Expenses (as defined by the Settlement Agreement) pursuant to Section 12.e.i. of the Escrow Agreement and ▨▨▨▨▨▨▨▨ ▨▨▨ will provide to Defense Counsel Authorized Agents any amendments to said wiring instructions.

b. <u>Verification of Wiring Instructions By Defense Counsel Authorized Agents</u>

i. Upon receipt of each set of wiring instructions set forth in Section 4.a. of this Procedure Agreement, at least one (1) Defense Counsel Authorized Agent will verify the wiring instructions



ii. Each Procedure Agreement Party providing wiring instructions to Defense Counsel Authorized Agents is fully responsible for the accuracy of the wiring instructions.  Defense Counsel Authorized Agents will have no responsibility for the accuracy of the information other than the obligation to comply with the verification procedures set forth in Section 4.b.i. of this Procedure Agreement.  No Procedure Agreement Party will have responsibility for the accuracy of any other Procedure Agreement Party's wiring instructions nor for the money transferred pursuant to those wiring instructions.

iii. Any Procedure Agreement Party that submits a change to the original Standing Funds Transfer Instructions will notify all Procedure Agreement Parties that it is doing so but will not provide the wiring instructions themselves to the other Procedure Agreement Parties.

5. <u>Disbursements</u>:

a. An Authorized Agent will notify all Procedure Agreement Parties immediately when that Authorized Agent has provided a Defense Authorized Disbursement

Instruction or a Class Authorized Disbursement Instruction to the Escrow Agent and will provide all Procedure Agreement Parties with a copy of such instruction.

b.  When, pursuant to Section 14 of the Escrow Agreement, the Escrow Agent notifies Representative Class Counsel and the Defense Counsel Authorized Agents that a disbursement has been completed, at least one (1) of the recipients of such notice shall promptly (but in no event more than one (1) business day after receiving such notice) notify all Procedure Agreement Parties of such disbursement and if Representative Class Counsel and the Defense Counsel Authorized Agents discover any errors, delays or other problems and notify the Escrow Agent pursuant to Section 14 of the Escrow Agreement, at least one (1) of such persons shall promptly (but in no event more than one (1) business day after providing such notice) notify all Procedure Agreement Parties.

6.  <u>Termination of Settlement</u>.  If the Settlement Agreement terminates in accordance with its terms, Representative Class Counsel and the Defense Counsel Authorized Agents shall jointly notify each Procedure Agreement Party at the time they notify the Escrow Agent pursuant to Section 15 of the Escrow Agreement, and the Settlement Funds will be returned to the Contributors pursuant to Section 15 of the Escrow Agreement.



<u>Defense Counsel Authorized Agents</u>. Defendant hereby appoints the following Defense Counsel Authorized Agents to act as the agent for and on behalf of Defendant as provided in this Procedure Agreement:  (a) ▮ and (c) ▮

8.  <u>Limitation of Liability</u>.  The Authorized Agents shall act in good faith to carry out the transactions contemplated by this Procedure Agreement. No Authorized Agent shall be liable or responsible in any way for any cost, damage or expense arising out of or based upon such Authorized Agent's performance of his or her duties under this Procedure Agreement. Each Authorized Agent shall be indemnified and held harmless by the Settlement Fund against any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by such Authorized Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Authorized Agent, except as a result of such Authorized Agent's bad faith, willful misconduct or gross negligence.

9.  <u>Miscellaneous Provisions</u>.

a.  <u>Notices</u>.  Notice to the parties hereto shall be in writing and delivered by hand-delivery, electronic mail or overnight courier service (a) at the addresses set forth in Section 20 of the Escrow Agreement for Defendant, Representative Class

Counsel, Settlement Administrator and the Defense Counsel Authorized Agents and (b) at the addresses set forth opposite the signatures of ██████████ ██ on the signature page hereto.

b. <u>Governing Law</u>.  This Procedure Agreement shall be governed by the law of the State of California in all respects.  The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Procedure Agreement, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

c. <u>Third-Party Beneficiaries</u>.  The Defense Counsel Authorized Agents are third-party beneficiaries of this Procedure Agreement.

