Kathryn A. Stebner, State Bar No. 121088
**STEBNER AND ASSOCIATES**
870 Market Street, Suite 1212
San Francisco, CA 94102
Tel: (415) 362-9800
Fax: (415) 362-9801

Guy B. Wallace, State Bar No. 176151
**SCHNEIDER WALLACE COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel:     (415) 421-7100
Fax:    (415) 421-7105

[Additional counsel listed on service list]

Attorneys for Plaintiffs and the Settlement Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - OAKLAND

| | |
|---|---|
| Kathi Troy, as Successor-in-Interest to the Estate of June Newirth; Barbara Feinberg; Elizabeth Barber, Andrew Bardin, and Thomas Bardin as successors-in-interest to the Estate of Margaret Pierce; and Carol Morrison, by and through her Attorney-in-Fact Stacy Van Vleck, on their own behalves and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Aegis Senior Communities, LLC, dba Aegis Living; and Does 1 Through 100,<br><br>Defendants. | CASE NO.  **4:16-cv-03991-JSW**<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' RESPONSES TO THE COURT'S NOTICE OF QUESTIONS REGARDING MOTION FOR FINAL SETTLEMENT APPROVAL**<br><br>Date:   August 20, 2021<br>Time:  9:00 a.m.<br>Place:  Courtroom 5, 2nd Floor<br>Judge: Hon. Jeffrey S. White |

1    **I.    INTRODUCTION**

2        Plaintiffs submit this brief in support of their pending motion for final approval of the class

3    action settlement and fee application and in response to the Court's August 13, 2021 Notice of

4    Questions for Final Approval Hearing.  (Dkt. 217.)  Both motions are set for a hearing on August

5    20, 2021, at 9:00 a.m.

6    **II.    RESPONSES TO THE COURT'S QUESTIONS**

7        **1.    Settlement Administrator CPT Group's Actual Costs**

8        As noted in prior briefing, CPT Group will charge no more than its total "not to exceed"

9    cap of $105,000 for the settlement administration and related work in connection with its duties in

10    this Action. (Supplemental Declaration of Tarus Dancy Regarding Notice to the Settlement Class

11    ("Supp. Dancy Decl."), ¶ 8.)

12        To date, CPT Group has incurred actual settlement administration costs in the amount of

13    $53,026.12.  (Supp. Dancy Decl., ¶ 8.)  This includes Case Set-Up (project manager, system

14    programming/database setup, toll-free number establish/setup, static website and CAFA

15    notification (40 States and US Attorney General)) totaling $8,172.00; Print Publication (project

16    manager, *USA Today* – Los Angeles & San Francisco circulation and *USA Today* – Washington

17    circulation) totaling $5,872.21; Notification Procedures (project manager-opt-out/notice format,

18    third-party email validation/scrub, email notification setup/establish/formatting, email

19    segmentation/sending, email notification reporting/monitoring, email notification to class, national

20    change of address, merged data, mailing of notice packet and postage) totaling $28,624.36;

21    Returned Mail (update undeliverable notices, skip traces, re-mail notice packets, postage and

22    clerical staff) totaling $5,590.75; and Opt-Out Processing (programming of opt-out database, opt-

23    out processing, clerical staff, deficiency/dispute letters, postage, project manager and call center

24    support) totaling $4,776.80.  (*Id.*; documentation regarding CPT Group's incurred costs is attached

25    thereto as Exhibit 1.)

26        CPT Group anticipates incurring an additional $60,974.05 to complete the settlement

27    administration of this Action.  (Supp. Dancy Decl., ¶ 8.)  This includes the anticipated costs

28    associated with the Disbursement of Settlement Funds, Check Cashing Reminder Notifications,

2

CASE NO.  4:16-CV-03991-JSW – PLAINTIFFS' RESPONSES TO THE COURT'S NOTICE OF QUESTIONS
REGARDING MOTION FOR FINAL SETTLEMENT APPROVAL

1  Re-Distribution of Settlement Funds and Post-Distribution and Tax Reporting.  (*Id.*;

2  documentation regarding CPT Group's anticipated costs is attached thereto as Exhibit 1.)

3      **2.  The Estate of Mary Teshima's Request for Exclusion Was Included**

4      The Estate of Mary Teshima's request for exclusion from the Settlement has been included

5  as a timely and valid Opt-Out.  (Supp. Dancy Decl., ⁋ 5; *see* Dkt. 215, Letter from Janet Teshima.)