d. <u>Advice of Counsel</u>.  Each Party hereby represents, agrees and warrants to each other Party:  (a) that it has had the opportunity to make and execute this Agreement with the advice and counsel of independently selected legal counsel; (b) that it has not relied upon a representation, disclosure or nondisclosure by any other Party not explicitly provided in this Agreement; and (c) that it has not been coerced or induced to enter into this Agreement by any improper action of any other Party.

e. <u>Non-Waiver</u>.  The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

f. <u>Authority to Execute</u>.  Each Procedure Agreement Party represents and warrants that it has authority to execute this Procedure Agreement as its binding and legal obligation and to perform the obligations contemplated by this Procedure Agreement.  Each Procedure Agreement Party represents and warrants that the individual(s) signing this Procedure Agreement on its behalf is/are authorized to execute this Procedure Agreement.

g. <u>Counterparts</u>.  This Procedure Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Procedure Agreement. For the avoidance of doubt, a Person's execution and delivery of this Agreement by electronic signature and electronic transmission, including via Docusign or other similar method, shall constitute the binding and original execution and delivery of a counterpart of this Agreement by or on behalf of such Person.

***[Remainder of page intentionally left blank.]***

**IN WITNESS WHEREOF**, the parties hereto have executed this Procedure Agreement as of the date first above written.

REPRESENTATIVE CLASS COUNSEL

By: _____
      Kathryn A. Stebner, Stebner & Associates

By: _____
      Christopher J. Healey, Dentons US LLP

By: _____
      Guy B. Wallace, Schneider Wallace Cottrell Konecky, LLP

DEFENDANT/CONTRIBUTOR

AEGIS SENIOR COMMUNITIES LLC

By: _____
Name: _____
Title: _____

CONTRIBUTORS

▨▨▨▨▨▨▨▨▨▨▨▨▨▨

By: _____
Name: _____
Title: _____
Address: _____
_____
Telephone: _____
Email: _____

**IN WITNESS WHEREOF**, the parties hereto have executed this Procedure Agreement as of the date first above written.


REPRESENTATIVE CLASS COUNSEL

By: _____

      Kathryn A. Stebner, Stebner & Associates


By: _____

      Christopher J. Healey, Dentons US LLP


By: _____

      Guy B. Wallace, Schneider Wallace Cottrell Konecky, LLP



DEFENDANT/CONTRIBUTOR

AEGIS SENIOR COMMUNITIES LLC


By: _____

Name: _____

Title: _____

CONTRIBUTORS

██████████████████████


By: _____

Name: _____

Title: _____

Address: _____

_____

Telephone: _____

Email: _____

**IN WITNESS WHEREOF**, the parties hereto have executed this Procedure Agreement as of the date first above written.

REPRESENTATIVE CLASS COUNSEL

By: _____
      Kathryn A. Stebner, Stebner & Associates

By: _____
      Christopher J. Healey, Dentons US LLP

By: _____
      Guy B. Wallace, Schneider Wallace Cottrell Konecky, LLP

DEFENDANT/CONTRIBUTOR

AEGIS SENIOR COMMUNITIES LLC

By: _____
Name: _____
Title: _____

CONTRIBUTORS

████████████████████████

By: _____
Name: _____
Title: _____
Address: _____
_____
Telephone: _____
Email: _____

**IN WITNESS WHEREOF**, the parties hereto have executed this Procedure Agreement as of the date first above written.

REPRESENTATIVE CLASS COUNSEL

By: _____
       Kathryn A. Stebner, Stebner & Associates


By: _____
       Christopher J. Healey, Dentons US LLP


By: _____
       Guy B. Wallace, Schneider Wallace Cottrell Konecky, LLP


DEFENDANT/CONTRIBUTOR

AEGIS SENIOR COMMUNITIES LLC

By: _____
       DocuSigned by:
       Dwayne Clark
Name: _____
Title:  Founder, Chairman and CEO

CONTRIBUTORS

▨▨▨▨▨▨▨▨▨▨▨▨

By: _____
Name: _____
Title: _____
Address: _____
_____
Telephone: _____
Email: _____