6      **3.  Additional Proposed Cy Pres Recipient for Washington**

7      In addition to the previously proposed cy pres recipient Groceries for Seniors, the parties

8  respectfully nominate Pike Market Senior Center to be a second cy pres recipient in this Action.

9  Pike Market Senior Center is a non-profit 501c(3) organization, which has provided free meals

10  and health and wellness activities to elders in Seattle, Washington, since 1978.  The organization

11  is also a pioneer in offering senior center programming to elders who are homeless, including one-

12  on-one case management to find safe shelter and other social services.  (Supplemental Declaration

13  of Kathryn Stebner In Support of Plaintiffs' Motion for Final Approval of Class Action Settlement

14  ("Supp. Stebner Decl."), ⁋ 2; *see also* https://pikeplacemarketfoundation.org/what-we-do/pike-

15  market-senior-center, *last visited 8/16/21*.)  The parties and their counsel do not have any

16  relationship with Pike Market Senior Center.  (Supp. Stebner Decl., ⁋ 2.)

17      If a redistribution of funds to the Settlement Class is not economically feasible and a cy

18  pres distribution is determined to be appropriate in this Action, the parties respectfully propose for

19  Groceries for Seniors in California and Pike Market Senior Center in Washington to receive equal

20  cy pres payments, subject to approval by the Court. (*See* Settlement Stipulation, ¶ 7.9.)

21      **4.  Additional Information for Time Claimed by Zwerling, Schachter & Zwerling**

22      In regard to Robert S. Schachter, he provided 8.6 hours of services to the Washington

23  Action. Mr. Schachter's partner-level support included review and revisions to the complaint,

24  review of information regarding potential claims, as well as news releases and articles regarding

25  the defendants' business; conferences with Mr. Dan Drachler regarding "unjust enrichment"

26  claims and prevailing-plaintiff provisions, mediation negotiations, the amended complaint,

27  intervention, and class definition for class certification.  Mr. Schachter also reviewed the class

28  certification decision and settlement stipulation with exhibits.  (Declaration of Susan Salvetti In

3

1  Response to Question 4 of the Notice of Questions for Final Approval Hearing and In Further

2  Support of Plaintiffs' Fee Application ("Salvetti Decl."), ¶ 3.)

3        In regard to Jeffrey C. Zwerling, he provided 0.3 hours of services to the Washington

4  Action.  Mr. Zwerling's partner-level support involved the firm's consideration regarding the

5  filing of the case.  (Salvetti Decl., ¶ 3.)

6        In regard to Sona R. Shah, she provided 75.7 hours of services to the Washington Action.

7  Ms. Shah reviewed and analyzed plaintiff's residency agreement and researched the potential

8  claims to be included in the complaint, pleading requirements, and statute of limitations issues.

9  She reviewed analyses of the Washington Consumer Protection Act claims, as well as CAFA and

10  causation issues. She assisted in revising and finalizing the complaint, as well as the review and

11  revisions to the amended complaint. Ms. Shah revised document subpoena to the Washington

12  Department of Social and Health Services (DSHS), reviewed and analyzed defendants' answer

13  and document requests, and revised discovery responses. She participated in meet and confer

14  conferences regarding discovery issues, and she revised interrogatory responses.  (Salvetti Decl., ¶

15  3.)

16        In regard to Hillary Sobel, she provided 3.8 hours of services to the Washington Action.

17  She researched and prepared a memorandum of law regarding the propriety of contact with current

18  employees.  (Salvetti Decl., ¶ 3.)

19        In regard to Ryan Weller, he provided 11.9 hours of services to the Washington Action. He

20  researched issues regarding the apex-deposition doctrine.  (Salvetti Decl., ¶ 3.)

21      **5.  Rates Charged By Plaintiffs' Counsel**

22        The Court is correct that the lodestar calculation submitted in Plaintiffs' fee application

23  was based on 2021 rates, with some exceptions including those noted in the Healey Declaration.

24  (Declaration of Christopher Healey, ¶ 11, n. 1.)  Additionally, the Arns Law Firm had applied their

25  corresponding historic rates to calculate their lodestar for the fee application. The rates for the

26  Marks Balette firm (which associated into the cases in early 2019) remained the same throughout

27  their involvement in the cases.