**IN WITNESS WHEREOF**, the parties hereto have executed this Procedure Agreement as of the date first above written.

REPRESENTATIVE CLASS COUNSEL

By: _____
      Kathryn A. Stebner, Stebner & Associates


By: _____
      Christopher J. Healey, Dentons US LLP


By: _____
      Guy B. Wallace, Schneider Wallace Cottrell Konecky, LLP


DEFENDANT/CONTRIBUTOR

AEGIS SENIOR COMMUNITIES LLC


By: _____
Name: _____
Title: _____

CONTRIBUTORS

Title: _____
Address: _____ ___
_____
Telephone: _____
Email: _____



B :

Title:

SETTLEMENT ADMINISTRATOR

By: _____
        Julie Green, CPT Group, Inc.

████████████████

By:   _____

Name:   _____

Title:   _____

Address:   _____

_____

Telephone:   _____

Email:   _____

████████████████

By:   _____

Name:   _____

Title:   _____

Address:   _____

_____

Telephone:   _____

Email:   _____

SETTLEMENT ADMINISTRATOR

By:   _____

Julie Green, CPT Group, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| June Newirth, by and through her Guardian ad Litem, Frederick J. Newirth; and Elizabeth Barber, Andrew Bardin, and Thomas Bardin as successors-in-interest to the Estate of Margaret Pierce; on their own behalves and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>Aegis Senior Communities, LLC, dba Aegis Living; and Does 1 Through 100,<br><br>    Defendants. | CASE NO.  4:16-CV-03991-JSW<br><br>**AMENDMENT TO THE STIPULATION OF SETTLEMENT** |

The definitions in the Stipulation of Settlement are hereby incorporated as though fully set forth herein.

Pursuant to Section 13.1 of the Stipulation of Settlement, the Parties through their respective counsel agree to amend Sections 1.34, 5.1.1, 5.1.4, 7.6, 7.6.1, 7.6.2, and 7.6.3 of the Stipulation of Settlement as set forth below.

1.34    "Settlement Class", as defined for the purpose of this Settlement Agreement only, shall consist of the following subclasses:

(a) All persons who resided at one of the Aegis Living branded California assisted living facilities at any time between April 12, 2012, through and including October 30, 2020 (the "California Class Period") that were owned or managed by Defendant or in which Defendant was identified as a licensee by California's Department of Social Services, including without limitation the following communities: Aegis Gardens (Fremont),  Aegis of Aptos, Aegis of Carmichael, Aegis of Corte Madera, Aegis of Dana Point, Aegis of Fremont, Aegis of Granada Hills, Aegis of Laguna Niguel, Aegis of Moraga, Aegis of Napa, Aegis of Pleasant Hill, Aegis of San Francisco, Aegis of San Rafael[1], Aegis of Shadowridge (Oceanside), and Aegis of Ventura ("California Subclass"); and

(b) All persons who resided at one of the Aegis Living branded Washington assisted living facilities at any time between March 8, 2014, through and including October 30, 2020 (the "Washington Class Period") that were owned or managed by Defendant or in which Defendant was identified as a licensee by Washington's Department of Social and Health Services, including without limitation the following communities: Aegis Gardens (Newcastle), Aegis Lodge (Kirkland), Aegis of Bellevue, Callahan House (Shoreline), Aegis of Issaquah, Aegis of Kent, Aegis of Kirkland, Aegis of Lynnwood, Aegis of Madison (Seattle), Aegis of Marymoor (Redmond), Aegis of Mercer Island, Queen Anne on Galer, Queen Anne Rodgers Park, Aegis of Ravenna (Seattle), Aegis of Redmond, Aegis of Shoreline, Aegis of West Seattle, Aegis of Bothell, Aegis of Edmonds, and Aegis of Northgate[2] ("Washington Subclass").