28        In response to the Court's question, Plaintiffs' Counsel estimated their respective lodestars

4

CASE NO.  4:16-CV-03991-JSW – PLAINTIFFS' RESPONSES TO THE COURT'S NOTICE OF QUESTIONS
REGARDING MOTION FOR FINAL SETTLEMENT APPROVAL

by applying their historic rates corresponding to the year the work was performed in this Action (if they had previously calculated their total lodestar based on 2021 rates only). As reflected in the following chart, this resulted in a reduction in the total amount of approximately $673,531.70 to Plaintiffs' Counsels' overall lodestar (i.e., from $10,817,440.50 to $10,143,908.80). However, even with this reduced lodestar of $10,143,908.80, Plaintiffs' fee request of $6,350,000 represents a **negative** multiplier of 0.63. (Supp. Stebner Decl., ⁋ 3.)

*Fig. 1 — Reduction of the Total Sum of Lodestar Fees Based on Historic Rates*[1]

| **Firm** | **California** | **Washington** | **Total (CA + WA)** |
|---|---|---|---|
| Stebner and Associates | (186,661.50) | (11,133.50) | (197,795.00) |
| Schneider Wallace Cottrell Konecky | (52,428.50) | (0.00) | (52,428.50) |
| Dentons US | (167,076.00) | (32,368.70) | (199,444.70) |
| Michael Thamer | (6,675.00) | (0.00) | (6,675.00) |
| Janssen Malloy | (87,706.50) | (3,832.50) | (91,539.00) |
| Marks Balette | (0.00) | (0.00) | (0.00) |
| Zwerling, Schachter & Zwerling | (0.00) | (102,865.00) | (102,865.00) |
| Ember Law | (0.00) | (22,502.00) | (22,502.00) |
| The Arns Law Firm | (0.00) | (0.00) | (0.00) |
| Needham Kepner & Fish | (282.50) | (0.00) | (282.50) |
| **Total** | **(500,830.00)** | **(172,701.70)** | **(673,531.70)** |

(Supp. Stebner Decl., ⁋ 3.)

In accordance with the Court's Notice of Questions, Plaintiffs hereby provide notice of additional legal authority (attached to the Supplemental Declaration of Kathryn Stebner) regarding the Court's discretion to compensate plaintiff's attorneys for a delay in payment by either applying

---

[1] The Schneider Wallace Cottrell Konecky firm, the Law Firm of Michael Thamer, and the Needham Kepner & Fish firm had no lodestar reductions in the Washington Action as all their hours were allocated to the California Action. Similarly, the Zwerling, Schacter & Zwerling firm and the Ember Law firm had no lodestar reductions in the California Action as all their hours were allocated to the Washington Action.

5

CASE NO. 4:16-CV-03991-JSW – PLAINTIFFS' RESPONSES TO THE COURT'S NOTICE OF QUESTIONS REGARDING MOTION FOR FINAL SETTLEMENT APPROVAL

1   the attorneys' current rates to all hours billed during the course of the litigation or using the

2   attorneys' historical rates and adding a rate enhancement. *Gates v. Deukmejian*, 987 F.2d 1392,

3   1406 (9th Cir. 1992) (the Ninth Circuit has "recognized that district courts have the discretion to

4   compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather

5   than historic rates in order to adjust for inflation and loss of the use funds").

6       **6. Plaintiffs' Authority for Seeking $15,000 in Service Awards**

7       Plaintiffs have previously cited to their best authority for seeking $15,000 in service

8   awards for each of the five named Plaintiffs in this matter. *See, e.g., Singer v. Becton Dickinson &*

9   *Co.*, 2009 WL 4809646, at *6 (S.D. Cal. Dec. 9, 2009) (approving $25,000 service award);

10  *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22, 2010)

11  (approving $20,000 service award); *Bickley v. Schneider Nat'l Carriers, Inc.* No. 4:08-cv-05806-

12  JSW (N.D. Cal. 2016), 2016 U.S. Dist. LEXIS 167144 *9-10 (approving $15,000 service awards);

13  *Razilov v. Nationwide Mut. Ins. Co*., 2006 WL 3312024 (D. Or. Nov. 13, 2006) (approving

14  $10,000 service awards for "render[ing] a public service by contributing to the enforcement" of

15  regulations and assisting in achieving a monetary benefit to a large settlement class).

16      In addition to the number of hours expended by a plaintiff in pursuing the litigation,

17  Plaintiffs respectfully refer to the additional relevant factors in determining whether such an award

18  is warranted, including: the named plaintiff's actions to protect the interests of the class; the

19  degree to which the class has benefitted from those actions; the effort named plaintiff expended in

20  pursuing the litigation; the risk to named plaintiff in commencing suit, both financial and

21  otherwise; the notoriety and personal difficulties encountered by named plaintiff; the duration of

22  litigation; and the personal benefit (or lack thereof) to the named as a result of the litigation. *See*

23  *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Clark*, 175 Cal.App.4th at 804-07.