5.1    Objections

5.1.1    Any Settlement Class Member who intends to object to the fairness of the Settlement Agreement must do so in writing no later than the Objection Date. The written objection and notice of objection must be filed with the Clerk of the Court by no later than the Objection Date. The written objection must include: (a) a heading which refers to the Action; (b) the objector's name, address, telephone number and, if represented by counsel, of his/her counsel; (c) a statement that the objector resided at or signed a

---

[1] The parties acknowledge and agree that, with respect to Aegis of San Rafael, the Settlement Class includes only persons who resided at the Aegis of San Rafael facility between April 12, 2012 through and including March 31, 2016.

[2] The parties acknowledge and agree that, with respect to Aegis of Bothell, Aegis of Edmonds, and Aegis of Northgate, the Settlement Class includes only persons who resided at those facilities between March 8, 2014 through and including September 30, 2015.

contract with Defendant, predecessors, successors, assigns or related entities during the California Class Period or Washington Class Period and (d) the Aegis Living Community at which they resided, or that the objector is the legal successor to such a person; (e) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel; (f) a clear and concise statement of the objection to the Settlement and this Settlement Agreement, including all factual and/or legal grounds supporting the objection; (g) copies of any papers, briefs, or other documents upon which the objection is based; and (h) the objector's signature under penalty of perjury.

      5.1.4   The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a copy of all written objections, if it receives any, on a rolling basis upon receipt and a final list of all written objections within five (5) business days after the Opt Out Date.  Class Counsel shall file a single packet of all objections with the Court with the Motion for Final Approval.

      7.6    The amounts of the Settlement Awards to the California Subclass and Washington Subclass shall be calculated as follows (Where it is stated below that a Settlement Class Member paid Community Fees, that includes when the Settlement Class Member paid Community Fees and when Community Fees were paid on behalf of the Settlement Class Member):

      7.6.1   Settlement Class Members who paid a net $0 to $499 in Community Fees shall each be entitled to a Settlement Award in the amount of $50.

      7.6.2   Settlement Class Members who paid Community Fees before November 2010 (and thus specific payment amounts are unavailable) shall each be entitled to a Settlement Award calculated as follows.  The Settlement Administrator shall calculate the average Community Fee paid by Settlement Class Members in 2011.  The Settlement Administrator shall divide the number of Settlement Class Members who paid no Community Fee by the number of Settlement Class Members for whom Community Fee Information is available, resulting in a percentage.  The Settlement Administrator shall reduce the average Community Fee paid in 2011 by that percentage.  The reduced average Community Fee amount shall be treated as the net Community Fee amount paid by each Settlement Class Member for whom Community Fee Information is unavailable for purposes of the calculation in 7.6.3 below.

      7.6.3   Settlement Class Members who paid a net Community Fee of $500 or more and Settlement Class Members for whom Community Fee Information is unavailable shall each be entitled to a Settlement Award calculated as follows.  The Settlement Administrator shall first calculate a Settlement Payment Percentage ("SPP") by dividing the Net Settlement Fund (less the amounts allocated for the Settlement Class Members who paid $0 to 499 in Community Fees per section 7.6.1 above) by the total amount of net Community Fees paid by all Settlement Class Members including Settlement Class Members for whom Community Fee Information is unavailable.   Next, the SPP shall be applied against the net Community Fee paid by each Settlement Class Member and the reduced average net Community Fee assigned to each Settlement Class Member for whom Community Fee Information is unavailable, to derive the Settlement Award amount for each such Settlement Class Member.

DATED: March 22, 2021    By:_____

Kathryn Stebner
STEBNER & ASSOCIATES

Attorney for Plaintiffs


DATED: _____    By:_____

Jeffrey S. Ranen
Soojin Kang
LEWIS BRISBOIS BISGAARD & SMITH LLP

Attorney for Defendant Aegis Senior Communities,
LLC, dba Aegis Living

4844-1980-2081.1

DATED: _____   By: _____
                               Kathryn Stebner
                               STEBNER & ASSOCIATES

                               Attorney for Plaintiffs




DATED: 3/23/21   By: _____
                               Jeffrey S. Ranen
                               Soojin Kang
                               LEWIS BRISBOIS BISGAARD & SMITH LLP

                               Attorney for Defendant Aegis Senior Communities,
                               LLC, dba Aegis Living

4844-1980-2081.1