24      In addition to arguments raised in prior briefing, Plaintiffs also note the long duration of

25  litigation of the California Action (filed in 2016) and the Washington Action (filed in 2018). Like

26  in *Razilov v. Nationwide Mut. Ins. Co*. cited above, the Plaintiffs here "rendered a public service

27  by contributing to the enforcement" of consumer-protection regulations and assisted in achieving a

28  substantial monetary benefit (as well as significant injunctive relief) for a large settlement class of

6

1  over 10,000 residents of defendants' facilities in California and Washington.  Plaintiffs made the

2  California Action and Washington Action possible when many other potential class

3  representatives refused to step forward and represent the class, and their sacrifices and

4  contributions over years helped produce the substantial benefits now offered to the Settlement

5  Class.  Moreover, Plaintiff Stacy Van Vleck not only prepared for and sat for her own deposition,

6  but she also actively assisted in the deposition preparation of other witnesses.  Moreover, Ms. Van

7  Vleck was subjected to additional scrutiny including contacts made by a private investigator

8  during the pendency of the Action.  Finally, no objections were filed against Plaintiffs' request to

9  seek a service award of $15,000 each.[2]

10  Although Plaintiffs believe the requested $15,000 in service awards for each of the five

11  named Plaintiffs is warranted, Plaintiffs obviously defer to the Court's sound discretion on this

12  issue.

13  **III.    PARTIES RESPECTFULLY SEEK COURT'S GUIDANCE ON OPT-OUT LIST**

14  The Settlement Administrator, CPT Group, has the final name list of all forty-three Opt-

15  Outs.  (Supp. Dancy Decl., P 5.)  Plaintiffs seek the Court's guidance on whether the Opt-Out list

16  should be filed with the Court or simply maintained by CPT.  If the name list of Opt-Outs is to be

17  filed with the Court, it must be designated confidential and filed under seal pursuant to the Court's

18  Preliminary Approval Order dated May 4, 2021 (at p. 7) and the Settlement Stipulation (at P 5.2.4),

19  which both read: "The names for all timely Requests for Exclusion will be deemed confidential

20  under the Protective Order and shall not be made publicly available."

21  **IV.    CONCLUSION**

22  Plaintiffs appreciate the opportunity to respond to the Court's advance notice of questions

23  pertaining to the final settlement approval and fee applications.  For the reasons stated in prior

24

---

25  [2] The Settlement Class Members' reaction to the proposed Settlement has remained favorable.
The deadline for Settlement Class Members to object to or opt out of the proposed Settlement was

26  July 17, 2021.  (Supp. Dancy Decl., P 2.)  No objections to the proposed Settlement were
submitted, and only forty-three Settlement Class Members opted out (from a Settlement Class of

27  10,069 current and former residents of Defendants' assisted living facilities in California and
Washington).  (*Id.* at PP 5-6.)  Accordingly, a total of 10,026 resident Settlement Class Members

28  remain part of the Settlement, which represents a 99.57% participation rate.  (*Id.* at P 7.)

1  briefing and herein, Plaintiffs respectfully submit that the Settlement provides a strong result for the
2  Settlement Class and should be approved.

3      A revised proposed form of the Final Settlement Approval order is being submitted with
4  this brief.  After meeting and confering with Aegis' counsel, Paragraphs 5 and 11 of the proposed
5  form of order were revised to further conform with the terms of the Settlement, respectively,
6  paragraph 5.2.4 of the Settlement Stipulation and paragraphs 12 and 13 of the Stipulated Injunction.
7  In addition, Paragraph 7 of the proposed form of order was revised because one of Plaintiffs'
8  Counsel (Dan Drachler) is no longer with the firm of Zwerling, Schacter & Zwerling, LLP.

9      The e-filing attorney hereby attests that she has obtained concurrence to file all other
10  documents submitted concurrently with this brief from the respective signatories.

11  DATED: August 19, 2021                    Respectfully submitted,
12                                             STEBNER AND ASSOCIATES

13                                             _____/s/ Kathryn A. Stebner_____
14                                             Kathryn Stebner
                                               Attorneys for Plaintiffs and Settlement Class
15
16
17
18
19
20
21
22
23
24
25
26
27
28